IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JENS H.S. NYGAARD, | § | |
| | § | |
| Plaintiff, | § | Case No. 6:20-cv-00234-ADA |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| FÉDÉRATION INTERNATIONALE DE L'AUTOMOBILE, FORMULA ONE MANAGEMENT LTD., FORMULA ONE WORLD CHAMPIONSHIP LTD., MERCEDES-BENZ GRAND PRIX LTD., DAIMLER AG, LEWIS HAMILTON, REDBULL TECHNOLOGY LTD., RED BULL RACING LTD., FERRARI S.P.A., CHARLES LECLERC, and DALLARA AUTOMOBILI S.P.A., | § § § § § § § § § § | |
| Defendants. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR CORRECTED
MOTION TO STRIKE THE DOCTRINE OF EQUIVALENTS
CONTENTIONS IN PLAINTIFF'S FINAL INFRINGEMENT CONTENTIONS
AND PLAINTIFF'S THIRD AMENDED COMPLAINT (DKT. NO. 245)**

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I.      Nygaard Did Not Follow This Court's Orders. ................................................. 1

II.     Nygaard's Charts Do Not Provide Adequate Notice Of His DOE Theories. ..................... 4

III.    Most Of Nygaard's DOE Contentions Are Legally Barred And Thus Futile..................... 7

        A.    Nygaard dedicated two of the three alleged equivalents of the "front windscreen" limitation to the public by disclosing but not claiming them................... 7

        B.    Nygaard fails to overcome prosecution history estoppel with respect to the "truncated sheared triangular pyramid" limitation. ...................................................... 8

CONCLUSION........................................................................................................................ 10

CERTIFICATE OF SERVICE ................................................................................................ 13

## TABLE OF AUTHORITIES

PAGE

**Cases**

*Apple Inc. v. Wi-LAN, Inc.*,
    No. 14CV2235 DMS (BLM), 2018 WL 9538772 (S.D. Cal. Mar. 2, 2018) ...................... 4

*Biagro W. Sales, Inc. v. Grow More, Inc.*
    423 F.3d 1296 (Fed. Cir. 2005) ............................................................................................ 10

*CommScope Techs. LLC v. Dali Wireless, Inc.*,
    No. 3:16-CV-0477-M, 2018 WL 4566130 (N.D. Tex. Sept. 21, 2018) ............................. 4

*CSP Techs., Inc. v. Sud-Chemie AG*,
    643 F. App'x 953 (Fed. Cir. 2016) ....................................................................................... 7

*Dynetix Design Sols., Inc. v. Synopsys, Inc.*,
    No. C 11-5973 PSG, 2013 WL 4537838 (N.D. Cal. Aug. 22, 2013) ........................... 5, 6

*Eagle Pharm. Inc. v. Slayback Pharma LLC*,
    958 F.3d 1171 (Fed. Cir. 2020) ............................................................................................. 7

*Felix v. Am. Honda Motor Co., Inc.*,
    562 F.3d 1167 (Fed. Cir. 2009) ............................................................................................. 9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
    535 U.S. 722 (2002) ............................................................................................................ 8, 9

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
    370 F.3d 1131 (Fed. Cir. 2004) ............................................................................................. 9

*In re Papst Licensing GmbH & Co. KG Litigation*,
    273 F.R.D. 339 (D.D.C. 2011) .............................................................................................. 2

*Insituform Techs., Inc. v. Cat Contracting, Inc.*,
    161 F.3d 688 (Fed. Cir. 1998) ............................................................................................... 5

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
    No. CV 13-1668-LPS, 2017 WL 658469 (D. Del. Feb. 14, 2017) ................................ 5, 6

*Intervet Inc. v. Merial Ltd.*,
    617 F.3d 1282 (Fed. Cir. 2010) ........................................................................................... 10

*Johnson & Johnston Associates Inc. v. R.E. Serv. Co., Inc.*,
    285 F.3d 1046 (Fed. Cir. 2002) ......................................................................................... 7, 8

*Nike Inc. v. Wolverine World Wide, Inc.*,
   43 F.3d 644 (Fed. Cir. 1994) .................................................................................................. 2

*Norian Corp. v. Stryker Corp.*,
   432 F.3d 1356 (Fed. Cir. 2005) .............................................................................................. 9

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006) .............................................................................................. 2

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*,
   No. 16 C 9179, 2017 WL 1862646 (N.D. Ill. May 9, 2017) ................................................. 6

*Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
   739 F.3d 694 (Fed. Cir. 2014) ................................................................................................ 9

*Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*,
   429 F.3d 1364 (Fed. Cir. 2005) .............................................................................................. 7

*Rehco, LLC v. Spin Master, Ltd.*,
   No. 13 C 2245, 2014 WL 1088517 (N.D. Ill. Mar. 17, 2014) ............................................... 6

*Richtek Tech. Corp. v. uPI Semiconductor Corp.*,
   No. C 09-05659 WHA, 2016 WL 3136896 (N.D. Cal. June 6, 2016) .................................. 4

*SanDisk Corp. v. Kingston Tech. Co.*,
   695 F.3d 1348 (Fed. Cir. 2012) .............................................................................................. 7

*Sycamore IP Holdings LLC v. AT&T Corp.*,
   No. 2:16-CV-588-WCB, 2018 WL 1695231 (E.D. Tex. Apr. 6, 2018) ................................ 3

**Rules**

FED. R. CIV. P. 16(f) .................................................................................................................... 2

## INTRODUCTION

Defendants showed in their Motion that this Court should strike the doctrine of equivalents ("DOE") contentions from both the Third Amended Complaint ("TAC") and the final infringement contentions filed by plaintiff Jens Nygaard ("Nygaard"), for three reasons. First, the amendments adding these contentions were procedurally improper because they violated this Court's express instruction that Nygaard seek leave before reintroducing DOE assertions, and that he support that request with new evidence received from the Defendants. Second, the DOE contentions fail to give adequate notice of Nygaard's DOE theories because they offer only conclusory recitations of the "function-way-result" test. Third, most of Nygaard's DOE contentions are futile because they are legally barred by the disclosure-dedication rule or prosecution history estoppel.

Nygaard's Opposition does not show otherwise. Instead, he resists the clear implications of black-letter law and this Court's orders, attacks strawmen, and badly overstates the meager and inadequate disclosures he has provided. Thus, defendants respectfully request that the Court strike all of Nygaard's DOE contentions in both his final infringement contentions and his TAC.

## ARGUMENT

### I. Nygaard Did Not Follow This Court's Orders.

As Defendants showed in their Motion, this Court accepted Nygaard's withdrawal of DOE theories from this case more than a year ago at the case management conference. Dkt. No. 140 at 14:8-15:14. And when Nygaard suggested that he "may need to revisit" DOE later, this Court *expressly ordered* Nygaard to seek permission from this Court before amending his pleadings or contentions to reintroduce DOE theories. *Id.* at 15:9-19. And this Court's order specifically instructed Nygaard that the Court would entertain his request to reintroduce DOE theories only "[i]f you get *new information from the defendants* that you think would warrant you being able to … add a DOE claim back in." *Id.* at 15:15-17 (emphasis added).

Despite that unequivocal directive, Nygaard has never sought leave from this Court or pointed to any new evidence from *any* source, much less any of the Defendants. Instead, Nygaard unilaterally included new DOE contentions in his final infringement contentions served on June 4,

1

and included even more new DOE contentions in his TAC filed on July 23. And every single piece of evidence Nygaard cites in support for these tardy DOE contentions was already publicly available to Nygaard last year when he served his Preliminary Contentions before the case management conference. Mot. 9 (enumerating examples). That repeated flouting of this Court's orders alone justifies striking Nygaard's DOE contentions and the DOE assertions in the TAC: a court may impose sanctions under Rule 16(f)—including striking contentions—for failure "to comply with court ordered requirements for the disclosure of infringement contentions." *In re Papst Licensing GmbH & Co. KG Litigation*, 273 F.R.D. 339, 342–43 (D.D.C. 2011) (*citing O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006)).

Nygaard's Opposition does nothing to disturb this straightforward conclusion. First, Nygaard objects that this Court's OGP issued *before* the case management conference didn't include a directive to seek leave before reintroducing DOE contentions. Opp. 6. Nygaard does not explain how the Court should have predicted that he would abandon his DOE theories at the conference, so that it could include such a directive in an order issued nearly two weeks earlier.

Second, Nygaard attempts to elevate his counsel's self-serving interpretation of this Court's directive over this Court's actual words. *See* Opp. 6 (the Court's order "fairly was understood by the undersigned counsel to reference amending *preliminary* infringement contentions"). Nygaard's counsel's subjective interpretation cannot trump the plain and clear meaning of the Court's directive, which "dismiss[ed] the claims of DOE"—removing them from the case entirely—and required leave of court before "amend[ing] the pleadings [to] add a DOE claim back in." Dkt. No. 140 at 15:13-19.[1]

Third, Nygaard is simply mistaken that this Court's later orders are to the contrary. Nygaard does not contend that any later order of this Court addressed its specific instructions as to Nygaard's abandoned DOE theories. Opp. 6. Instead, Nygaard imagines that the Court's Order

---

[1] Nygaard's repeated suggestion that he could ignore this Court's order because it was oral, Opp. 1, 5-7 is frivolous. *See, e.g.*, *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 647-49 (Fed. Cir. 1994) (affirming ruling precluding DOE claims as sanction for violating oral court order).

2

Governing Proceedings (OGP) and scheduling orders silently countermanded the Court's clear instruction at the case management conference. *Id.* But it is a bedrock legal principle that a specific rule or order overrides more general rules or orders. Mot. 8 n.1. The same is true here: while the OGP and the scheduling orders contain general rules covering general amendments to Nygaard's contentions and pleadings, none of those orders purports to address DOE theories in particular, much less to relieve Nygaard of the need to seek leave before reintroducing DOE theories per this Court's express and specific directive at the case management conference.

Nygaard's remaining objections largely attack strawmen. Defendants have never asserted that the OGP or scheduling orders *imposed* the need to base any reintroduction of DOE theories on new evidence from Defendants. *See* Opp. 7. Rather, that requirement was expressly imposed as part of the Court's order at the case management conference. *Supra* 1-2. Nygaard does not dispute that fact. *See* Opp. 7-8 (arguing only that the requirement "is not supported by any of the Court's *written* orders" (emphasis added)). Defendants referred to the OGP and scheduling orders to illustrate that the requirement to base amendments on new evidence should have come as no surprise to Nygaard. Mot. 7-8. And in any case, Nygaard does not dispute that every bit of evidence he cited in support of his tardy DOE contentions was publicly available at the time he abandoned them at the case management conference. *Compare* Mot. 8-9, *with* Opp. 5-10.

Similarly, Nygaard simply misreads the majority of the other courts' local rules he surveys as permitting a plaintiff free rein to amend contentions in the wake of a *Markman* order not wholly to its liking. *See* Opp. 7-8. Most do not. Instead they generally require that the plaintiff "believes in good faith" that the claim construction requires an amendment. *See id.* And that good-faith belief cannot exist where the court adopts the opposing party's construction, or something else foreseeable. For example, "courts in the Eastern District of Texas have uniformly required the movant to show that the claim construction adopted by the court was 'unexpected or unforeseeable'" to justify an amendment to infringement contentions after a claim construction order. *Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-CV-588-WCB, 2018 WL 1695231, at *4 (E.D. Tex. Apr. 6, 2018) (collecting numerous cases). Furthermore, the court's construction

3

must have been unforeseeable "at the time of the parties' claim construction briefing." *Id.* Other courts have applied similar criteria. *See, e.g.*, *CommScope Techs. LLC v. Dali Wireless, Inc.*, No. 3:16-CV-0477-M, 2018 WL 4566130, at *3 (N.D. Tex. Sept. 21, 2018) (rejecting amendment because plaintiff "does not contend that the claims construction adopted by the Court were unexpected"); *Apple Inc. v. Wi-LAN, Inc.*, No. 14CV2235 DMS (BLM), 2018 WL 9538772, at *1-2 (S.D. Cal. Mar. 2, 2018) (striking amended contentions filed on "the last possible day" where plaintiff "should have been aware of the risk that the Court could adopt [defendant's] constructions" but never sought leave of court); *Richtek Tech. Corp. v. uPI Semiconductor Corp.*, No. C 09-05659 WHA, 2016 WL 3136896, at *1 (N.D. Cal. June 6, 2016) (local rules acknowledge "that an unexpected claim construction ruling may, absent undue prejudice, support a finding of good cause"). But Nygaard cannot offer any reason why this Court's claim constructions were unforeseeable. Indeed, he had known of them since before the case management conference, when some Defendants filed motions to dismiss based on the "front windscreen" limitation.

These rules underscore an important purpose of requiring proper disclosure of infringement contentions early in the litigation: to ensure that the parties can appropriately direct claim construction to address the other party's contentions. Nygaard's eleventh-hour amendment deprived Defendants of that ability. Mot. 10. Nygaard's opposition fails to address this clear prejudice to Defendants. Instead, Nygaard spills a great deal of ink on irrelevancies. Nygaard does not explain why continuing discovery or Defendants' access to technical evidence has anything to do with the prejudice caused during the claim construction process. *See* Opp. 8-10.

## II. Nygaard's Charts Do Not Provide Adequate Notice Of His DOE Theories.

On one thing the parties agree. "Infringement contentions serve the purpose of putting the defendant on notice of the basis of the plaintiff's infringement theories." Opp. 11. The problem is that Nygaard's DOE contentions fail to do this.

As Defendants established in the Motion, "[e]ven though the magic 'function, way, result' words are not specifically required" in infringement contentions, a plaintiff nevertheless "has to

describe how these requirements are met. Boilerplate is not enough." *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. C 11-5973 PSG, 2013 WL 4537838, at *1 (N.D. Cal. Aug. 22, 2013); *see also Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. CV 13-1668-LPS, 2017 WL 658469, at *3 (D. Del. Feb. 14, 2017)[2]; Mot. 10-11 (collecting other cases). But boilerplate is all Nygaard offers. In his contentions and pleadings, Nygaard attempts to rely solely on incomplete recitations of the function-way-result (FWR) test, where he provides any detail at all. He mentions at most one or two of the three prongs, and in no case does he explain *how* any of the prongs are met. *See* Mot. 11 (collecting examples). In particular, his explanations for the alleged "front windscreen" equivalents do not even reveal whether he contends that "deflect[ing] wind"[3] is a function, a way, or a result. *See* Mot. 11-12. Nor can Nygaard merge the prongs of the test. *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 693–94 (Fed. Cir. 1998).[4] Similarly, Nygaard fails to offer any explanation as to at least two prongs of the FWR test in his contentions for the "truncated sheared triangular pyramid" limitation. Mot. 12-13. His other contentions, for the "extends obliquely," "extending in front of the driver's position," and "without requiring the driver to move the driver's head" limitations, are similarly deficient. Mot. 13. All of them should be struck.

Seeking to avoid this conclusion, Nygaard again attacks strawmen. Defendants have never argued that Nygaard must "set forth the comprehensive set of evidence" he will present at trial.

---

[2] Nygaard vainly attempts to distinguish *Intellectual Ventures* by attacking a different portion of the decision. Opp. 11-12. To be sure, the Delaware court chiefly faulted plaintiffs for failing to apply both parts of the court's construction when discussing its *literal* infringement contentions. *See* 2017 WL 658469, at *2-3. In discussing DOE, however, the court separately held that the plaintiff must both identify an equivalent and explain "how the accused products perform the same function in substantially the same way to achieve substantially the same result." *Id.* at *3. Nygaard's contentions do not provide that explanation.

[3] Nygaard separately attempts to resurrect his rejected claim constructions in his contentions. *See, e.g.*, Ex. 3 at 3-4 (contending that the "front windscreen" equivalents also "provide a dimensional point of reference"). This Court *rejected* Plaintiff's construction of "front windscreen" as a point of reference, making his DOE contention doubly improper. Dkt. No. 207 at 2; Mot. 12.

[4] Nygaard cannot distinguish this holding of *Insituform* based on its procedural posture. *See* Opp. 13 n.8. Merging prongs of the FWR test is improper, full stop, at any procedural stage. Nygaard offers no authority for the odd proposition that he is permitted to invoke the FWR test as a basis for his DOE theories and then misapply that test however he wishes.

5

Opp. 11. Defendants insist only that he actually disclose the basis for his DOE contentions by "explain[ing] 'how the accused products perform the same function in substantially the same way to achieve substantially the same result.'" *Intellectual Ventures*, 2017 WL 658469, at *3. Nygaard has not done so; where he provides any explanation at all, he merely parrots the formula, waves his hands at one or two of the prongs, and leaves Defendants to guess how the test is allegedly met.

Furthermore, despite Nygaard's protests, the majority of the DOE assertions in the TAC are indeed conclusory "bare assertions," Opp. 11, that do not identify specific limitations or structures, much less any specific support such as a function, way, or result. *See, e.g.*, TAC ¶¶ 1, 251, 263, 267-269, 274-281, 285, 296, 300, 307, 311, 319, 323, 333-338, 340-342, 347-350, 354, 373-376, 380, 390, 395, 398, 401-402, 411-412, 416; *see also* Mot. 6, 13. As Nygaard concedes, courts have readily concluded that such "boilerplate" and detail-free contentions are insufficient. Opp. 11 & n.7; *see also* Mot. 10-11; *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 16 C 9179, 2017 WL 1862646, at *6 (N.D. Ill. May 9, 2017); *Rehco, LLC v. Spin Master, Ltd.*, No. 13 C 2245, 2014 WL 1088517, at *5 (N.D. Ill. Mar. 17, 2014); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. C 11-5973 PSG, 2013 WL 4537838, at *1 (N.D. Cal. Aug. 22, 2013). The few DOE allegations in the TAC that do identify a limitation—the "extending in front of the driver's position" and "without requiring the driver to move the driver's head" limitations of claims 1 and 4—nevertheless do not identify an alleged equivalent, much less any function, way, or result for either the limitation or the (unidentified) equivalent. *See, e.g.*, TAC ¶¶ 267, 269. Nor can Nygaard rely on a lower pleading standard. *See* Opp. 11. He added these contentions for the first time in his TAC, nearly seven weeks after the deadline for disclosing his final infringement contentions, with no justification or any attempt to show good cause for missing the contentions deadline.

In short, Nygaard is simply incorrect that his contentions "provide narrative explanation of why they are equivalent." Opp. 13. Most of the DOE assertions provide no narrative at all. Those that do merely recite the FWR test and fail to provide any meaningful explanation of how it is met. The Court should strike all of the DOE theories in both Nygaard's contentions and his TAC.

### III. Most Of Nygaard's DOE Contentions Are Legally Barred And Thus Futile.

Nygaard's opposition cannot save his DOE contentions for the "front windscreen" limitation (based on the driver's helmet visor and the racecar nose) and the "truncated sheared triangular pyramid" limitation from being legally barred, and therefore futile.

#### A. Nygaard dedicated two of the three alleged equivalents of the "front windscreen" limitation to the public by disclosing but not claiming them.

As Defendants showed in their Motion, Nygaard disclosed two of his alleged equivalents for the "front windscreen" limitation in his patent specification, but declined to claim them. Mot. 14-15. As a result, he dedicated those equivalents to the public and cannot recapture them through DOE. *Johnson & Johnston Associates Inc. v. R.E. Serv. Co., Inc.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002); *accord Eagle Pharm. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed. Cir. 2020).

Nygaard bases his entire argument to the contrary on the premise that the dedication-disclosure rule applies only where a patent *expressly identifies* the disclosed equivalent as an alternative to a claimed limitation. Opp. 14-15 (citing *Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*, 429 F.3d 1364 (Fed. Cir. 2005) and *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348 (Fed. Cir. 2012)). Nygaard badly over-reads the case law. Nygaard cannot escape the disclosure dedication rule simply because "the specification does not explicitly state" that his claimed equivalents are alternatives. *CSP Techs., Inc. v. Sud-Chemie AG*, 643 F. App'x 953, 959 (Fed. Cir. 2016). Rather, as the Federal Circuit has made clear,

> the requirement *Pfizer* and *SanDisk* set out is not as far-reaching as CSP makes it out to be. … The requirement [is not] one of form requiring us to identify some language specifically stating that an embodiment is an "alternative." … Instead, the requirement is one of substance where we determine from the specification's disclosure whether "one of ordinary skill would have come to the conclusion that the inventory[ ] ha[s] identified [the unclaimed embodiment] as an alternative to [the claimed embodiment]."

*Id*. (quoting *Pfizer*, 429 F.3d at 1379).

A person of ordinary skill would easily conclude that the '178 Patent discloses but does not claim a strengthening member in a racecar embodiment that lacks a windscreen but has a sloped nose and a driver with a helmet. Indeed, the specification expressly describes the strengthening

7

member "applied to a racing car" as depicted in Figures 63-74 as an embodiment of the alleged invention. *See* '178 Patent at 22:22-51. And while the specification's text may not expressly describe the helmet or the nose[5] of the racecar, it provides more than sufficient disclosure of both in figures. As Defendants showed, Figures 66-68 clearly depict the driver's round helmet with a rectangular visor at the front. Mot. 14-15 (annotating relevant figures). The same figures clearly depict the racecar's nose, which, Nygaard's protests notwithstanding, has a "dramatic downward slope." *Id.*; Opp. 15. Indeed, the slope of the nose of the racecar depicted in the '178 Patent is significantly steeper than on a Formula 1 car, where the nose is longer and more shallowly sloped. *See* Ex. 4 at 25, 54 (depicting 2019-2020 F1 racecars). Because Nygaard did not claim the depicted embodiments, they are dedicated to the public. *Johnson & Johnston*, 285 F.3d at 1054.

### B. Nygaard fails to overcome the prosecution history estoppel that bars all equivalents for the "truncated sheared triangular pyramid" limitation.

Nygaard's DOE contentions for the "truncated sheared triangular pyramid" limitation are legally barred by prosecution history estoppel. He presumptively surrendered all the territory between original claims 1 and 16 (which did not limit the strengthening member to any shape) and original claim 4 (which limited the shape to be "a triangular prism which has been sheared in a vertical plane" or "a truncated sheared triangular pyramid") when he narrowed his claims to incorporate these shape limitations in response to the rejection of claims 1 and 16. Mot. 15-16; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 740-41 (2002) ("A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim."). Thus, by amending claim 16 (issued claim 1) to add these limitations from claim 4, and canceling claim 1

---

[5] For the first time in his Opposition, Nygaard attempts to insert an additional new DOE theory that the "front wing" of a racecar, rather than its "nose," is equivalent to the claimed "front windscreen." Opp. 15. Nygaard did not include this assertion in his final contentions or his TAC, and indeed expressly circled portions of the racecar nose that *exclude* the front wing in his claim charts. *See, e.g.*, Ex. 3 at 4. Nygaard has offered no good cause why he should be allowed to add yet another new DOE theory at this late date, much less to do so back-handedly in a *brief*.

8

and rewriting claim 4 to be independent, Nygaard presumptively surrendered all equivalents that are not one of these shapes, including the curved wishbone shapes of the Halo and Aeroscreen. *Id.*

Most of Nygaard's opposition is misdirected to fighting this black-letter law. *See* Opp. 15-18 (arguing that alternative shapes are not within the scope of the surrendered subject matter). Nygaard relies primarily on *Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694 (Fed. Cir. 2014), but the *Pacific Coast* court specifically limited its holding—and the excerpt on which Nygaard relies—to the design patent context, where the claimed design is defined by the drawings. *Id.* at 704-05. Moreover, contrary to Nygaard's assertions (Opp. 16, 17-18), that he narrowed his claims by incorporating the shape limitations from a dependent claim still gives rise to a presumption of a complete surrender. *See, e.g.*, *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1144 (Fed. Cir. 2004) ("[T]he surrendered subject matter is defined by the cancellation of independent claims that do not include a particular limitation and the rewriting into independent form of dependent claims that do include that limitation. Equivalents are presumptively not available with respect to that added limitation."); *see also Felix v. Am. Honda Motor Co., Inc.*, 562 F.3d 1167, 1183-84 (Fed. Cir. 2009). Finally, Nygaard cannot avoid the presumption by noting that he need only have surrendered the shapes specifically disclosed in the prior art noted by the Examiner. Opp. 17. "To the contrary, it frequently happens that patentees surrender more through amendment than may have been absolutely necessary to avoid particular prior art. In such cases, we have held the patentees to the scope of what they ultimately claim." *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1361–62 (Fed. Cir. 2005).

Nygaard also fails to carry his burden to rebut the *Festo* presumption by arguing his amendment bears only a "tangential relation" to the asserted equivalents—whose shapes he asserts are "inconsequentially different" from a "truncated sheared triangular pyramid.".[6] Opp. 18. This is not the correct standard. The reason for an amendment is <u>not</u> "tangential" to an alleged

---

[6] It is undisputed that the other two exceptions to the *Festo* presumption do not apply here. Nygaard does not argue that the Halo and Aeroscreen shapes were "unforeseeable" or that some other reason prevented him from drafting a claim to literally cover their shapes. *See* Opp. 15-18.

9

equivalent if the amended limitation and the equivalent relate to the same feature. For example, in *Biagro W. Sales, Inc. v. Grow More, Inc.*, the patentee overcame prior art describing a diluted fertilizer by adding a limitation that required the claimed fertilizer to be concentrated within a particular range of concentration. 423 F.3d 1296, 1306 (Fed. Cir. 2005). The Federal Circuit held that the rationale for the amendment was not "tangential" to the alleged equivalent with a concentration higher than the claimed range, "[b]ecause both the reason for the amendment and the asserted equivalent relate to the concentration of the fertilizer," even though the concentration in the prior art was very different than in the accused product. *Id.* Similarly, here the reason for Nygaard's amendment was not "tangential" to the allegedly equivalent shapes of the Halo and Aeroscreen, because the amendment and the alleged equivalents both relate to the same feature—the shape of the strengthening member. The fact that the amendment overcame a rejection based on prior art that disclosed a different shape does not matter. *Id.*[7]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and strike all of Nygaard's infringement contentions and all of Nygaard's assertions in his TAC that rely on the doctrine of equivalents.

---

[7] *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282 (Fed. Cir. 2010), *see* Opp. 18, is not to the contrary. The *Intervet* court considered DNA sequences where the exact amount of overlap could be precisely computed. The court permitted plaintiff's DOE theory based on a sequence with a *99.7%* overlap, where the claims recited four sequences that overlapped by only 96%. *Id.* at 1285, 1292 (excluding alleged equivalents with overlaps as high as 76%). Nygaard falls well short of making such a precise showing here. He merely asserts without support that the curved wishbone shapes of the Halo and Aeroscreen are "inconsequentially different" from a "truncated sheared triangular pyramid" (Opp. at 18), when even a cursory glance reveals that these shapes are very different.

Dated: October 15, 2021

Respectfully Submitted

*/s/ Claudia Wilson Frost*
Claudia Wilson Frost – Lead Counsel
State Bar No. 21671300
Jeffrey L. Johnson
State Bar No. 24029638
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
609 Main Street, 40th Floor
Houston, TX 77002
Telephone: 713.658.6400
Facsimile: 713.658.6401
cfrost@orrick.com
jj@orrick.com

Travis Jensen
CA Bar No. 259925
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Rd.
Menlo Park, CA 94025
Telephone:  650.614.7400
Facsimile:  650.614.7401
tjensen@orrick.com

Jeffrey T. Quilici
State Bar No. 24083696
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
300 W. 6th St, Suite 1850
Austin, TX 78701
Telephone: 512.582.6950
Facsimile: 512.582.6949
jquilici@orrick.com

**ATTORNEYS FOR DEFENDANT FÉDÉRATION INTERNATIONALE DE L'AUTOMOBILE**

---
---

By:*/s/ Douglas M. Kubehl*
Douglas M. Kubehl
State Bar Number 00796909
doug.kubehl@bakerbotts.com
Harrison Rich *pro hac vice*
State Bar Number 24083730
harrison.rich@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Telephone: (214) 953-6816
Facsimile: (214) 661-4816

**ATTORNEYS FOR DEFENDANTS FORMULA ONE MANAGEMENT LIMITED AND FORMULA ONE WORLD CHAMPIONSHIP LIMITED**

By:*/s/ Edgar H. Haug*
Deron R. Dacus
State Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

Edgar H. Haug (pro hac vice)
Mark A. Chapman (pro hac vice)
Roman Khasidov (pro hac vice)
Haug Partners LLP
745 Fifth Avenue, 10th Floor
New York, New York 10151
Telephone: (212) 588-0800
Facsimile: (212) 588-0500

**ATTORNEYS FOR RED BULL RACING LTD. AND RED BULL TECHNOLOGY LTD.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 15, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3). Any other counsel of record will be served by a facsimile transmission or first-class mail.

*/s/ Jeffrey L. Johnson*
Jeffrey L. Johnson