# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| JENS H.S. NYGAARD<br><br>    Plaintiff,<br><br>    v.<br><br>FÉDÉRATION INTERNATIONALE DE L'AUTOMOBILE, FORMULA ONE MANAGEMENT LTD., FORMULA ONE WORLD CHAMPIONSHIP, MERCEDES-BENZ GRAND PRIX LTD., DAIMLER AG, LEWIS HAMILTON, RED BULL TECHNOLOGY LTD., RED BULL RACING LTD., FERRARI S.P.A., CHARLES LECLERC, AND DALLARA AUTOMOBILI S.P.A.<br><br>    Defendants. | Case No. 6:20-cv-00234-ADA<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S INITIAL DISCLOSURES**

I.    **Persons with knowledge**:

    1    Mr. Jens H.S. Nygaard, Plaintiff
           Contact through the undersigned counsel

Mr. Nygaard is the sole inventor and owner of the '178 patent: He is knowledgeable about the conception, reduction to practice, patenting and history of his inventions.
He dealt with Dr. Harry Lamb of Marks & Clerk in London on applications for his patent rights. Mr. Nygaard is knowledgeable about his meetings with government and EU agencies and his contracts the companies and organizations as described in the complaint. He is also knowledgeable about his contacts with auto companies and teams in his Second Amended Complaint. He is also knowledgeable about his dealings with FIA, Andy Mellor, and others as stated in his complaint and in his Second Declaration, Dkt# 174-4.

    2    Dr. Harry Lamb
           Marks & Clerk, retired
           Current contact information unknown

           Marks & Clerk
           15 Fetter Ln, Holborn

Case 6:20-cv-00234-ADA   Document 267-1   Filed 02/02/22   Page 3 of 15

      London EC4A 1BW, United Kingdom
      +44 20 7420 0000

Dr. Lamb and Marks & Clerk are knowledgeable about prosecution of all patents and applications for Mr. Nygaard's inventions and documents pertaining to them.

    3    Mr. Andy Mellor
         FIA and/or Institute for Global Motorsport Safety
         Current contact information unknown

Mr. Mellor had several meetings with Mr. Nygaard between November 2012 and April 2013 regarding implementation of his inventions into formula race cars. These meetings include those at FIA in Paris in November 2012; with Mr. Paddy Lowe at McLaren in Woking, England in December 2012; and March 2013 at FIA in Paris with Luca Pignacca and Didier Perrin. He also participated in a meeting on licensing Mr. Nygaard's patent rights in April 2013 in London. Other contacts with FIA involving Mr. Mellor are included in the Second Declaration of Jens H.S. Nygaard, Dkt# 174-4 Ex. 1. It is Mr. Nygaard's understanding that Mr. Mellor chaired or led the safety project that resulted in the adoption of the Halo in F1 and other formula racing.

    4    Mr. Luca Pignacca
         Dallara
         Current contact information unknown

Participated in March 27, 2013 meeting at FIA in Paris regarding implementation of Mr. Nygaard's inventions in racing. Created drawings of Halo concept after March 27, 2013 meeting.

    5    Mr. Didier Perrin
         FIA
         Current contact information unknown

Mr. Perrin attended the March 27, 2013 meeting at FIA in Paris regarding implementation of Mr. Nygaard's inventions in racing. He was either employed by Dallara or FIA at that time.

    6    Mr. Paddy Lowe
         Current contact information unknown

Former technical director, McLaren Racing, Mercedes Grand Prix Ltd., and Williams Racing. Mr. Lowe met with Mr. Nygaard, Mr. Mellor and others at McLaren Racing's facility in Woking, England in December 2012, about implementing Mr. Nygaard's inventions in Formula One racing. It is also believed that Mr. Lowe was technical director of Mercedes Grand Prix Ltd. during the time it worked on the Halo and had a role in its development.

    7    Sir Cedric Ashley
         Current contact information unknown

2

Sir Cedric Ashley was present at a meeting with FIA in Paris in November 2012. He collaborated for a time in or around 2012 with Mr. Nygaard to commercialize the inventions in the '178 patent. He organized a U.K. company, AlphaPillars Ltd., which to Mr. Nygaard's knowledge never engaged in trading, and never had an interest in the patent. Mr. Nyaard also stayed with Sir Cedric Ashley from time to time.

      8    Mr. Bernie Ecclestone
            Formerly Formula One
            Current contact information unknown

Mr. Nygaard and Mr. Eccelstone exchanged correspondence regarding Mr. Nygaards' patent applications and inventions in the mid-2000s.

      9    Ross Brawn
            Formula One
            Contact through counsel Baker Botts

Knowledgeable about Liberty Media's position on Halo after acquisition of Formula One, and measures taken personally and through Formula One to press for adoption of the Halo. Also knowledgeable about arrangements among teams, FIA, Formula One and drivers.

      10   Mr. Jean Baptiste Pinton
            FIA
            Contact through counsel, Orrick

Mr. Pinton communicated with Mr. Nygaard in 2019 about the '178 patent and Mr. Nygaard's assertion of infringement and requests to be paid for his work. Mr. Pinton supervises the affairs of the FIA and has information and access to records regarding the development of the Halo and investigation of accidents in past races. He is also knowledgeable about contract and financial arrangements among Formula One, FIA, teams and drivers.

      11   Mr. Jean Todt
            FIA
            Contact through counsel, Orrick

Mr. Todt is or was president of FIA, and would be knowledgeable about the development, adoption and implementation of the Halo and FIA rule changes. He also received correspondence from Mr. Nygaard regarding his patents. Mr. Todt will also have knowledge of site fees from the Circuit of the Americas for Formula One racing. He is also knowledgeable about contract and financial arrangements among Formula One, FIA, teams and drivers. Mr. Todt is also knowledgeable about the creation and operations of Formula E racing and arrangements among teams, drivers, and Spark Racing Technology.

      12   Mr. Quinten Crumbie
            Formerly FIA
            Current contact information unknown

He corresponded with Mr. Nygaard regarding a license to his patents and applications in the spring of 2013. He also signed an N.D.A. on March 13, 2013 with Mr. Nygaard.

    13    Rinaldo Maderno
            Attorney and Notary Public
            Last known contact information:
            CH - 6908 Massagno (lugano)
            Via San Gottardo 81
            Post Office Box 314
            Tel. +41 91 960 21 30
            Fax +41 91 960 21 31
                  madernrlawvers@bluewinch

Mr. Nygaard consulted with Attorney Maderno in or around 2013 regarding his patents and applications, including licensing issues regarding his inventions.

    14    Mr. Charles Leclerc
            Formula One driver
            Scuderia Ferrari
            Contact through counsel Morgan Lewis

Mr. Leclerc was the first Formula One driver to escape death or serious injury due to Mr. Nygaard's inventions (August 2018 at Spa). Mr. Leclerc subsequently was saved again from injury by Mr. Nygaard's inventions in September 2020 at the Italian Grand Prix. Mr. Leclerc will also have knowledge of his use of a windscreen/windshield in the 2019 U.S. Grand Prix race for Ferrari. Mr. LeClerc is also aware of the sight lines, field of vision, and driver's vision in open cockpit cars with Halo. Mr. Leclerc is also knowledgeable about endorsements and sponsorships, and F1, FIA and Ferrari.

    15    Stephen A. Soffen
            U.S. patent attorney for '178 patent
            Last known address Blank Rome
            1825 Eye Street
            Washington D.C 20006.

Mr. Soffen prosecuted the U.S. '178 patent. He has delivered a copy of his records to Plaintiff's counsel.

    16    Christian Horner
            Red Bull Technology/Red Bull Racing
            Contact through counsel, E. Haugh

Mr. Horner was involved in the choices among different protection devices for Formula One, which included Red Bull's Aeroscreen, Shield, Closed Cockpit and Halo. Mr. Horner is also knowledgeable about Red Bull's Aeroscreen program with IndyCar. Mr. Horner is also aware of

the sight lines, field of vision, and driver's vision in open cockpit cars with Halo and also open cockpit cars with Aeroscreen. He is also knowledgeable about endorsements and sponsorships, and F1, FIA and teams. He is knowledgeable about contract and financial arrangements among Formula One, FIA, teams and drivers. He is knowledgeable about F1 Strategy Group meetings in 2016 and 2017 where adoption of Halo was discussed.

>    17    Mr. Jay Frye
>          President, IndyCar
>    18    IndyCar LLC
>    19    IMS Productions (TV/Radio)
>          4790 West 16th Street
>          Indianapolis, IN 46222

Mr. Frye coordinated the development and implementation of the present Aeroscreen device for IndyCar. Mr. Frye is also knowledgeable about endorsements and sponsorships, IndyCar operations and IndyCar teams. He is knowledgeable about the effectiveness of Aeroscreen. He is knowledgeable about contract and financial arrangements among the Penske Organization, IndyCar, IMS Productions, IndyCar teams, media, race tracks, suppliers and drivers. Likewise, IndyCar LLC and IMS Productions are knowledgeable about these matters, and also accidents involving Aeroscreen.

>    20    Mr. Roman Grosjean
>          As a Director of the Grand Prix Driver's Association 2017-2020
>          And as a Driver who has raced with both Halo and Aeroscreen
>          Current contact information unknown

Mr. Grosjean is aware of the role of the Grand Prix Driver's Association in pressing for protection for driver's heads and necks, and the Halo Safety Device from 2016-2020. Mr. Grosjean also survived an accident at the 2020 Bahrain Grand Prix due to the Halo. Mr. Grosjean will also be knowledgeable as to whether Haas cars raced with windscreens/windshields in either of both of the 2018 and 2019 U.S. Grand Prix Races. Mr. Grosjean is also aware of the sight lines, field of vision, and driver's vision in open cockpit cars with Halo. Mr. Grosjean is now driving in the NTT IndyCar 500 Circuit and is knowledgeable about sight lines, field of vision, and driver's vision in IndyCars with Aeroscreen.

>    21    Alexander Wurz
>          Chairman of Grand Prix Driver's Association, 2014 to present
>          Current contact information unknown

Mr. Wurz is aware of the role of the Grand Prix Driver's Association in pressing for protection for driver's heads and necks, and the Halo Safety Device.

>    22    AJ Foyt Enterprises
>          19480 Stokes Rd
>          Waller, TX 77484
>          (936) 372-3698

IndyCar team, knowledgeable about IndyCar racing in Texas, Aeroscreen, and contracts among IndyCar, drivers, teams, sponsors, media and others.

    23    Circuit of the Americas LLC
           9201 Circuit of the Americas Blvd
           Austin, TX 78617

Knowledgeable about U.S. Grand Prix from 2012-2021, IndyCar racing and Formula 3 racing there, including site fees for the races, economic impact of the races, Texas state subsidies, ticket sales, media, advertising, events and performances in conjunction with those events.

    24    Speedway Motorsports LLC
           Texas Motor Speedway
           3545 Lone Star Cir.
           Fort Worth, TX 76177

Speedway Motorsports, LLC through its subsidiaries, owns and operates the following facilities: Atlanta Motor Speedway, Bristol Motor Speedway, Charlotte Motor Speedway, Kentucky Speedway, Las Vegas Motor Speedway, New Hampshire Motor Speedway, Sonoma Raceway, and Texas Motor Speedway. The Company produces and broadcasts syndicated motorsports programming to radio stations nationwide though its Performance Racing Network subsidiary. It is knowledgeable about IndyCar racing at its locations, including site fees for the races, economic impact of the races, Texas state subsidies, ticket sales, media, advertising, events and performances in conjunction with those events. The company is also knowledgeable about accidents and use of its properties.

    25    Sebastian Vettel
           As a Director of the Grand Prix Driver's Association, 2010-present
           Driver
           Current contact information unknown

Mr. Vettel is aware of the role of the Grand Prix Driver's Association in pressing for protection for driver's heads and necks, and the Halo Safety Device. Mr. Vettel also participated in testing the FIA's Shield device in July 2017 and is knowledgeable of its effect on a driver. Mr. Vettel is also aware of the sight lines, field of vision, and driver's vision in open cockpit cars with Halo. Mr. Vettel is also knowledgeable about whether Ferrari used windscreens in the 2018 and 2019 U.S. Grand Prix races, as well as sight lines, field of view and driver vision with Halo.

    26    Lewis Hamilton
           Driver
           Contact through counsel Hogan Lovells

Mr. Hamilton was an active proponent of improvements in drivers' safety and participated in a presentation by FIA to drivers in conjunction with the Hungarian Grand Prix. He is also aware of the sight lines, field of vision, and driver's vision in open cockpit cars with Halo. He is also

knowledgeable about whether Mercedes used windscreens in the 2018 and 2019 U.S. Grand Prix races, as well as sight lines, field of view and driver vision with Halo.  He is also aware of arrangements between teams and drivers as well as sponsorships and endorsements.

    27    Richard Wickens
          Former IndyCar 500 Driver
          Current contact information unknown.

Last IndyCar 500 car driver injured due to lack of head and neck protection.

    28    Peter Trafford
          Formerly FIA
          Current contact information unknown

Mr. Trafford attended a meeting in Paris with Mr. Nygaard regarding his inventions and driver safety in November 2012.

    29    Toto Wolf
          Mercedes Grand Prix Racing Ltd.
          Mercedes-Benz Formula E Ltd.
          Current contact information unknown

Mr. Wolf is knowledgeable about Mercedes development work on the Halo for FIA and Formula One, votes and debate over Halo and other devices in 2016 and 2017 among teams, F1 Strategy Group and use of windshields/windscreens on Mercedes race cars in U.S. Grand Prix Races.  Mr. Wolff is also aware of the sight lines, field of vision, and driver's vision in open cockpit cars with Halo and also open cockpit cars with Aeroscreen. He is also knowledgeable about contract and financial arrangements among Formula One, FIA, teams and drivers.  Further, Mr. Wolf is a director of and co-owner of Mercedes Grand Prix Racing Ltd.   Further, he is a director of Mercedes-Benz Formula E Ltd. and is knowledgeable about Mercedes Formula E team, its history with HWA AG and its operations.  He is also knowledgeable about the contracts and business arrangements in F1 Grand Prix Racing and also Formula E ePrix racing.

    30    Formula One teams 2018-2021

Each team will be aware of its usage of windscreen/windshields with their cars in the U.S. Grand Prix races in 2018, 2019 and thereafter, and at other events, including accidents or contact with debris involving Halo.  Each team will be aware of whether it supplies or causes to be supplied its cars and other equipment (including windscreens) from the United States abroad.  Each team is also knowledgeable about contract and financial arrangements among Formula One, FIA, teams and drivers.  Each team is also knowledgeable about sight lines, field of vision, and views from cars implementing Halo.  Each team is also knowledgeable about the F1 Strategy Group meeting in July 2017 on the Halo.

      31    Formula One Management Ltd.
      32    Formula One World Championship Ltd.
            Contact through counsel, Baker Botts

The Formula One entities have knowledge about all business affairs regarding Formula One Grand Prix Circuit racing, and have media licenses for those races. They also coordinate shipping and/or manage shipping and parts distribution on the Grand Prix Circuit for competing teams. They also develop and manage media (including social media). They are knowledgeable about accidents, costs and expenses related to Halo and cost savings from Halo. They are also familiar with the votes for the adoption of the Halo. They also have the knowledge of their predecessor Formula One entities. They are also knowledgeable about meetings regarding adoption of Halo and review of competing devices by F1 Strategy Group in 2016-2017. Formula One is also knowledgeable about its efforts to add more Grand Prix races in the U.S., including in Miami, Florida and Las Vegas, Nevada.

      33    HWA AG
            Benzstrasse 8
            D- 71563 Affalterbach
            Germany
            +49 (0) 71 44/87 17-0
            +49 (0) 71 44/87 18-111
            info@hwaag.com

Knowledgeable about teams it raced in Formula E, including development team for Mercedes-Benz (Daimler) in 2018-2019 Formula E season.

      34    Formula E teams 2018-2019 season

Each team will be aware of its usage of windscreen/windshields with their cars in the U.S. ePrix races in New York City in July 2019 and thereafter. Each team will be aware of whether it supplies or causes to be supplied its cars and other equipment (including windscreens) from the United States abroad. Each team is also knowledgeable about contract and financial arrangements among Formula E, FIA, teams and drivers.

      35    FIA
            Contact through counsel at Orrick

FIA is knowledgeable and has documents about Formula One Grand Prix Racing, Formula E ePrix Racing and Formula 3 racing. It is knowledgeable about the development and adoption of the Halo and other competing safety devices from about 2010 to 2021. It is knowledgeable about all accidents involving the Halo, accidents that were studied in the development of the Halo, and Formula One, Formula E, Formula 3 operations, races, site contracts, contracts with media, teams and others involved in Formula racing. It is also knowledgeable about dealings with Mr. Nygaard. It is knowledgeable about the lawsuit and settlement with the Estate and/or survivors of Mr. Jules Bianchi resulting from an injury at the Japanese Grand Prix in 2014.

    36    Formula E Operations Ltd.
    37    Formula E Race Operations Ltd.
            3 Shortlands
            9th Floor, Hammersmith
            London, England, W6 8DA

    38    Formula E Enterprise, Inc.

Formula E Operatons Ltd. has the license to run and contract to media Formula E. Formula E Race Operations is its subsidiary overseeing race operations. Formula E Enterprise Inc. is a subsidiary of Formula E Operations Ltd. and/or Formula E Race Operations Ltd. formed to run the U.S. ePrix. These entities are knowledgeable and have documents about Formula E ePrix Racing, all accidents involving the Halo in Formula E, all other aspects of Formula E racing including contracts with media, sites, teams, drivers and others in Formula E and their suppliers. It is believed that Formula E Operations Ltd. is the parent company, Formula E Race Operations Ltd. is the operating company, and Formula E Enterprises, Inc. is an operating company in the U.S.

    39    Lance Stroll
            Racing Point
            Driver
            Current contact information unknown

Mr. Stroll is also aware of the sight lines, field of vision, and driver's vision in open cockpit cars with Halo. Mr. Stroll is also knowledgeable about "pay drivers". Mr. Stroll is also knowledgeable about whether his team has used windshields/windscreens.

    40    Lawrence Stroll
            Racing Point
            Current contact information unknown

Mr. Stroll is knowledgeable about "pay drivers". Mr. Stroll is also knowledgeable about whether his team has used windshields/windscreens. He is also knowledgeable about endorsements and sponsorships, and F1, FIA and teams. He is also knowledgeable about contract and financial arrangements among Formula One, FIA, teams and drivers.

    41    Nicholas Latifi
            Williams Racing
            Driver
            Current contact information unknown

Mr. Latifi is knowledgeable about "pay drivers". He is also knowledgeable about whether his team has used windshields/windscreens and he is also aware of the field of vision of the driver operating a F1 car with a Halo.

    42    Ms. Cindy Williams
            Formerly Williams Racing
            Current contact information unknown

Ms. Williams is knowledgeable about "pay drivers". Ms. Williams is also knowledgeable about whether her team has used windshields/windscreens. She is also knowledgeable about endorsements and sponsorships, and F1, FIA and teams. Further, she is knowledgeable about contract and financial arrangements among Formula One, FIA, teams and drivers. She is also knowledgeable about meetings regarding adoption of Halo and review of competing devices by F1 Strategy Group in 2016-2017.

    43    Ferrari S.p.A.
            Scuderia Ferrari
            Contact through counsel at Morgan Lewis

Ferrari installed and tested the Halo for the first time on a Formula car. Ferrari also installed a Shield on a Formula car and its driver Sebastian Vettel tested it at Silverstone in July 2017. Ferrari also had an alternative Halo design with struts on either side of the center pillar that it proposed. Ferrari also benefitted directly from the Halo in the 2020 Italian Grand Prix with Charles Leclerc crashed at high speed into a barrier wall and debris was thrown at his car. Ferrari knowledgeable about contract and financial arrangements among Formula One, FIA, teams and drivers. Ferrari is also knowledgeable about meetings regarding adoption of Halo and review of competing devices by F1 Strategy Group in 2016-2017. Ferrari is also familiar with Mr. Nygaard's patent through its patent application for a U.S. Patent, issued on March 9, 2021, citing Mr. Nygaard's '178 patent and its Italian and European counterparts. Ferrari is also knowledgeable about its customer racing and marketing associated with race events.

    44    Mercedes Grand Prix Ltd.
            Contact through Hogan Lovells

Mercedes worked on development of the Halo in or around 2013-2017, and thereafter, including multiple iterations of the Halo. Mercedes will have documents on cost of development, testing, and design adjustments. Mercedes will also have documents on cost of implementing Halo on Formula vehicles. Mercedes will also be knowledgeable about contract and financial arrangements among Formula One, FIA, teams and drivers. Mercedes is also knowledgeable about the use of windscreens for Formula One vehicles it raced in 2018- 2021. Mercedes is also knowledgeable about meetings regarding adoption of Halo and review of competing devices by F1 Strategy Group in 2016-2017. Mercedes is also knowledgeable about its customer racing and marketing associated with race events (e.g., Silver Arrows Clubs).

    45    Mercedes-Benz Formula E Racing, Ltd.
            Contact through Hogan Lovells

Mercedes did the work on development of the Halo in or around 2013-2017, including multiple iterations of the Halo.  Mercedes will have documents on cost of development, testing, and design adjustments in Formula E.  Mercedes will also have documents on cost of implementing Halo on Formula E. vehicles.  Mercedes will also be knowledgeable about contract and financial arrangements among Formula E, FIA, teams and drivers.  It will also have knowledge of the relationship with HWA AG and its role in the 2018-2019 Formula E season as set forth in the complaint.

      46    Daimler AG
             Contact through Hogan Lovells

Daimler effectively ran Mercedes Grand Prix Ltd. through 2020, as alleged in the complaint, controlled its funds and investment in R&D, and benefitted from the advertising value from both Mercedes Grand Prix Ltd. and Mercedes-Benz Formula E Racing, Ltd.  Daimler is also knowledgeable about contracting with HWA AG to field a Formula E team to race in the July 2019 ePrix.  Daimler is also knowledgeable about its role in managing Mercedes-Benz Formula E Racing Ltd.  Daimler is knowledgeable about all aspects of the Formula One and Formula E businesses.  Daimler is also knowledgeable about meetings regarding adoption of Halo and review of competing devices by F1 Strategy Group in 2016-2017.  Mr. Nygaard also met with Daimler AG in Stuttgart Germany in 2015 and Daimler is knowledgeable about that meeting.

**Documents:**

      47    Mr. Nygaard's documents on the topics identified above and things regarding his invention, efforts to promote and market his inventions, including interactions with automobile companies, as in his complaint, and FIA, Formula One, Paddy Lowe and others, are under his control.

      48    Other documents relevant to this case are likely in the custody of persons with knowledge of the topics to which they pertain.

      49    Marks & Clerk documents remain at their offices in London, and Plaintiff has not been able to receive those as they are largely paper files, and have been inaccessible due to covid restrictions at that firm.

      50    Documents from U.S. prosecution counsel have been collected and are at counsel's office.

**Damages**:

Plaintiff seeks a reasonable royalty.  However, the Defendants' positions in their court ordered disclosures was that they were only required to provide disclosure of sales, with no other financial information being called for at that time.  Since Formula One, and the Red Bull Defendants did not "sell" the Halo, they produced no financial information (the same is true of Mercedes and Ferrari).  Plaintiff cannot form a damages position without financial information from the majority of the Defendants, nor can it give a damages position absent cost saving and

other financial information that would show the "cost savings" and "insurance value" of the invention.

Defendants Red Bull Technology, and Red Bull Racing have not produced any documents on financial matters, including their costs and expenses regarding the Halo, its design-in and cost to implement. Likewise, they have produced nothing on their expenses and payments or other costs regarding their development of the Aeroscreen, including any financial , advertising, or marketing benefits, or revenuethey derived from Aeroscreen.

FIA has not produced any documents regarding development costs, costs of accidents, costs of investigation, including claims paid regarding the death of Jules Bianchi (the last driver killed in Formula One prior to adoption of the Halo). It has not produced documents related to financial arrangements with component manufacturers or the testing facilities.

Formula One has not produced any documents regarding accident costs and financial impact of accidents prior to and after implementation of the Halo. Formula One has not produced documents to show its expenditures on media (e.g., social media, "Drive to Survive" etc.).

Dallara has not produced any documents regarding its contract with Haas, nor has it produced any documents regarding the costs of development of Halo or Aeroscreen.

These, and other records, are essential for Plaintiff to frame his damages analysis. Damages information will be supplemented after information is received and reviewed. Here, unlike most other devices, the component cost does not reflect the value of the patented technology, or R&D, or cost savings, or business reasons behind the device, for among other reasons, it was built to specification by the manufacturers and did not result from their research and development. While multiple aspects of the 15 factor *Georgia-Pacific* test speak to these issues, it is by no means the exclusive test for damages "not less than a reasonable royalty". For example, the Federal Circuit has approved royalties on cost savings as well as a royalty based on an insurance type analysis. Regardless, however, Plaintiff cannot frame its final royalty analysis without information.

Plaintiff will supplement within the time for expert reports.

Dated: March 29, 2021	Respectfully submitted,

By:   /s/ Danielle J. Healey
    **Danielle J. Healey**
    Attorney in Charge
    Texas Bar No. 09327980
    healey@fr.com
    **Brian Strand**
    Texas Bar No. 24081166
    strand@fr.com
    **FISH & RICHARDSON P.C.**
    1221 McKinney Street, Suite 2800
    Houston, Texas 77010
    Telephone: (713) 654-5300
    Facsimile: (713) 652-0109

    **Tommy Jacks**
    Texas Bar No. 10452000
    jacks@fr.com
    **FISH & RICHARDSON P.C.**
    111 Congress Avenue, Suite 810
    Austin, Texas 78701
    Telephone: (512) 472-5070
    Facsimile: (512) 320-8935

    **Ahmed J. Davis** (*pro hac vice*)
    Washington D.C. Bar No. 472321
    adavis@fr.com
    **FISH & RICHARDSON P.C.**
    1000 Maine Ave SW
    Washington, D.C. 20024
    Telephone: (202) 783-5070
    Facsimile: (202) 783-2331

    ***Counsel for Plaintiff Jens H.S. Nygaard***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above document was served on March 29, 2021 to all counsel of record via ECF.

*/s/ Danielle J. Healey*
Danielle J. Healey
