# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| JENS H. S. NYGAARD<br><br>    Plaintiff,<br><br>v.<br><br>FÉDÉRATION INTERNATIONALE DE L'AUTOMOBILE, FORMULA ONE MANAGEMENT LTD., FORMULA ONE WORLD CHAMPIONSHIP, MERCEDES BENZ GRAND PRIX LTD., DAIMLER AG, LEWIS HAMILTON, RED BULL TECHNOLOGY LTD., RED BULL RACING LTD., FERRARI S.P.A., CHARLES LECLERC, AND DALLARA AUTOMOBILI S.P.A,<br><br>    Defendants. | Civil Action No. 6:20-cv-00234-ADA<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF JENS H. S. NYGAARD'S RESPONSES TO DEFENDANTS RED BULL TECHNOLOGY LTD. AND RED BULL RACING LTD.'S FIRST SET OF INTERROGATORIES (NOS. 1-4)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Jens H. S. Nygaard ("Nygaard") hereby responds to Defendants Red Bull Technology Ltd. (RBT) and Red Bull Racing Ltd.'s (RBT) (collectively, "Red Bull") First Set of Interrogatories as follows. Because these interrogatories call for contentions and facts developed in the litigation as well as legal theories, Mr. Nygaard's verification is limited to facts within his knowledge, and otherwise adopted for him as Plaintiff as signed by counsel.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1. Plaintiff objects to any instruction or definition to the extent it calls for attorney-client, attorney work product, or other information protected from discovery.

1

2. Plaintiff objects to any instruction and definition to the extent it imposes any obligation beyond the letter of the Federal Rules of Civil Procedure or applicable Case Management Order or other Orders applicable to this case.

3. Responses are due on May 24, 2021, based on an agreement of counsel.

# INTERROGATORIES

**Interrogatory No. 1:**

Separately for RBR and RBT, identify and describe in detail each and every instance, prior to the commencement of this action, in which Plaintiff had any contact or communication with RBR or RBT regarding the '178 patent, any Related Patent, any Accused Product, or any related subject matter, including each instance in which Plaintiff provided notice to RBR or RBT of the '178 patent, of any Related Patent, or of any contention that RBR or RBT infringed the '178 patent or any Related Patent, including the person(s), place(s) and date(s) associated with each such instance, and identify all related documents and things and all persons with related knowledge.

    **OBJECTION:** This interrogatory is multiple interrogatories.  The interrogatory is premature because discovery has only recently opened and Defendants have not completed production of their documents to Plaintiff.  The Red Bull Defendants have not provided sufficient information in their disclosures and discovery responses to permit Plaintiff to differentiate the responsibility for each of their acts between the two entities.  Discovery is ongoing and Plaintiff reserves the right to amend or supplement this answer.

    **RESPONSE:** Plaintiff did not have any direct contact or communication with anyone he knew at the time was employed by or working for RBR or RBT prior to filing suit.  Plaintiff is not aware if anyone he had contact with regarding the '178 patent provided information to the Red Bull Defendants or if anyone with knowledge from Mercedes-Benz or McLaren or FIA or Dallara or Aston Martin or others that interacted with Nygaard had informed either RBR or RBT about his patent.

    Plaintiff did, however, have direct contact and discussed the patent with Luca Pignacca of Dallara and Andy Mellor of FIA, on March 27, 2013, at a meeting at the FIA in Paris, France.  Dallara was RBT's development partner for the Aeroscreen, currently deployed in IndyCar, and Dallara also imports and sells components for the device.

    Plaintiff also had direct contact regarding the patent prior to suit with the FIA in a series of meetings including in November 2012 in Paris, France with Andy Mellor and others associated with the FIA (and possibly other participants) and Sir Cedric Ashley; December 2012 at McLaren Racing with Paddy Lowe, Andy Mellor and others.  Plaintiff also had a meeting in London in April 2013 with Andy Mellor and an FIA Executive regarding his patents.  Quentin Crombie corresponded with Plaintiff in May 2013 regarding his patents.  Plaintiff had contact with FIA regarding licensing the '178 patent in correspondence in the first quarter of 2019, on which FIA copied Formula One Management Ltd. and Liberty Media employees.  Plaintiff also contacted Formula One and Delta Topco by letter to Bernie Eccelstone in 2006.  Plaintiff had contact with Aston Martin's Dr. Ulrich Bez; Aston Martin was or later became RBR's and RBT's collaborator in Formula One Grand Prix Racing.  Paddy Lowe joined Mercedes-Benz Grand Prix, Ltd. as its technical director in Spring 2013, and served in that role during its work on the Halo.  Formula One, FIA, Mercedes-Benz and McLaren were all members of the Formula One Strategy Group in which RBR participated and which actively considered the efforts to improve driver head and neck protection in 2015-2017.

3

Plaintiff's patents and EPO application were the primary prior art cited against and by Ferrari's applications for a Halo for sports cars. Ferrari's U.S. patent application published in December 2019; and was highly publicized at that time in the motor sport press, U.S. Pub. Pat. App. 2019/0375464 A1.

Plaintiff sent notice to the Corporate Secretary for each Red Bull Defendant on April 1, 2020, of this lawsuit with the patent—which put them on notice of the patent and how it was infringed by them. Later, Plaintiff's counsel communicated with RBR's and RBT's counsel during this case..

Plaintiff will also produce documents pursuant to Fed. R. Civ. P. 33(d) to answer this interrogatory.

**Interrogatory No. 2:**

For each Asserted Claim for which you contend that RBR or RBT allegedly has induced infringement, state in full the basis for your contention, separately for RBR and RBT, including identifying and describing in detail every alleged act of direct infringement that RBR or RBT allegedly induced and every alleged act of inducement by RBR or RBT, including your basis for contending that RBR or RBT knew about the '178 patent and knew that the allegedly induced act constituted infringement, and your basis for contending that RBR or RBT actively and knowingly aided and abetted and specifically intended to cause or encourage the alleged direct infringement, and identify all related documents and things and all persons with related knowledge.

**OBJECTION:** Plaintiff objects to this interrogatory to the extent it calls for attorney-client privileged or work product protected information. The interrogatory is compound and is multiple interrogatories. Plaintiff also objects to this interrogatory because he has sought discovery from RBT and RBR on these topics and both are delinquent in providing the requested information, and further discovery is ongoing. Plaintiff also objects because the Red Bull Defendants have not provided sufficient information in their disclosures and discovery responses to permit Plaintiff to differentiate the responsibility for each of their acts between the two entities. Plaintiff also objects because much of information sought is uniquely in the possession of RBT and RBR. Discovery is ongoing and Plaintiff reserves the right to supplement this answer.

**RESPONSE:** There is strong circumstantial evidence that RBR and RBT had notice of the '178 patent prior to suit through one or more of their collaboration on the Aeroscreen with Dallara, their collaboration with Aston Martin in Formula One racing, their participation in the Formula One Strategy Group, and their relationships with Formula One Management Co., Ltd. and FIA, as well as publicity regarding Ferrari's 2019 published patent application U.S. 2019/0375464 A1, as set forth above in response to Interrogatory No. 1.

The Red Bull Defendants had notice of this lawsuit and patent upon delivery to their Corporate Secretary of the Original Petition with the patent attached (mailed April 1, 2020). They had notice before the first IndyCar race events deploying the Aeroscreen (the weekend of June 6, 2020 at Texas Motor Speedway).

4

RBT and RBR induced direct infringement by making and using the infringing Aeroscreen by all teams and drivers competing in every IndyCar race and qualification during the 2020 Season, which began at Texas Motor Speedway on the weekend of June 6, 2020, by having promoted the Aeroscreen for their use in IndyCar racing.  RBT and RBR through their ongoing design work on the Aeroscreen and role in promoting the Aeroscreen induced importation of parts specifically for the Aeroscreen into the United States, which included components that had no substantial non-infringing use but for assembly into the infringing Aeroscreen.  RBT and RBR studied and made modifications to the Aeroscreen for and during the 2020 IndyCar season.  They induced use of the Aeroscreen by all teams and drivers in all practices, qualification and testing in the 2021 Season.  RBT continues to promote use of the Aeroscreen, importation of its components, assembly of its components by IndyCar 500 and IndyLights teams and others for the 2021 racing season.

The Aeroscreen components were imported into the U.S., sold to and assembled by or for the teams that purchased them starting in late 2019 through 2021.  The Aeroscreen was used in the Official Practices for the 2020 season at Circuit of the Americas in Austin, Texas, and Texas Motor Speedway in Ft. Worth, Texas from February 11-13, 2020, and may have been used in the United States prior to such events during preparations for them.  RBT is also believed to have directly infringed when it tested the Aeroscreen in the United States since 2019.  RBR and RBT are liable for the direct infringement of the IndyCar teams and drivers in 2020 and 2021.

Persons with knowledge of direct infringement include Tino Belli and Jay Frye of IndyCar, Antonio Montanari of Dallara, the drivers of cars competing in the 2020 and 2021 IndyCar 500 events, 2021 IndyLights events, their teams, their sponsors, the IndyCar organization, IMS Productions and its related companies, NBC sports, Peacock Sports, and employees of the venues where the races were held.  Copies of Plaintiff's infringement contentions in this case for the Aeroscreen are attached to the Second Amended Complaint.

Documents regarding the design, making, and use of the Aeroscreen are not in Plaintiff's possession or knowledge except insofar as produced in this lawsuit or downloaded from Internet Media sites, including the Facebook pages of Dallara Group and AJ Foyt Racing.

 RBR directly infringed the patent by importing, making (assembling racing vehicles at the track) cars including the Halo on RBR Cars in the 2018 and 2019 U.S. Grand Prix, and by supplying substantial components of the cars and the Halo to the foreign races after the U.S. races.  RBR also directly infringed by supplying the Halo abroad since it is a substantial component with no substantial non-infringing use.  RBR also directly infringed by drivers it employed driving Alpha Tauri (Torro Rosso) Cars in the 2018 and 2019 U.S. Grand Prix.  Persons with knowledge include these drivers, including Max Verstappen and Alex Albon, and other Red Bull and Alpha Tauri (Torro Rosso) drivers and pit crews, and others who viewed the cars up close during this time or participated in importing, making or supplying the parts or broadcasting the races: including but not limited to DHL, Formula One Management Ltd., Formula One World Championship Ltd., FIA and ESPN.

Plaintiff will also produce documents pursuant to Fed. R. Civ. P. 33(d) to answer this interrogatory.

**Interrogatory No. 3:**

For each Asserted Claim for which you contend that Plaintiff should recover infringement damages from RBR or RBT under 35 U.S.C. § 284, state in full the basis for your contention, separately for RBR and RBT, including describing the amount and type of damages (*e.g.*, lost profits, reasonable royalty, established royalty, ongoing royalty, etc.) that you contend should be recovered and the basis for your contention, including in the case of a reasonable royalty the royalty base and the royalty rate, how each of the *Georgia-Pacific* factors affects the reasonable royalty, what the smallest saleable unit containing the patented feature is, the portion of the value of the Accused Product attributable to the patented feature, and any cost savings or insurance value that result from the patented feature, and identify all related documents and things and all persons with related knowledge.

    **OBJECTION:** This interrogatory calls for attorney-client and attorney work product information.  The interrogatory is compound and is multiple interrogatories.  This interrogatory also calls for expert analysis prior to the time for designation of experts or their reports.  The Red Bull Defendants have not provided sufficient information in their disclosures and discovery responses to permit Plaintiff to differentiate the responsibility for each act undertaken between the two entities or to compute damages as to either of them.  This interrogatory further requires discovery from the Defendants which Plaintiff has not yet received.  Discovery is ongoing and Plaintiff reserves the right to supplement this answer.

    **RESPONSE:** Plaintiff seeks not less than a reasonable royalty pursuant to Section 284 of Title 35, enhanced for willfulness, and pre-judgment interest and attorneys' fees and costs.  This will be based on the value of his inventions as incorporated into the Halo and Aeroscreen and open cockpit race cars, expert witness analysis and testimony.  This will also account for past offers by Plaintiff to license the Halo to FIA in 2013 and 2019.  This will also account for increases in number of F1 Grand Prix Events and revenues from the F1 Grand Prix activities.

    The smallest salable unit is not applicable to the car with a Halo or Aeroscreen or to the Halo or Aeroscreen.  Halo components are made by parts shops to specification, so the selling price only reflects the cost of materials and manufacturing, not the several years of development by Mr. Nygaard, FIA and multiple companies including RBR and RBT or the value of the invention to open cockpit racing.  Aeroscreen's Halo is made by suppliers who have incorporated the Halo into the Aeroscreen as designed by Red Bull, who did not invest in the many years of research and development of Halo.  Plaintiff lacks sufficient information about the value of the resources spent developing the Halo or Aeroscreen or designing it into vehicles, every contact with the Halo or Aeroscreen during racing, cost-savings of use of the Halo or Aeroscreen, value of use of the Halo or Aeroscreen to teams, drivers, Formula One Grand Prix racing or FIA or IndyCar or Formula E, or of supply from the United States for open cockpit racing, as well as sponsor and advertising placement on the Halo and Aeroscreen during the races, among other facts relevant to the value of the invention to the Defendants.  Plaintiff also lacks information on the sales, distribution and installation for both the Halo and Aeroscreen.  Plaintiff also lacks discovery on valuation and value of the Halo or Aeroscreen by Defendants and other users.  Further, the Halo and Aeroscreen prove their value with each accident since their installation, which continue to occur frequently in Formula One and IndyCar racing.

    RBR is a direct infringer for making and using the invention in the United States, and

RBT is liable with RBR for RBR's infringement as well as the direct infringement by RBR drivers in the 2018 and 2019 U.S. Grand Prix races, which include the Alpha Tauri (Torro Rosso) drivers and for infringement by all drivers and teams in IndyCar racing in 2020 and 2021. RBT is also a direct infringer based on its testing of the Aeroscreen including the Halo in the United States since 2019. RBT and/or RBR are direct infringers under § 271(f) based on supply of substantial components of the invention from the United States for assembly abroad including components with no substantial non-infringing use but for use in the invention.

Plaintiff will supplement the answer to this interrogatory after it receives more discovery.

Plaintiff will also produce documents pursuant to Fed. R. Civ. P. 33(d) to answer this interrogatory.

**Interrogatory No. 4:**

For each Asserted Claim for which you contend that RBR or RBT has willfully infringed and that Plaintiff should recover enhanced damages under 35 U.S.C. § 284, state in full the basis for your contention, separately for RBR and RBT, including identifying and describing in detail every alleged act of willful infringement by RBR or RBT, including your basis for contending that RBR or RBT knew about the '178 patent and willfully infringed and that this conduct constituted an egregious case of misconduct beyond typical infringement, and identify all related documents and things and all persons with related knowledge.

**OBJECTION:** Plaintiff objects to this to the extent it asks for attorney client and attorney work product information. The interrogatory is compound and is multiple interrogatories. Plaintiff further objects because it calls for information in RBR's and RBT's possession. The Red Bull Defendants have not provided sufficient information in their disclosures and discovery responses to permit Plaintiff to differentiate the responsibility for each act undertaken between the two entities. Further, discovery is ongoing and Plaintiff reserves the right to supplement this answer. In addition, the interrogatory is objectionable to the extent it asks for expert testimony on damages since it is premature under the scheduling order.

**RESPONSE:** Plaintiff incorporates by reference its responses to interrogatories 1-3 above, and will produce documents pursuant to Fed. R. Civ. P. 33(d) to answer this interrogatory.

**EXECUTED ON MAY 24, 2021 JENS H.S. NYGAARD**

/s/ JENS H.S. NYGAARD

Dated: May 24, 2021                    Respectfully submitted,

By: */s/ Danielle J. Healey*
    **Danielle J. Healey**
    Attorney in Charge
    Texas Bar No. 09327980
    healey@fr.com
    **Brian G. Strand**
    Texas Bar No. 24081166
    strand@fr.com
    **FISH & RICHARDSON P.C.**
    1221 McKinney Street, Suite 2800
    Houston, Texas 77010
    Telephone: (713) 654-5300
    Facsimile: (713) 652-0109

    **Tommy Jacks**
    Texas Bar No. 10452000
    jacks@fr.com
    **FISH & RICHARDSON P.C.**
    111 Congress Avenue, Suite 810
    Austin, Texas 78701
    Telephone: (512) 472-5070
    Facsimile: (512) 320-8935

    **Ahmed J. Davis** (*pro hac vice*)
    Washington D.C. Bar No. 472321
    adavis@fr.com
    **FISH & RICHARDSON P.C.**
    1000 Maine Ave SW
    Washington, D.C. 20024
    Telephone: (202) 783-5070
    Facsimile: (202) 783-2331

    **COUNSEL FOR PLAINTIFF**
    **JENS H. S. NYGAARD**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record by electronic mail this 24th day of May, 2021.

*/s/ Danielle J. Healey*
Danielle J. Healey