# EXHIBIT 14

```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF TEXAS
 2                            WACO DIVISION

 3   DAEDALUS BLUE LLC                *
                                      * November 23, 2021
 4   VS.                              *
                                      * CIVIL ACTION NO. W-20-CV-73
 5   SZ DIJ TECHNOLOGY CO., LTD, ET AL

 6                 BEFORE THE HONORABLE ALAN D ALBRIGHT
                   FINAL PRETRIAL CONFERENCE (via Zoom)
 7
     APPEARANCES:
 8
     For the Plaintiff:         Charles E. Cantine, Esq.
 9                              Dunlap Bennett & Ludwig PLLC
                                349 5th Avenue
10                              New York, NY 10016

11                              William Flachsbart, Esq.
                                Dunlap Bennett & Ludwig PLLC
12                              333 N. Michigan Ave., Suite 2700
                                Chicago, IL 60601
13
                                Raymond Jones, Esq.
14                              Dunlap Bennett & Ludwig PLLC
                                211 Church Street SE
15                              Leesburg, VA 20175

16   For the Defendant:         Jacob Schroeder, Esq.
                                Finnegan Henderson Farabow Garrett &
17                                Dunner LLP
                                Stanford Research Park
18                              3300 Hillview Avenue, 2nd Floor
                                Palo Alto, CA 94304
19
                                Benjamin R. Schlesinger, Esq.
20                              Shawn S. Chang, Esq.
                                Finnegan Henderson Farabow Garrett &
21                                Dunner LLP
                                271 17th St. Nw Suite 1400
22                              Atlanta, GA 30363-6209

23

24

25
```

2

```
 1                              J. Michael Jakes, Esq.
                                Jason Romrell, Esq.
 2                              Qingyu Yin, Esq.
                                Finnegan, Henderson, Farabow, Garrett
 3                              Kelly Lu, Esq.
                                  & Dunner LLP
 4                              901 New York Ave. Nw
                                Washington, DC 20001
 5
                                Michael Chibib, Esq.
 6                              Bracewell LLP
                                111 Congress Ave, Suite 2300
 7                              Austin, TX 78701

 8   Court Reporter:           Kristie M. Davis, CRR, RMR
                                PO Box 20994
 9                              Waco, Texas 76702-0994
                                (254) 340-6114
10

11        Proceedings recorded by mechanical stenography, transcript

12   produced by computer-aided transcription.

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          DEPUTY CLERK:  Status conference in Civil Action

2   6:20-CV-73, styled Daedalus Blue LLC versus SZ DJI Technology

3   Company, Limited and DJI Europe B.V.

4          THE COURT:  If I could have announcements from counsel

5   starting with the plaintiff.

6          MR. CANTINE:  Good afternoon, Your Honor.  This is Chuck

7   Cantine from Dunlap Bennett & Ludwig on behalf of the

8   plaintiff.

9          MR. CHIBIB:  Good afternoon, Your Honor.  Mike Chibib of

10  Bracewell on behalf of the DJI defendants.  With me from the

11  Finnegan law firm are Mike Jakes, Jacob Schroeder, Qingyu Yin,

12  Ben Schlesinger, Jason Romrell and Shawn Chang.

13         THE COURT:  Okay.  The purpose of this hearing is I want

14  to hear from plaintiff since they don't have a damages expert

15  how they intend to prove damages at trial.  So I'm happy to

16  hear from the plaintiff.

17         MR. CANTINE:  Thank you, Your Honor.  Again, this is Chuck

18  Cantine.

19         So pursuant to the statute, Your Honor, 35 USC 284 --

20         THE COURT:  I don't need any of the law.  I don't need any

21  of the law.  I want you to skip right over to how you're

22  planning to prove it at trial.

23         MR. CANTINE:  Certainly.  So the evidence we plan on

24  introducing to the jury, Your Honor, includes sales of the

25  accused products.  We have licenses taken by the defendant that

4

1  they contend are comparable.

2       THE COURT:  So who -- no.  So who contends they're

3  comparable?

4       MR. CANTINE:  The defendants produced them, Your Honor,

5  because they contend that they are comparable.

6       THE COURT:  But you have no expert on your side to say

7  they're comparable.

8       MR. CANTINE:  Our expert didn't think that they were

9  comparable, but, nonetheless, their expert did, and --

10      THE COURT:  Well, there you go.  Their expert isn't going

11 to get on the stand during your case-in-chief though.  So you

12 have no one to testify that these are comparable.

13      MR. CANTINE:  Well, I can certainly ask their 30(b)(6)

14 witness about it, Your Honor, and their corporate rep if their

15 contention is that they're comparable.  But we've got two

16 license agreements, both lump sum, that DJI --

17      THE COURT:  And so who testifies what relevance that has

18 to your damages?

19      MR. CANTINE:  Well, again, Your Honor, we have jury

20 instructions that --

21      THE COURT:  No, no, no.  Look.  Who testifies on behalf of

22 plaintiff how those licenses impact how much the damages are?

23      MR. CANTINE:  Well, I don't know that any of our witnesses

24 are going to testify about that, Your Honor.  We certainly have

25 our technical expert, but no.  He's not going to opine the

5

1  dollar figures.

2      THE COURT:  So you have no witness who can tell the jury

3  how to relate either of those licenses to any amount that you

4  owe that you're entitled to?  You have no evidence?

5      MR. CANTINE:  Well, the license agreements speak for

6  themselves about what DJI considered to be the appropriate

7  amount of money --

8      THE COURT:  And what -- and who on your side says what

9  that -- why that makes a difference and how the jury should

10  take those into account in determining what amount of -- what

11  is the appropriate amount of damages?

12      MR. CANTINE:  Well, I think, Your Honor, we can get it

13  into evidence through their -- again, through their 30(b)(6)

14  and then argue it in closing to the jury in --

15      THE COURT:  No, no, no, no, no.  You don't get to argue it

16  unless there's evidence.  Evidence that this has some -- the

17  only reason these licenses would be reasonable is in the

18  context of a hypothetical negotiation where the jury could be

19  told by an expert these are comparable licenses that the

20  parties would have had and how they impact a reasonable

21  royalty.  You have none of that to put into evidence.

22      MR. CANTINE:  Again, Your Honor, I think the license

23  agreements speak for themselves.  I think we can get them into

24  evidence, and when you look at the jury instructions --

25      THE COURT:  No.  Assuming you get them -- I'm only going

6

1    to go through this one more time.  I'm assuming you get the

2    licenses into evidence.  You have no one who can testify that

3    these are comparable or what that means or how it fits into the

4    calculation of a reasonable royalty.  You have no one on the

5    plaintiff's side who can do that, correct?

6         MR. CANTINE:  Again, other than in closing argument and in

7    conjunction with the jury instructions, Your Honor.  That's how

8    we --

9         THE COURT:  Okay.  I'm going to try one more time.

10   Evidence.  There's no one on the plaintiff's side who can

11   testify how the jury should consider these and how they would

12   impact a reasonable royalty.  There's no one who can do that.

13   You have the licenses themselves and no person who can explain

14   to the jury what difference they make?

15        MR. CANTINE:  Other than perhaps I think DJI's own

16   30(b)(6) witness perhaps, Your Honor.  Again, I don't have his

17   deposition.

18        (Simultaneous conversation.)

19        MR. CANTINE:  I'm sorry?

20        THE COURT:  He's not an expert.  He doesn't get to

21   testify -- he doesn't get to testify as to how those licenses

22   affect the appropriate royalty.

23        MR. CANTINE:  Well, he can testify to the factual basis as

24   to why they were entered into.

25        THE COURT:  Well, sure.  What difference does that make?

1   You have no one that can tether them to your client's damages,

2   right?

3       MR. CANTINE:  I don't have a witness on behalf of the

4   plaintiff -- a plaintiff's witness, an employee or an expert

5   that can do that, Your Honor.

6       THE COURT:  Nor a defense witness who you would call out

7   of order if they're available.

8       MR. CANTINE:  Well, that leaves open -- you know, there

9   are cases in which the plaintiff has been able to call the

10  defendants' damages expert in its case-in-chief under these

11  circumstances.

12      THE COURT:  Well, that's not going to happen.  Not under

13  the circumstances where I've struck it -- well, I'm not -- let

14  me just say I'm not going to permit you to fix your problem

15  that you created on your own having your expert struck by

16  allowing you to call the defendants' expert.  That's not going

17  to happen.  So here's where we're at.  There's several tools I

18  have I guess.  I can just enter an order that there are no

19  damages, but basically I'm not going to try -- I'm not going to

20  try a case where the plaintiff has no way of putting on a

21  damages case.

22      MR. CANTINE:  Your Honor, if I can, before you rule, you

23  know, we do have other evidence.  I have -- I wasn't finished

24  going through my list, but the most important one, I think if

25  we just cut to the chase, is we have an offer from IBM to DJI

8

1   in and around the hypothetical negotiation date for these

2   particular patents.

3       THE COURT:  So?

4       MR. CANTINE:  I'm sorry?

5       THE COURT:  So?  Who is going to -- who's going to testify

6   in -- that in their opinion that's a comparable -- that that's

7   comparable?

8       MR. CANTINE:  Well, Your Honor, the issue is, you know,

9   what would IBM and DJI have agreed to at the hypothetical

10  negotiation?  We have direct evidence of an offer made by IBM

11  to DJI.

12      THE COURT:  When was the offer made?

13      MR. CANTINE:  I believe it was 2017.  So it's right

14  around -- it's right in the right time period.  I don't have

15  the exact date.  But it was during the negotiations.  There

16  was -- the negotiations went on for about year and a half

17  between DJI and IBM.  And we have the written offer from IBM to

18  DJI for a lump-sum agreement with some embedded royalty rates

19  in there.  That is direct evidence of what the patent owner at

20  the time IBM would have accepted in the hypothetical

21  negotiation.  And that is evidence the jury can rely on in

22  assessing what a reasonable royalty is.

23      THE COURT:  But they were not -- they were not assuming

24  all the factors you have to assume during the hypothetical

25  negotiation.

1      MR. CANTINE:  Right.  And the jury's going to have all the

2  Georgia-Pacific Factors as part of the jury instructions.

3      THE COURT:  But they -- but there was -- but you have no

4  evidence of a -- you have no evidence that -- that offer was

5  made in an entirely different context than the context of a

6  hypothetical negotiation.

7      MR. CANTINE:  It was made during negotiations, Your Honor,

8  prelitigation.  It's -- that's direct evidence that an expert

9  or the jury, you know, could rely on as to what the willing

10  licensor would have accepted at the hypothetical negotiation at

11  that time.  That's -- it was an offer.  That's what they were

12  willing to take.  That's the whole -- but this whole

13  hypothetical negotiation's trying to get to is to figure out

14  what these parties would have agreed to at the time.  This is

15  direct evidence of that that the jury can certainly rely on.

16      THE COURT:  Why is that not a settlement offer that's

17  excluded?

18      MR. CANTINE:  Well, it's not made under 408, Your Honor.

19  It's a negotiation.  It was rejected ultimately.  No question

20  about that.

21      THE COURT:  What do you mean it was not made under 408?

22      MR. CANTINE:  Well, there's no evidence in the record in

23  the e-mail chains or in the offer itself, I don't think, that

24  it was a, you know -- it was an offer to enter into a fully

25  paid up license to resolve the dispute at the appropriate --

1    THE COURT:  Which is what a settlement negotiation is.

2    Mr. Chibib, if you want to respond to the last point,

3  you're welcome to do so.

4    MR. CHIBIB:  Yes, Your Honor.  I believe Mr. Schroeder

5  will be responding.

6    MR. SCHROEDER:  Good afternoon, Your Honor.  This is Jake

7  Schroeder from Finnegan on behalf of defendants.

8    First of all, Your Honor, and perhaps this is the easiest

9  way to deal with this, none of the evidence that Mr. Cantine

10 has indicated that they would present at a damages case for

11 their case was identified or disclosed in their Rule 26

12 disclosures, nor was it identified in response to our

13 interrogatories asking them for all facts and theories that

14 they would present at this case.  So --

15   THE COURT:  Okay.  I'm sorry.  Mr. Schroeder, I'm sorry.

16 Let me interrupt you and ask plaintiff's counsel if that's

17 correct or not.

18   MR. CANTINE:  I don't think that's correct, Your Honor.  I

19 think what he's talking about is this new MLC case from the

20 Federal Circuit which is simply, you know, a Federal Circuit

21 case that affirmed the exclusion of an expert witness on three

22 different grounds.  It has nothing to do with what happens

23 after the expert is excluded.

24   THE COURT:  No.  I'm -- maybe I just -- I just heard

25 counsel say, Mr. Schroeder say, that none of the evidence that

11

1   you're trying to put in was disclosed in an appropriate manner

2   for it to be admissible, and I want your response to that.

3       MR. CANTINE:  Sitting here today, Your Honor, I don't know

4   exactly what we said in every interrogatory response, but I can

5   certainly tell you in the complaint and in others we said we

6   are going to seek no less than a reasonable royalty which is

7   what the statute --

8       THE COURT:  Well, that's just the law.  I'm having a hard

9   time -- I have a really hard time when I ask questions that I

10  think can -- I can get a direct answer for and I don't get it.

11  It makes me figure either I'm not doing a good job asking my

12  question, which may be true after spending eight hours or nine

13  hours in a hearing which I just finished, but the more

14  likely -- my more likely assumption is that you're not

15  answering my question.  So I'll try again.  I just heard

16  Mr. Schroeder state on the record as an officer of the Court

17  that the evidence that you're trying to persuade me would come

18  in was not properly produced during the case.  Is that true or

19  not true?

20      MR. CANTINE:  I don't think that's true, Your Honor, and,

21  again, I don't have the --

22      THE COURT:  Well, I need -- tell me what -- tell me what

23  it is that you are trying to put in that you are certain

24  Mr. Schroeder's wrong about.  Any of the stuff that you're

25  talking about, tell me any -- all the stuff that you are

1    certain Mr. Schroeder is wrong about that -- whether it was

2    properly produced during the case.

3         MR. CANTINE:  Well, I'll start with the IBM --

4         THE COURT:  Okay.  I got the IBM license.  Anything else?

5         MR. CANTINE:  Well, Your Honor, that was produced by DJI.

6    So, you know, how was I supposed to -- I'm sure we disclosed at

7    some point in our interrogatory responses or otherwise.

8    There's not something that I could cite to in my initial

9    disclosures because we learned about it during discovery.

10   That's an example.  You know, I'd have to go back and look and

11   see exactly when we disclosed it to them.

12        THE COURT:  What else?

13        MR. CANTINE:  Same.  I know you're going to fight me on

14   it, but the licenses taken by DJI.  Obviously we didn't know

15   about those until discovery.  We do have evidence that our

16   client actually purchased these patents from IBM, and I'm

17   pretty sure we disclosed that in discovery.  And then we have

18   the notice from IBM to DJI putting them on notice of

19   infringement.  Again, that was produced to us by DJI.  We

20   didn't have that until we got into discovery.  And same with

21   the sales information.  Obviously we didn't have that until we

22   got in discovery.  So all this information that we're relying

23   on now that we're going to submit to the jury was information

24   that was provided to us during discovery.

25        THE COURT:  Mr. Schroeder, what exactly are you suggesting

13

1    the plaintiff wants to use that was not produced in a timely

2    manner?

3        MR. SCHROEDER:  Yes, Your Honor.  I'm looking at Daedalus'

4    Rule 26 disclosures under damages computation, and I know these

5    are the initial disclosures.

6        THE COURT:  Were they ever -- were they ever amended and

7    was anything added to them?

8        MR. SCHROEDER:  No, Your Honor.  They were never amended,

9    and I'm reading, it says:  Plaintiff will respond to this

10   disclosure item at the time set by the docket control order in

11   this action as it relates to disclosure of expert testimony,

12   period.  Plaintiff anticipates serving defendants with the

13   damages expert report and plaintiff hereby incorporate that

14   report by reference herein.

15       And if I can pause there before addressing their response

16   to Interrogatory No. 7, Your Honor, plaintiff's counsel has

17   mentioned they intend to rely on licenses taken by DJI, but I

18   know their expert report has been stricken, but their expert

19   said that those were noncomparable at all.  He said these are

20   not comparable.  And he said that true as well for any evidence

21   of patent owners' licenses of the technology as well.  So to

22   now hear them come in and say they're now going to say those

23   are comparable, this is an entirely new theory not disclosed in

24   response to Rule 26 which is exactly what that PLC or that

25   Micron case that we cited is about.

1    And then, additionally, they identified Mr. Gomez who was

2  their principal in their initial disclosures.  He's the only

3  individual they identified as having damages information.  And

4  I took his deposition and I asked him if he had any evidence.

5  I said, what do you contend the appropriate royalty rate is

6  that DJI should pay for a license to Daedalus' '232 and '913

7  patent?

8    And he answered:  I don't have an opinion on that.

9    And then I said:  Okay.  Outside of Rule 408, do you have

10  any facts you're going to offer as far as what the appropriate

11  lump-sum royalty should be?

12    And his answer:  I do not have any facts as I sit here

13  today.  No.

14    And he was their only corporate representative on the

15  issue of damages.

16    And in response to Interrogatory No. 7 which we issued --

17    THE COURT:  Mr. Schroeder?

18    MR. SCHROEDER:  Yes, Your Honor.

19    THE COURT:  Mr. Schroeder, and just so I'm getting the

20  right nomenclature, when he answered those questions, he didn't

21  have any evidence -- was he a 30(b)(6) witness or was it in his

22  individual capacity?

23    MR. SCHROEDER:  It was both, Your Honor.  He was the sole

24  30(b)(6) for plaintiff and he also answered -- you know, to the

25  extent it was beyond the scope in his personal capacity as

1   well.

2       THE COURT:  So you have the testimony of the plaintiff's

3   30(b)(6) witness speaking on behalf of the corporation saying

4   that he can't tell you either what a reasonable royalty or a

5   lump sum amount would be, right?

6       MR. SCHROEDER:  Yes, Your Honor.  And to be fair, he did

7   say that the company would likely put on that testimony through

8   an expert which has now been stricken.

9       THE COURT:  No.  I get it.  I get that, but the corporate

10  representative speaking on behalf of the corporation said, I

11  don't have anything to testify about?

12      MR. SCHROEDER:  Yes, Your Honor.  I read directly from the

13  deposition transcript.  I can put it up on the screen, but I

14  understand Your Honor might not be able to see that right now.

15  And I know my Internet connection has been weak today too,

16  but...

17      THE COURT:  If you have it, why don't you at least -- why

18  don't you give the page number that you're reading from at the

19  deposition?  That would help.

20      MR. SCHROEDER:  Yes, Your Honor.  So it's Page 184 and 185

21  of Mr. Gomez' deposition as it concerns damages.  And also on

22  Page 185 there's also some relevant testimony about how they're

23  not actually seeking any injunctive relief.  I don't think

24  there's any dispute here about that.

25      THE COURT:  And nor could they in their capacity.

1      So let me see if I have the lay of the land correct.  The

2  corporate representative represented to you that the

3  corporation had no information, and the position that the

4  company wants to take now without an expert is diametrically

5  the opposite -- with regard to the licenses diametrically

6  opposite to the position that their expert took.  So to the

7  extent the 30(b)(6) witness said, I'm going to rely on an

8  expert, the expert said exactly the opposite of the argument

9  they want to make at trial now; is that correct?

10      MR. SCHROEDER:  With respect to the evidence of licenses

11  taken by my client DJI, that's exactly correct.

12  Georgia-Pacific Factor No. 2 on Mr. Pellegrino's report he said

13  all of those were noncomparable, and that's on Page 39 of his

14  report.  And the page prior where he addresses Georgia-Pacific

15  1, he said evidence of patent owners' prior license activity is

16  also not relevant.

17      THE COURT:  And so when you prepared your expert report,

18  you prepared it with the understanding that it was the

19  plaintiff's position that those licenses were not applicable,

20  correct?

21      MR. SCHROEDER:  Yes, Your Honor.  And, I mean, the only

22  disclosure that we got from plaintiff was that.  And as I

23  mentioned, in their Rule 26 disclosures they never indicated

24  that those were, nor did they in response to interrogatories.

25  In response to Interrogatory No. 7 which asked for them to

1  state in detail all financial remedies, including factual,

2  legal and evidentiary bases for them, they simply referred to

3  their subsequent disclosure of an expert report.  And that's

4  it.  Oh, and they also mentioned infringement contentions which

5  don't have anything related to do with damages and related

6  documentation, but there is nothing else that indicates that

7  this was going to be their theory now.  And so even if the law

8  says a plaintiff should be entitled to a reasonable royalty,

9  it's still the plaintiff's burden to prove it through

10 admissible evidence, and here we contend there is none.

11     THE COURT:  With respect to Rule 26, they never amended

12 that answer that they gave you saying basically they weren't

13 going to give you anything but an expert report, and they also

14 never invoked, I think it's 26(c), but I could be wrong, they

15 never invoked the ability under Rule 26 to provide a lay

16 witness as long as the lay witness gave a statement in advance

17 so he could be deposed, correct?

18     MR. SCHROEDER:  You're correct, Your Honor.  They never

19 amended their Rule 26 disclosures nor did they identify any lay

20 witness who would be providing expert type testimony as to

21 hypotheticals other than the testifying expert they did

22 disclose which was Mr. Pellegrino.

23     THE COURT:  Okay.  And I've interrupted you a bunch, and

24 so you can continue with whatever it was you were trying to

25 argue to me.

1    MR. SCHROEDER:  That was the remaining points I wanted to

2  make, Your Honor, is this really comes down to it is not an

3  issue that a damages expert is required in every case, but in

4  those cases where a plaintiff is going to go in without an

5  expert or is going to provide sufficient proof of their damages

6  through fact witness testimony or lay witness testimony, they

7  need to put the other side on notice through Rule 26

8  disclosures, responses to interrogatories and so on.  And here

9  plaintiffs went all in on the one theory they did disclose in

10  their expert report, and that's the theory that Your Honor had

11  held was unreliable and shouldn't be presented to the jury.

12    And so for that reason DJI's position is that the Court

13  should enter a judgment of zero damages based on the record

14  we've got so far and the inability of plaintiff to have any

15  admissible evidence to prove damages for their case.

16    THE COURT:  Well, let me ask you about that.  If I enter a

17  judgment of zero damages, why would there be a judgment -- I'm

18  just trying to figure this out.  There would be no finding of

19  infringement or noninfringement, either one, because there had

20  been no trial.  So from your perspective as a defendant, do you

21  think the best scenario here, given the situation, is I enter a

22  judgment essentially saying that the plaintiff take nothing?

23  Is that correct?

24    MR. SCHROEDER:  Your Honor, yeah.  I think our position

25  here would be that Your Honor should enter a dismissal with

1  prejudice that plaintiff takes nothing because irrespective of

2  Your Honor's findings or the Court's findings, if we were to

3  proceed on infringement or validity, it would simply be

4  advisory because even in that circumstance there would be no

5  damages.  So dismissal with prejudice is probably the safer way

6  to proceed due to failure to establish any damages.

7       THE COURT:  Understood.  Is there anything else you wanted

8  to say before I flip back over to plaintiff's counsel?

9       MR. SCHROEDER:  Not at the moment, Your Honor.  Thank you.

10      THE COURT:  Okay.  Very good.  I'll hear from plaintiff's

11 counsel and any issues you want to take up.

12      MR. CANTINE:  Thank you, Your Honor.  Let me just touch

13 base on these licenses by DJI again.  We're not offering them

14 as comparable.  We're offering them for the fact that DJI

15 accepts lump sum payments as a form of compensation for its

16 licenses.  That's number one.  So I agree our technical expert

17 said that these were not comparable.  There's no dispute on

18 that.

19      In terms of amending our initial disclosures, again, all

20 the evidence we are relying on here came during discovery.  We

21 identified in our discovery responses that this was going to --

22 the contentions of our damages claim were going to be in the

23 expert report.  Those contentions haven't changed.  It's just

24 the form in which they're coming in has now changed in light of

25 Your Honor's order.

1      I think we have -- the case law -- I know you don't want

2   to talk about the case law but the case law is if we prove

3   infringement, we're entitled to damages.  The only case that

4   addresses where zero damages are appropriate is the Apple v.

5   Motorola case, and in that case they found no damages because

6   it was the rare instance -- or they said one -- the only

7   instance where this would make sense is if at the hypothetical

8   negotiation the parties agreed that zero dollars was an

9   appropriate way to resolve the issue.  We don't have that here.

10      So, again, I would say the case law's clear that if we

11   prove infringement, we are entitled to a reasonable royalty.

12   And I think we have sufficient evidence from which the jury can

13   make that determination in conjunction with the jury

14   instructions.

15      The only other point I wanted to make, Your Honor, is if

16   you're inclined to simply dismiss our case with prejudice and

17   issue some sort of take nothing order, I think the more

18   appropriate way to do this would be to take the case off the

19   calendar and do it via summary judgment.  I don't think making

20   that ruling, which is akin to a summary judgment ruling, even I

21   think the defendants' counsel would concede, the more

22   appropriate way to do that under Rule 56 is to let us brief it

23   instead of having, you know, a couple of e-mails in a couple of

24   hours and making a decision.

25      THE COURT:  No.  I think that's totally fair as well.

1   And, again, I'm trying to find the right vehicle to protect

2   both parties, including you, so that if -- whatever decision I

3   make you have the ability to have the Federal Circuit, you

4   know, tell me if I made the right decision.  So, you know,

5   I'm -- it strikes me -- let's do -- let's do that.  I think

6   I'll have the defendant file a motion for summary judgment that

7   they are entitled to a -- I'm not going to tell them what to

8   do, but essentially what I'm persuaded by here is that because

9   there are no damages -- there would be no damages, then the

10  opinion would be an advisory opinion and therefore I should

11  enter judgment and the plaintiff can respond to that, and in

12  that response put whatever evidence they care to in to

13  establish that they think they would be able to establish

14  damages at trial if I allowed it to go to trial.  And that way

15  I'll have everything that you guys can put forward to me, and

16  if I decide that a trial's appropriate, then I can deny the

17  summary judgment and set it for trial.  So I think that's a

18  very workable way of doing it.

19       MR. CANTINE:  Do you want to talk dates on that stuff now,

20  or do you want to wait?

21       THE COURT:  You know, my clerks don't let me do stuff like

22  that.  So what I would suggest you do is the -- this will be

23  the defendants' motion.  I would suggest that you two talk.

24  The defendant can give you a date when they think they can get

25  a motion for summary judgment filed by, and then I don't see

1   any reason to hold you guys tight to the deadlines for the

2   summary judgment.  You let the defendant know when you can get

3   a response filed.  They'll -- and I don't want you to take nine

4   months, but I'm just saying if it takes you an extra week or

5   two to do all this stuff, that's fine.  And then the defendant

6   can take the time they need to reply.  And what I would suggest

7   to you all is that when the -- when everything's complete and

8   all the pleadings have been filed that you give us a heads-up

9   so we know it's ripe and we can address it.  Does that work for

10  the plaintiff?

11      MR. CANTINE:  That does, Your Honor.  And just to confirm,

12  we're taking it off the trial date obviously, right?  Off the

13  calendar?

14      THE COURT:  We are.  Yes, sir.

15      MR. CANTINE:  Okay.

16      THE COURT:  We are.  Does that work for both parties?  If

17  not, someone let me know and I'll try to adjust.

18      MR. SCHROEDER:  That works for defendants, Your Honor.

19      This is Mr. Schroeder.

20      THE COURT:  And for plaintiff?

21      MR. CANTINE:  Yes, Your Honor.  That works.  Thank you.

22      THE COURT:  Okay.  You guys coordinate the deadlines and

23  just -- I think this is Jeffrey's case.  You know, just kind of

24  give him a heads-up on where you're at on all this stuff, but

25  he's on the call, so he's heard all this.  But just let us know

23

1    when it's ripe and we'll take it up then.

2        You guys have a great Thanksgiving and take care.  Bye.

3        (Hearing adjourned at 5:07 p.m.)

```
 1   UNITED STATES DISTRICT COURT )

 2   WESTERN DISTRICT OF TEXAS    )

 3

 4        I, Kristie M. Davis, Official Court Reporter for the

 5   United States District Court, Western District of Texas, do

 6   certify that the foregoing is a correct transcript from the

 7   record of proceedings in the above-entitled matter.

 8        I certify that the transcript fees and format comply with

 9   those prescribed by the Court and Judicial Conference of the

10   United States.

11        Certified to by me this 27th day of November 2021.

12
                              /s/ Kristie M. Davis
13                            KRISTIE M. DAVIS
                              Official Court Reporter
14                            800 Franklin Avenue
                              Waco, Texas 76701
15                            (254) 340-6114
                              kmdaviscsr@yahoo.com
16

17

18

19

20

21

22

23

24

25
```