PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| JENS H.S. NYGAARD,<br><br>Plaintiff,<br><br>v.<br><br>FÉDÉRATION INTERNATIONALE DE L'AUTOMOBILE, FORMULA ONE MANAGEMENT LTD., FORMULA ONE WORLD CHAMPIONSHIP, MERCEDES-BENZ GRAND PRIX LTD., DAIMLER AG, LEWIS HAMILTON, RED BULL TECHNOLOGY LTD., RED BULL RACING LTD., FERRARI S.P.A., CHARLES LECLERC, and DALLARA AUTOMOBILI S.P.A.,<br><br>Defendants. | <br><br>Case No. 6:20-cv-00234-ADA |

## MOTION OF THE RED BULL DEFENDANTS FOR SUMMARY JUDGMENT OF NO DAMAGES AND TO DISMISS THEM FROM THIS CASE

Deron R. Dacus
State Bar No. 00790553
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543

Edgar H. Haug (pro hac vice)
Mark A. Chapman (pro hac vice)
Roman Khasidov (pro hac vice)
HAUG PARTNERS LLP
745 Fifth Avenue, 10th Floor
New York, New York 10151
Phone: (212) 588-0800
Fax: (212) 588-0500

*Counsel for Defendants Red Bull Racing Ltd. and Red Bull Technology Ltd.*

February 2, 2022

PUBLIC VERSION

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND FACTS ......................................................................................................2

    A. Red Bull's Involvement With the Accused Halo and Aeroscreen, and Nygaard's Allegations Against Red Bull .........................................................2

    B. Nygaard's Initial Disclosures, Interrogatory Response, and Deposition Testimony Regarding the Damages He Seeks from Red Bull ..............................................................................................................................3

    C. Nygaard's Damages Expert Reports, Which Do Not Include Any Damages Claims Against Red Bull .........................................................................5

III. ARGUMENT ........................................................................................................................7

    A. Summary Judgment of No Damages Against Red Bull Should Be Granted Because Nygaard Cannot Prove Any Damages Against Red Bull ..............................................................................................................................7

        1. Nygaard Cannot Prove Damages Against Red Bull Using Expert Evidence .............................................................................................8

        2. Nygaard Cannot Prove Damages Against Red Bull Using Other Evidence .............................................................................................11

    B. Alternatively, Summary Judgment of Nominal Damages Against Red Bull Should Be Granted ..................................................................................12

    C. If Summary Judgment Is Granted, Red Bull Should Be Dismissed With Prejudice ...........................................................................................................13

IV. CONCLUSION ...................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*AOS Holding Co. v. Bradford White Corp.*,
 No. 18-cv-00412, 2021 WL 5411103 (D. Del. Mar. 31, 2021) .............................................. 13

*Apple Inc. v. Motorola, Inc.*,
 757 F.3d 1286 (Fed. Cir. 2014) ................................................................................... 12, 13, 14

*Apple, Inc. v. Motorola, Inc.*,
 869 F. Supp. 2d 901 (N.D. Ill. 2012) ........................................................................................ 14

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
 377 U.S. 476 (1964) ................................................................................................................... 9

*Celanese Int'l Corp. v. Oxyde Chems., Inc.*,
 554 F. Supp. 2d 725 (S.D. Tex. 2008) ..................................................................................... 14

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ................................................................................................................... 7

*CQ, Inc. v. TXU Min. Co., L.P.*,
 565 F.3d 268 (5th Cir. 2009) ................................................................................................... 11

*Devex Corp. v. Gen. Motors Corp.*,
 667 F.2d 347 (3d Cir. 1981) .............................................................................................. 12, 13

*eBay Inc. v. MercExchange, LLC*,
 547 U.S. 388 (2006) ................................................................................................................. 13

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*,
 879 F.3d 1332 (Fed. Cir. 2018) ............................................................................................. 8, 9

*Icon Laser Solutions, LLC v. Abercrombie & Fitch Co.*,
 No. 3:15-cv-03308, 2016 WL 7379138, (N.D. Tex. July 13, 2016) ....................................... 14

*Info-Hold, Inc. v. Muzak LLC*,
 No. 1:11-cv-00283, 2013 WL 6008619 (S.D. Ohio Nov. 13, 2013) ....................................... 14

*Kranz v. Midland Credit Mgmt.*,
 No. 18-cv-00169, 2020 WL 2326140 (W.D. Tex. May 8, 2020) ............................................ 14

*Lindemann Maschinenfabrik v. American Hoist & Derrick Co.*,
 895 F. 2d 1403 (Fed. Cir. 1990) ................................................................................................ 7

*MLC Intellectual Prop. LLC v. Micron Tech., Inc.*,
 10 F.4th 1358 (Fed. Cir. 2021) ................................................................................................ 11

PUBLIC VERSION

*Promega Corp. v. Life Techs. Corp.*,
 875 F.3d 651 (Fed. Cir. 2017) ............................................................................................. 7, 8, 9

*Riles v. Shell Exploration and Prod. Co.*,
 298 F.3d 1302 (Fed. Cir. 2002) ................................................................................................. 9

*TecSec, Inc. v. Adobe, Inc.*,
 978 F.3d 1278 (Fed. Cir. 2020) ..................................................................................... 8, 12, 13

**Statutes**

35 U.S.C. § 284 ................................................................................................................... 9, 12

35 U.S.C. § 287 ....................................................................................................................... 14

**Rules**

Fed. R. Civ. P. 26(e) ............................................................................................................... 11

Fed. R. Civ. P. 37(c)(1) ........................................................................................................... 11

PUBLIC VERSION

I.     INTRODUCTION

Defendants Red Bull Racing Ltd. and Red Bull Technology Ltd. (collectively "Red Bull") respectfully move for summary judgment of no damages against Red Bull, and to dismiss Red Bull from this case with prejudice.

After forcing Red Bull to endure almost two years of burdensome and expensive litigation, Nygaard has abruptly abandoned his damages claims against Red Bull and instead decided to pursue damages only from co-defendants FIA[1] and F1[2]. In particular, Nygaard decided to not include in any of his three damages expert reports any opinions at all regarding damages against Red Bull for either the accused Halo or the accused Aeroscreen.[3]

For the Halo, Nygaard's lead damages expert Jeffrey Stec states his opinion about the amount of reasonable royalty damages against FIA and F1, and sets forth his *Georgia-Pacific* reasonable royalty analysis for FIA/F1 including a hypothetical negotiation between Nygaard and FIA/F1. But Dr. Stec and Nygaard's other damages experts Stefan Szymanski and Jason McDonald do not analyze or offer any opinion about reasonable royalty damages against Red Bull, do not conduct a *Georgia-Pacific* analysis or any other reasonable royalty analysis for Red Bull, and do not include Red Bull in any hypothetical negotiation.

For the Aeroscreen, Nygaard's damages experts do not analyze or offer any opinion about reasonable royalty damages at all, and they do not conduct any *Georgia-Pacific* analysis or other reasonable royalty analysis at all. Dr. Szymanski sets forth his opinion about the purported "media value" of the Aeroscreen. However, he and Nygaard's other damages experts do not

---

[1] Fédération Internationale de l'Automobile ("FIA").

[2] Formula One Management Ltd. and Formula One World Championship (collectively "F1").

[3] As explained below, Nygaard seeks only reasonable royalty damages against Red Bull, not any other form of damages such as lost profits.

analyze or offer any opinion about reasonable royalty damages against Red Bull based on this purported "media value" or anything else.

Given Nygaard's decision to not include any damages claims against Red Bull in his expert reports, the Court should grant summary judgment of no damages against Red Bull and dismiss Red Bull from this case with prejudice.  As explained below, Nygaard cannot carry his burden of proving damages against Red Bull using expert evidence or any other evidence.

## II.   BACKGROUND FACTS

### A.   Red Bull's Involvement With the Accused Halo and Aeroscreen, and Nygaard's Allegations Against Red Bull

Nygaard accuses the Halo and the Aeroscreen of infringing the patent-in-suit.  (Nygaard Third Amended Complaint (Dkt. 231) at ¶¶ 1, 267-69, 340-42.)

For the Halo, Nygaard alleges that Red Bull Racing infringed because the Halo was installed on the two Red Bull Racing Formula One racing cars that competed at the U.S. Grand Prix in Austin, Texas in 2018, 2019 and 2021.  (*Id.* at ¶¶ 333-39.)  Nygaard also alleges that FIA and F1 induced Red Bull Racing and the nine other Formula One teams[4] to infringe at these U.S. Grand Prix races.  (*Id.* at ¶¶ 266, 271-73, 288-91.)

Since 2018, Red Bull Racing has been required by FIA technical regulations to use the Halo on its Formula One racing cars in order to compete in Formula One races.  (Ans. of Def. Red Bull To Third Amended Compl. (Dkt. 241) at ¶ 3; 11/12/21 Red Bull Interrog. Resp. No. 9 (Ex. 1) at 9-12.)  Red Bull did not make, sell or offer for sale the Halo; Red Bull Racing purchased its Halos from FIA-approved manufacturers in Europe for about ▮▮▮▮▮▮▮▮ each.

---

[4] The other nine Formula One teams include the Mercedes and Ferrari teams that the Court dismissed based on the "customer-suit exception."  (Order (Dkt. 182).)  Red Bull did not seek relief based on the "customer-suit exception" but instead remained in this case to defend itself against Nygaard's infringement claims for both the Halo and the Aeroscreen.

(*Id.*; *see*, *e.g.*, Halo Invoices (Ex. 2).)

For the Aeroscreen, Nygaard alleges that Red Bull Technology induced IndyCar and IndyCar teams to infringe by using the Aeroscreen on IndyCar racing cars during the 2020 and 2021 seasons, because Red Bull Technology performed consultancy design work related to the Aeroscreen for IndyCar in 2019.  (Dkt. 231 at ¶¶ 116-21, 123-29, 346-47, 350; 11/23/21 Red Bull Interrog. Resp. No. 3 (Ex. 3) at 8-12; 11/12/21 Red Bull Interrog. Resp. No. 4 (Ex. 4) at 12-14.)[5]

Red Bull does not have an IndyCar team, so Red Bull has not used the Aeroscreen in the United States.  (11/12/21 Red Bull Interrog. Resp. No. 6 (Ex. 1) at 16-17.)  Red Bull also did not make, sell, offer for sale or import the Aeroscreen; Dallara did.  (*Id.*; Dkt. 231 at ¶¶ 210, 215-21, 343.)  The only revenue related to the Aeroscreen that Red Bull received is the ▮▮▮▮ design consultancy fee that IndyCar paid Red Bull Technology in 2019 for its work related to the Aeroscreen.  (11/12/21 Red Bull Interrog. Resp. No. 4 (Ex. 4) at 12-14.)[6]

Nygaard's complaint does not specify the amount of damages that he seeks from Red Bull for either the Halo or the Aeroscreen.  (Dkt. 231 at ¶¶ 351-52.)

### B. Nygaard's Initial Disclosures, Interrogatory Response, and Deposition Testimony Regarding the Damages He Seeks from Red Bull

Nygaard stated in his Rule 26(a)(1)(A) initial disclosures that he seeks reasonable royalty damages from Red Bull, but he did not specify the amount of damages.  (3/29/21 Plaintiff's Init. Disc. (Ex. 5) at 11-12.)  Although Nygaard stated in his initial disclosures that he would

---

[5] Nygaard also alleges that Red Bull Technology directly infringed by attending two IndyCar tests of the Aeroscreen in the U.S. in late 2019 and early 2020.  (Dkt. 231 at ¶¶ 344, 349.)

[6] The Court dismissed Dallara for lack of personal jurisdiction.  (Mem. Opin. & Order (Dkt. 225).)  Nygaard did not sue IndyCar or any IndyCar teams (presumably because of venue concerns).  Nygaard served a document subpoena on IndyCar (Ex. 6), but Nygaard never produced any documents from IndyCar.

"supplement within the time for expert reports," he never supplemented or amended his initial disclosures. (*Id.* at 12.)

Red Bull served an interrogatory seeking Nygaard's damages contentions against Red Bull for both the Halo and the Aeroscreen, including the amount and type of damages he seeks, and how the *Georgia-Pacific* factors affect any reasonable royalty damages against Red Bull. (4/16/21 Red Bull Interrog. No. 3 (Ex. 7) at 6-7.) The interrogatory also asked Nygaard to identify all related documents. (*Id.* at 7.)

After objecting that this interrogatory sought privileged information and "expert analysis," Nygaard's response stated that he seeks reasonable royalty damages from Red Bull "based on the value of [Nygaard's] inventions as incorporated into the Halo and Aeroscreen and open cockpit race cars, expert witness analysis and testimony." (5/24/21 Plaintiff's Interrog. Resp. No. 3 (Ex. 8) at 6.) However, Nygaard's response did not specify the amount of these reasonable royalty damages and it did not identify any documents. (*Id.* at 6-7.) Nygaard's response also stated that he would identify documents pursuant to Rule 33(d) and that he would supplement his response after he received more discovery. (*Id.* at 7.) However, he never did either.

At Nygaard's deposition, after his counsel objected that the questions sought a "legal conclusion" and privileged information, Nygaard testified that he did not know the amount of damages he seeks from Red Bull:

> Q. Can you quantify the damages that you believe you have suffered as a result of anything that Red Bull has done?
>
> [Nygaard's counsel]: I am going to object to the extent that that calls for a legal conclusion. You may answer the question, sir.
>
> A. Yes, I don't know.

(9/20/21 Nygaard Dep. Tr. (Ex. 9) at 357:22-358:2.)

> Q. Do you have an estimate in mind as to what you believe the damages have been to you as a result of infringement by Red Bull?
>
> [Nygaard's counsel]: You may answer that question but in doing so you should not divulge or disclose any communications you have had with your lawyers, do you understand?
>
> A. Yes. I really don't know.

(*Id.* at 358:8-15.)

### C. Nygaard's Damages Expert Reports, Which Do Not Include Any Damages Claims Against Red Bull

Nygaard served his three damages expert reports on December 24, 2021. (Stec Report (Ex. 10); Szymanski Report (Ex. 11); McDonald Report (Ex. 12).) After forcing Red Bull to endure almost two years of burdensome and expensive litigation, Nygaard abruptly abandoned his damages claims against Red Bull in his expert reports by deciding to not include any opinions regarding damages against Red Bull for either the Halo or the Aeroscreen.

For the Halo, Nygaard's lead damages expert Dr. Stec's report first defines the "Halo Defendants" as FIA and F1, but <u>not</u> Red Bull,[7] and then explains that "[t]he following report contains my opinions as to the amount of economic damages caused to Nygaard by the Halo Defendants due to their alleged infringement." (Ex. 10 at 1.) Dr. Stec sets forth his *Georgia-Pacific* reasonable royalty analysis for the "Halo Defendants" (FIA/F1) including a hypothetical negotiation between Nygaard and FIA/F1, and concludes that FIA/F1 and Nygaard would have agreed to a lump sum reasonable royalty of ███████████ through expiration of the patent-in-suit. (*Id.* at 3, 31-56.)[8] Dr. Stec's reasonable royalty for FIA/F1 is based primarily on Dr.

---

[7] Ex. 10 at 1 (". . . Fédération Internationale De L'Automobile, Formula One Management Ltd., Formula One World Championship **(collectively, 'Halo Defendants')**, Red Bull Technology Ltd., Red Bull Racing Ltd. **(collectively 'Red Bull')** (the Halo Defendants and Red Bull are collectively, 'Defendants') . . . .") (emphasis added).

[8] *Id.* at 3 ("**III. Summary of Opinions** – Assuming that **the Halo Defendants** are found liable for damages resulting from its alleged infringement of the Patent-in-Suit, a lump sum royalty of

Szymanski's opinions regarding the purported "value" of the Halo to FIA/F1.  (*Id.* at 33-37, 48-55; Ex. 11 at 17-33.)[9]  However, Dr. Stec and Dr. Szymanski (and Nygaard's other damages expert Dr. McDonald) do not analyze or offer any opinion about reasonable royalty damages against Red Bull, do not conduct a *Georgia-Pacific* analysis or any other reasonable royalty analysis for Red Bull, and do not include Red Bull in the hypothetical negotiation.

For the Aeroscreen, none of Nygaard's damages experts analyzes or offers any opinion about reasonable royalty damages at all, and none of them conducts any *Georgia-Pacific* analysis or any other reasonable royalty analysis.  Dr. Szymanski sets forth his opinion that the "media value" of the Aeroscreen is ███████, based on █████████████████ ██████████████████████████████ (Ex. 11 at 35-36 (citing Ex. 13 at 36290).)  However, none of Nygaard's experts analyzes or offers any opinion about reasonable royalty damages against Red Bull based on this purported "media value" or anything else.

After reviewing Nygaard's damages expert reports, Red Bull reasonably concluded that Nygaard had abandoned his damages claims against Red Bull and had instead decided to pursue damages only from FIA and F1.  On January 12, 2022, Red Bull's counsel conferred with Nygaard's counsel with a view to agreeing to a stipulated dismissal of Red Bull before the damages expert rebuttal report deadline on February 11, 2022.  To Red Bull's counsel's surprise, Nygaard's counsel insisted during the call that Nygaard had not abandoned his damages claims against Red Bull, and that he could still prove damages against Red Bull at trial.

---

between ███████████████ is due to Nygaard.  This royalty conclusion is based upon a hypothetical negotiation between Nygaard and **the Halo Defendants** in or around October 2018.") (second and third emphases added).

[9] Although Dr. Szymanski sets forth his opinions regarding the purported "value" of the Halo to FIA/F1, he made clear that his report "does not attempt to capture the value of the Halo to a specific team" such as Red Bull Racing "in isolation from other teams because teams have different economic and business models from each other and from F1."  (*Id.* at 4.)

As explained below, notwithstanding Nygaard's position, Nygaard cannot carry his burden of proving damages against Red Bull using expert evidence or any other evidence. Therefore, Red Bull now brings this motion.

## III.     ARGUMENT

The Court should grant summary judgment of no damages against Red Bull and dismiss Red Bull from this case with prejudice.  As explained below, there is no genuine issue of material fact because Nygaard cannot carry his burden of proving any damages against Red Bull, for either the Halo or the Aeroscreen, using expert evidence or any other evidence.

### A.     Summary Judgment of No Damages Against Red Bull Should Be Granted Because Nygaard Cannot Prove Any Damages Against Red Bull

Summary judgment is warranted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In particular, summary judgment is warranted if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Id.* at 323; *see also id.* ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). The moving party meets its burden on a summary judgment motion by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Nygaard bears the burden of proving reasonable royalty damages against Red Bull, including the amount of damages, with evidence.  *See Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017) ("In patent cases, the burden of proving damages falls on the patentee, and the patentee must show his damages by evidence.") (citations and quotations omitted); *Lindemann Maschinenfabrik v. American Hoist & Derrick Co.*, 895 F. 2d 1403, 1406 (Fed. Cir. 1990) ("The patentee must then prove the amount of damage.").

As explained below, summary judgment of no damages against Red Bull is warranted because Nygaard cannot carry his burden of proving reasonable royalty damages against Red Bull using expert evidence or any other evidence.  *See TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020) ("[T]here can be an award of no damages where none were proven.") (citation and quotations omitted).

### 1. Nygaard Cannot Prove Damages Against Red Bull Using Expert Evidence

Nygaard cannot carry his burden of proving damages against Red Bull using expert evidence, because his expert reports do not include any opinions or analysis at all regarding damages against Red Bull for either the Halo or the Aeroscreen.

As explained above in Section II.C, for the Halo, Dr. Stec analyzes and sets forth the reasonable royalty damages he says are owed by FIA and F1, but none of Nygaard's experts analyzes or sets forth any opinion about reasonable royalty damages against Red Bull.  And for the Aeroscreen, none of Nygaard's experts analyzes or offers any opinion about reasonable royalty damages at all.  Thus, none of Nygaard's experts can testify at trial about reasonable royalty damages against Red Bull for either the Halo or the Aeroscreen.  The jury in this case cannot determine reasonable royalty damages against Red Bull without expert testimony about how those damages should be determined.  *See, e.g.*, *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1350 (Fed. Cir. 2018) ("When performing a *Georgia-Pacific* analysis, damages experts must not only analyze the applicable factors, but also carefully tie those factors to the proposed royalty rate."); *Promega*, 875 F.3d at 660 ("[D]amages must not be left to conjecture by the jury.  They must be proved, and not guessed at.").

Nygaard also cannot prove damages against Red Bull using any of the expert opinions or evidence that he did include in his expert reports.  In particular, Dr. Szymanski's opinion about

the purported "media value" of the Aeroscreen is not evidence of damages against Red Bull. The Supreme Court has "defined" infringement damages under 35 U.S.C. § 284 "as compensation for the pecuniary loss he [the patentee] has suffered from the infringement, without regard to the question whether the defendant has gained or lost by his unlawful acts." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) (citation omitted); *see also Riles v. Shell Exploration and Prod. Co.*, 298 F.3d 1302, 1312-13 (Fed. Cir. 2002) ("Compensatory damages, by definition, make the patentee whole, as opposed to punishing the infringer." (citing *Aro*, 377 U.S. at 507)). Therefore, even assuming for the purpose of this motion that Nygaard could prove that Red Bull actually did "gain" this purported "media value" (which it did not), that "gain" to Red Bull would not be Nygaard's "loss" or the damages that would compensate him. *See Aro*, 377 U.S. at 507.

As explained above in Section II.C, none of Nygaard's experts analyzes or offers any opinion about reasonable royalty damages against Red Bull based on this purported "media value" or anything else. In particular, none of Nygaard's experts explain how Dr. Szymanski's evidence about this purported "media value" is relevant to determining a reasonable royalty against Red Bull. The jury cannot determine reasonable royalty damages against Red Bull based on this "media value" evidence without expert testimony that explains how this evidence is relevant.[10]  *See, e.g.*, *Exmark*, 879 F.3d at 1350; *Promega*, 875 F.3d at 660.

This case is similar to another case before the Court, *Daedalus Blue LLC v. SZ DJI Tech. Co.*, No. 6:20-cv-00073-ADA. In *Daedalus*, after the Court excluded the plaintiff's damages expert report, the Court canceled the trial and invited the defendant to file a motion for summary

---

[10] In fact, Dr. Szymanski's "media value" opinion and related evidence are irrelevant, unreliable, unsupported, and should be excluded under *Daubert* and for other reasons, and Red Bull plans to move accordingly, if necessary.

judgment of no damages because the Court was not willing to let the plaintiff present a reasonable royalty damages case to the jury without a damages expert. (11/23/21 Hearing Tr. (Ex. 14) at 7 ("I'm not going to try a case where the plaintiff has no way of putting on a damages case."); *id.* at 21 (inviting the defendant to file a summary judgment motion on the ground that "there are no damages"); *see also id.* at 3-7, 20-22.)

In particular, the Court was not willing to permit the plaintiff to present a reasonable royalty damages case to the jury based on license agreements without a damages expert to explain "how the jury should consider these [agreements] and how they would impact a reasonable royalty." (*Id.* at 6.) As the Court explained:

> The Court: So you have no witness who can tell the jury how to relate either of those licenses to any amount that you owe that you're entitled to? You have no evidence?
>
> [Plaintiff's counsel]: Well, the license agreements speak for themselves about what [defendant] considered to be the appropriate amount of money –
>
> The Court: And what – and who on your side says what that – why that makes a difference and how the jury should take those into account in determining what amount of – what is the appropriate amount of damages?
>
> [Plaintiff's counsel]: Well, I think, Your Honor, we can get it into evidence through their – again, through their 30(b)(6) and then argue it in closing to the jury in –
>
> The Court: No, no, no, no, no. You don't get to argue it unless there's evidence. Evidence that this has some – the only reason these licenses would be reasonable is in the context of a hypothetical negotiation where the jury could be told by an expert these are comparable licenses that the parties would have had and how they impact a reasonable royalty. You have none of that to put into evidence.

(*Id.* at 5.)

This case is similar to *Daedalus*. None of Nygaard's experts can testify about reasonable royalty damages against Red Bull or how any other evidence (such as Dr. Szymanski's purported "media value") is relevant to determining reasonable royalty damages against Red Bull, because their expert reports do not include any opinions about any of this. The difference is that, unlike

in *Daedalus* where the Court excluded the plaintiff's damages expert's opinions, here Nygaard voluntarily decided to not include these damages opinions against Red Bull in his expert reports.

### 2. Nygaard Cannot Prove Damages Against Red Bull Using Other Evidence

Nygaard also cannot carry his burden of proving damages against Red Bull by resorting to other evidence outside his expert reports, because Nygaard did not disclose any such other evidence during discovery.

As explained above in Section II.B, Nygaard's initial disclosures and his damages contention interrogatory response did not disclose the amount of reasonable royalty damages he seeks from Red Bull. Nor did they disclose any other evidence based upon which Nygaard could prove reasonable royalty damages against Red Bull without expert testimony. Indeed, Nygaard's interrogatory response did not identify any documents at all. And although Nygaard stated in his interrogatory response that he would identify documents under Rule 33(d) and supplement his response, he never did either. Nygaard also did not amend or supplement his initial disclosures.

Nygaard cannot now rely on any new evidence that he did not disclose in his initial disclosures or interrogatory response. *See, e.g.*, *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 279 (5th Cir. 2009) (affirming exclusion of damages evidence that was not disclosed in initial disclosures); *MLC Intellectual Prop. LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1372-73 (Fed. Cir. 2021) (affirming exclusion of damages evidence that was not disclosed in interrogatory response); Fed. R. Civ. P. 26(e); Fed. R. Civ. P. 37(c)(1); *see also* Advisory Comm. Notes on 1993 amendments to Rule 37(c) (describing Rule 37(c)(1) as a "self-executing . . . automatic sanction [to] provide[] a strong inducement for disclosure of material that the disclosing party would expect to use as evidence . . . .").

Moreover, Nygaard cannot testify at trial about reasonable royalty damages against Red Bull. As explained above in Section II.B, Nygaard testified at his deposition that he did not know the amount of damages that he seeks from Red Bull.

Again, *Daedalus* is similar to this case. There, the Court was not willing to permit the plaintiff to use other evidence to present a reasonable royalty damages case to the jury without a damages expert, where the defendant contended that this evidence had not been disclosed in the plaintiff's initial disclosures, discovery responses, or deposition testimony. (Ex. 14 at 10-19.)

\* \* \*

In sum, there is no genuine issue of material fact because Nygaard cannot carry his burden of proving damages against Red Bull using expert evidence or any other evidence. Given Nygaard's failure of proof, the Court should grant summary judgment of no damages against Red Bull for the Halo and Aeroscreen. *See TecSec*, 978 F.3d at 1291-92 (affirming judgment of no reasonable royalty damages where patentee did not prove damages); *id.* at 1291 ("[T]here can be an award of no damages where none were proven.") (quotations omitted); *id.* ("'[I]n a case completely lacking any evidence on which to base a damages award, the record may well support a zero royalty award.'") (quoting *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir. 2014)); *Devex Corp. v. Gen. Motors Corp.*, 667 F.2d 347, 361 (3d Cir. 1981) ("In the absence of any evidence as to what would constitute a reasonable royalty in a given case, a fact finder would have no means of arriving at a reasonable royalty, and none could be awarded.").

### B.    Alternatively, Summary Judgment of Nominal Damages Against Red Bull Should Be Granted

Red Bull acknowledges that Section 284 provides for "damages adequate to compensate for the infringement but in no event less that a reasonable royalty." 35 U.S.C. § 284. Nevertheless, as explained above, a court can and should grant summary judgment of no

damages in a case such as this one where the patentee fails to prove damages against the moving party. *See, e.g.*, *TecSec*, 978 F.3d at 1291-92; *Apple*, 757 F.3d at 1328; *Devex*, 667 F.2d at 361.

However, if for any reason the Court concludes that it must award Nygaard some amount of reasonable royalty damages against Red Bull, the Court should award <u>nominal</u> damages, *i.e.* one dollar, because Nygaard cannot prove any other amount of damages, for all the reasons discussed above. *See Apple*, 757 F.3d at 1328 ("Certainly, if the patentee's proof is weak, the court is free to award a low, perhaps nominal royalty, as long as that royalty is supported by the record.") (citation omitted); *AOS Holding Co. v. Bradford White Corp.*, No. 18-cv-00412, 2021 WL 5411103 at *102-103 (D. Del. Mar. 31, 2021) (holding that section 284 "does not absolve a patentee of its obligation in litigation to meet its burden of proof" and awarding "only nominal damages of $1" because patentee failed to prove damages).

### C. If Summary Judgment Is Granted, Red Bull Should Be Dismissed With Prejudice

If the Court grants summary judgment, Red Bull should be dismissed from this case. Summary judgment of no (or nominal) damages would render pointless Nygaard's underlying infringement claims against Red Bull for both the Halo and the Aeroscreen.[11] Having voluntarily abandoned his damages claims against Red Bull in favor of pursuing damages only from FIA and F1, Nygaard should not be able to keep Red Bull in this case to litigate pointless infringement claims against Red Bull that cannot result in any damages against Red Bull.

Moreover, the dismissal of Red Bull should with prejudice. *See, e.g.*, *Info-Hold, Inc. v.*

---

[11] Nygaard does not credibly seek any other remedy against Red Bull. Nygaard's complaint includes a boilerplate request for a permanent injunction against Red Bull and the other defendants. (Dkt. 231 at ¶ 419(c).) However, as an inventor who is not practicing his patent, Nygaard plainly cannot demonstrate that he has suffered an irreparable injury. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-92 (2006).

*Muzak LLC*, No. 1:11-cv-00283, 2013 WL 6008619 at *3-4 (S.D. Ohio Nov. 13, 2013) (entering final judgment against patentee after granting summary judgment of no reasonable royalty damages), *rev'd on other grounds*, 783 F.3d 1365 (Fed. Cir. 2015).[12] Dismissing Red Bull with prejudice is appropriate to account for the unnecessary burden and expense that Nygaard forced Red Bull to endure for almost two years before he abruptly abandoned his damages claims against Red Bull in his damages expert reports.[13] Moreover, a dismissal with prejudice will ensure that Nygaard cannot file a new lawsuit against Red Bull and try to fix his failure to prove damages in this case. *See, e.g.*, *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 924 (N.D. Ill. 2012) (dismissing patent case with prejudice after granting summary judgment of no damages because "[i]t would be ridiculous to dismiss a suit for failure to prove damages and allow the plaintiff to refile the suit so that he could have a second chance to prove damages."), *rev'd on other grounds*, 757 F.3d 1286 (Fed. Cir. 2014).

## IV.   CONCLUSION

For the reasons set forth above, defendants Red Bull Racing Ltd. and Red Bull Technology Ltd. respectfully request that the Court: (1) grant summary judgment of no (or nominal) damages against Red Bull Technology Ltd. and Red Bull Racing Ltd.; and (2) dismiss Red Bull Racing Ltd. and Red Bull Technology Ltd. from this case with prejudice.

---

[12] By analogy, courts have granted summary judgment or dismissed with prejudice infringement claims under section 271(g) after concluding that no "remedies for infringement" were available because the safe harbor of section 287(b)(2) applied. *See, e.g.*, *Celanese Int'l Corp. v. Oxyde Chems., Inc.*, 554 F. Supp. 2d 725, 729-30 (S.D. Tex. 2008); *Icon Laser Solutions, LLC v. Abercrombie & Fitch Co.*, No. 3:15-cv-03308, 2016 WL 7379138, at *3 (N.D. Tex. July 13, 2016); *cf.* 35 U.S.C. § 287(b)(2) ("No remedies for infringement under section 271(g) shall be available with respect to … .").

[13] *Cf. Kranz v. Midland Credit Mgmt.*, No. 18-cv-00169, 2020 WL 2326140, *3-4 (W.D. Tex. May 8, 2020) (court prepared to dismiss case with prejudice under Rule 41(a)(2) to avoid unfair prejudice given late stage of litigation pending for over two years).

PUBLIC VERSION

Dated: February 2, 2022　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　By:　/s/ *Deron R. Dacus*
　　　　　　　　　　　　　　　　　　Deron R. Dacus
　　　　　　　　　　　　　　　　　　State Bar No. 00790553
　　　　　　　　　　　　　　　　　　THE DACUS FIRM, P.C.
　　　　　　　　　　　　　　　　　　821 ESE Loop 323, Suite 430
　　　　　　　　　　　　　　　　　　Tyler, TX 75701
　　　　　　　　　　　　　　　　　　Phone: (903) 705-1117
　　　　　　　　　　　　　　　　　　Fax: (903) 581-2543
　　　　　　　　　　　　　　　　　　ddacus@dacusfirm.com

　　　　　　　　　　　　　　　　　　/s/ *Edgar H. Haug*
　　　　　　　　　　　　　　　　　　Edgar H. Haug (pro hac vice)
　　　　　　　　　　　　　　　　　　Mark A. Chapman (pro hac vice)
　　　　　　　　　　　　　　　　　　Roman Khasidov (pro hac vice) HAUG
　　　　　　　　　　　　　　　　　　PARTNERS LLP
　　　　　　　　　　　　　　　　　　745 Fifth Avenue, 10th Floor
　　　　　　　　　　　　　　　　　　New York, New York 10151
　　　　　　　　　　　　　　　　　　Phone: (212) 588-0800
　　　　　　　　　　　　　　　　　　Fax: (212) 588-0500

　　　　　　　　　　　　　　　　　　*Counsel for Defendants Red Bull Racing Ltd. and Red Bull Technology Ltd.*

PUBLIC VERSION

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document and exhibits thereto have been served on all counsel of record via electronic mail on February 2, 2022.

s/ <i>Roman Khasidov</i><br>
Roman Khasidov