# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

JENS H. S. NYGAARD

Plaintiff,

v.

FÉDÉRATION INTERNATIONALE DE
L'AUTOMOBILE, FORMULA ONE
MANAGEMENT LTD., FORMULA ONE
WORLD CHAMPIONSHIP LTD.,
MERCEDES-BENZ GRAND PRIX LTD.,
DAIMLER AG, LEWIS HAMILTON, RED
BULL TECHNOLOGY LTD., RED BULL
RACING LTD., FERRARI S.P.A.,
CHARLES LECLERC, AND DALLARA
AUTOMOBILI S.P.A.,

Defendants.

Civil Action No. 6:20-cv-00234-ADA

JURY TRIAL REQUESTED



## PLAINTIFF'S RESPONSE TO RED BULL'S MOTION FOR SUMMARY JUDGMENT OF NO DAMAGES (ECF 266)

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   THE EVIDENCE SUPPORTS AN AWARD OF REASONABLE ROYALTY DAMAGES
      AGAINST RED BULL .................................................................................................. 2

      A.   There is Ample Expert Evidence In The Record Supporting A Reasonable Royalty Against
           Red Bull for the Halo ........................................................................................... 2

      B.   There Is Ample Non-Expert Evidence In The Record Supporting A Reasonable Royalty
           Against Red Bull ................................................................................................... 5

      C.   Red Bull Cannot Rely On Procedural Maneuvers To Exclude Its Own Evidence and
           Testimony ............................................................................................................. 9

III.  THE JURY, NOT THE EXPERTS, DECIDES REASONABLE ROYALTY ............................... 12

IV.   THERE IS NO REQUIREMENT FOR EXPERT TESTIMONY OR A *GEORGIA-PACIFIC*
      ANALYSIS ................................................................................................................. 14

V.    CONCLUSION ........................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ........................................................................ 6, 12, 13, 16

*Baker v. Canadian Nat'l/Ill. Cent. R.R.*,
   536 F.3d 357 (5th Cir. 2008) ........................................................................... 10, 11

*Bayer HealthCare LLC v. Baxalta Inc.*,
   989 F.3d 964 (Fed. Cir. 2021) .......................................................................... 15

*Charles v. Sanchez*,
   No. EP-13-CV-00193-DCG, 2015 WL 1345385 (W.D. Tex. Mar. 23, 2015) .................................... 11

*CQ inc. v. TXU Min. Co.*,
   565 F.3d 268 (5th Cir. 2009) ........................................................................... 11

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001) ........................................................................ 8

*Daedalus Blue LLC v. SC DIJ Tech. Co., Ltd.*
   (W.D. Tex. last entry Nov. 11, 2021) .................................................................. 13, 14

*Dow Chem. Co. v. Mee Indus.*,
   341 F.3d 1370 (Fed. Cir. 2003) ........................................................................ 15

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
   10 F.4th 1358 (Fed. Cir. 2021) ........................................................................ 11, 12

*Monsanto Co. v. McFarling*,
   488 F.3d 973 (Fed. Cir. 2007) ......................................................................... 6

*Powell v. Home Depot U.S.A., Inc.*,
   663 F.3d 1221 (Fed. Cir. 2011) ........................................................................ 6

*Tex. A & M Research Found. v. Magna Transp. Inc.*,
   338, F.3d 394, 402 (5th Cir. 2003) .................................................................... 11

*TWM Mgf. Co. v. Dura Corp.*,
   789 F.2d 895 (Fed. Cir. 1986) ......................................................................... 16

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014) ........................................................................ 8

*VLSI v Intel*
   (W.D. Tex. Apr. 20, 2021) ............................................................................. 15, 16

PUBLIC VERSION

## I.     INTRODUCTION

Red Bull has moved for summary judgment of ***no damages***. This means Red Bull's motion must be denied if there are ***any damages***. Further, for the purpose of a motion for summary judgment of no damages, the court must assume liability for direct and indirect infringement—a fact that Red Bull has completely ignored in its motion. As a direct infringer of the Halo, Red Bull is jointly and severally liable for the damages attributable to Formula 1 and FIA. As an inducer of IndyCar's infringement (in addition to Red Bull's own direct infringement through design and testing of the Aeroscreen), Red Bull is liable for the damages attributable to IndyCar. Section 284 is clear: if there is infringement, "the court ***shall*** award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty." 35 U.S.C. § 284. This is true even if the plaintiff cannot or does not present damages evidence in the form of expert testimony, so long as there is record evidence on which a jury could award a reasonable royalty. *Id.* ("The court ***may*** receive expert testimony . . . .").

Red Bull's entire motion is premised on the allegation that Nygaard "abandoned his damages claims against Red Bull." This is untrue. First, there is plenty of expert evidence from all three of Plaintiff's damages experts to support a reasonable royalty award against Red Bull for its infringement of the patent-in-suit, both with respect to the Halo and the Aeroscreen. In fact, Red Bull's own damages expert has opined on evidence of non-zero damages, which Red Bull cited in its Motion. Ex. 13 at ¶ 35.[1] Second, there is non-expert evidence establishing non-zero damages for Red Bull, including testimony from Plaintiff,[2] as well as documents and testimony produced

---

[1] Unless otherwise stated, Exhibits are to the Declaration of Danielle J. Healey, filed with this brief.

[2] Dkt. No. 266-5 at 358 (Q. (Mr. Haug) Have you lost any money because of anything that Red Bull has done? A. (Plaintiff) Outstanding licensing fees).

by Red Bull. This evidence is not new; Red Bull itself produced the evidence during fact discovery,

and Plaintiff is entitled to rely on that evidence. Further, there were new developments in the past

few days that should be considered: Red Bull announced $450,000,000 in new sponsorships[3]

resulting from Max Verstappen's 2021 Driver's Championship win—Mr. Verstappen would not

have won that championship but for the Halo saving him from injury (or worse) in July 2021 at

the British Grand Prix.[4]

Because there is evidence of damages attributable to Red Bull, the no damages motion for

summary judgment must be denied.

## II.     THE EVIDENCE SUPPORTS AN AWARD OF REASONABLE ROYALTY DAMAGES AGAINST RED BULL

### A.     There is Ample Expert Evidence In The Record Supporting A Reasonable Royalty Against Red Bull for the Halo

Nygaard's experts have provided evidence to support a reasonable royalty against Red

Bull for the Halo (as has Red Bull's expert, Dr. Ugone). As an initial matter, if FIA and F1 are

held liable as inducers, then the teams (including Red Bull) and their drivers are the direct

---

[3] Ex. 1.

[4] Red Bull's motion only goes to damages and does not challenge Plaintiff's position that Mr. Verstappen would have been killed or suffered a career ending injury in his crash in Silverstone at the British Grand Prix in July 2021, so the court must assume for the sake of the no damages motion that Mr. Verstappen was eliminated from Formula 1 racing in the middle of the 2021 season. There is ample evidence to support Plaintiff's position that but for the Halo, Mr. Verstappen would have been out for the season. *See* Ex. 2 at 114−15; Ex. 2 at Appx. B, No. 323; Ex. 3; Ex. 4 at 297−300. ████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████ ██████ nonetheless, for the purpose of the motion the evidence is construed in favor of Plaintiff.

infringers. Thus, Red Bull is jointly and severally liable with the other defendants at least up to the amount of its share of the liability for the direct infringement. Nygaard's damages experts provided a robust analysis of the appropriate royalty due to Nygaard for infringement of his patent by the Halo in Formula 1 racing. *See*, *e.g.,* Dkt. No. 266-6 at 56 ("[T]he parties likely would have agreed to a lump sum royalty of between ███████████████████") (relying on and citing to the Szymanski report and McDonald report).[5] The jury could apportion this in at least three ways:

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████.[6]

Based on this alone, Red Bull's motion for summary judgment and to be dismissed from the case should be denied.

---

[5] ███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█████████████████████████████
[6] ████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████
████████████████████████████

When it comes to the Aeroscreen and IndyCar, all three of Plaintiff's damages experts discuss the media value of the Aeroscreen to Red Bull in their reports. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Exs. 10−12. Specifically, Dr. Szymanski, a leading sports economist, details in his report that the media value of the Aeroscreen's development and testing was a minimum of ██████████, based on evidence provided by Red Bull. *See* Dkt. No. 266-7 at ¶ 88. His report further explains this is a conservative approximation that can be augmented in consideration of the value of saved lives, public recognition, and PR value. *Id.* at ¶ 91. Finally, Dr. Szymanski opines as to why the media value is a valid measure for a company like Red Bull Racing and Red Bull Advanced Technologies: ████████████████████████████

████████████████████████████████████████████████

██████████████████████ *Id.* at ¶¶ 84−89; *see also* Ex. 33. Expert Jason McDonald provides further support for media value of the Aeroscreen to Red Bull, and the fact that Red Bull derived value from the media around Aeroscreen design and testing:

- "With respect to Red Bull, Red Bull has benefited from 'free promotion' of IndyCar and Aeroscreen across blogs, motor industry press & television, social media networks, and YouTube. (This is called 'earned media' in industry parlance.)." Dkt. No. 266-8 at 8.

- "[T]here are 1124 articles across blogs, Facebook, YouTube, etc., and a total engagement count of 146,010 for the 'Aeroscreen.'" *Id.* at 21.

- "For 'Red Bull Indycar' there are 334 mentions and a total engagement of 19,091. For 'Red Bull Aeroscreen,' there are 59 mentions and a total engagement of 7,014. . . . In summary, the 'earned media' (that is the 'free' media exposure) earned by Red Bull via the Aeroscreen in particular and Red Bull Racing, in general, is significant." *Id.* at 22−23.

Furthermore, Red Bull itself, through its own damages expert Dr. Ugone, has put in record evidence for a jury to rely on to award damages (and indeed, cited to much of that evidence in its

4

PUBLIC VERSION

Motion for Summary Judgment). For example, Dr. Ugone clearly explains his opinion that ███

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████ Ex. 13 at ¶ 26. To reach this conclusion, Dr. Ugone cites to the

███████████████████████████████████████████████████████████

████████████████████████ (Mot. at 3 (citing Dkt. No. 266-4)), as well as ███████

██████████████████ attached here as Exhibit 14. Additionally, Dr. Ugone discusses the invoices

███████████████████████████████████████████████████████████

███████████████████ Mot. at 2−3 (citing Dkt. No. 266-2); Ex. 13 at ¶ 26. Dr. Ugone treats this

as what it is: Red Bull (unsurprisingly) disagrees with Nygaard's damages model. Ex. 13 at ¶36

("████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████"). Thus, it is not that Nygaard abandoned its claims, or that there is no evidence of

those damages; it is merely that Red Bull disagrees. This is, at best, fodder for cross-examination

of Nygaard's experts. But the bottom line here is that it is evidence of non-zero damages; thus,

Red Bull's motion must fail on those grounds alone.

### B.   There Is Ample Non-Expert Evidence In The Record Supporting A Reasonable Royalty Against Red Bull

Red Bull has produced plenty of evidence supporting Nygaard's claim for damages against

it. This is not new evidence being produced by Nygaard; it is evidence provided by Red Bull and

the other defendants in the final weeks of fact discovery through its deposition testimony and

documents. In fact, some of the evidence is from news that has only become public in the past

week (though Red Bull certainly knew of it earlier, and declined to produce related information in

response to Plaintiff's document requests or interrogatories).

Due to the nature of the Halo and Aeroscreen, a traditional royalty analysis of applying a

royalty rate to sales is simply inadequate. The value the Halo and Aeroscreen provide is in their life-saving and injury-sparing properties, and not in simple profits made from sales of a device. In determining a reasonable royalty, it is proper for the jury to consider the benefits the infringer received from its infringement. *See, e.g., Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014) (holding that "estimat[ing] the value of the benefit provided by the infringed features by comparing the accused product to non-infringing alternatives" may be a reliable method for estimating a reasonable royalty); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) (finding it was proper for the jury to consider the benefits the infringer received in (1) the form of a competitive advantage, and (2) profits from sales of goods often sold in conjunction with lumber); *Monsanto Co. v. McFarling*, 488 F.3d 973, 980 (Fed. Cir. 2007) ("In determining the amount of a reasonable royalty, it was proper for the jury to consider not only the benefits of the licensing program to [the patentee], but also the benefits that [the patentee's] technology conferred on [infringers].")." Red Bull, however, flatly refused to respond to interrogatories directed to understanding the benefits it received from the Halo and Aeroscreen, and produced only limited documents on those topics. Ex. 15 at Nos. 1-6; Ex. 16 at Nos. 8-10; Ex. 17 at Nos. 20-23, 26.

Red Bull did provide some documents and testimony related to the benefit it received from its infringing use of the Halo and Aeroscreen, and those documents and testimony are evidence of damages that it is appropriate for the jury to consider, in addition to the expert evidence discussed in Section II.A, above. This evidence has been identified and summarized in Nygaard's Supplemental Response to Interrogatory No. 3 (attached as Exhibit 18). To understand Red Bull's benefit from the infringement, it is necessary to keep in mind that Red Bull Racing is a ███████ ███████ as stated by its █████████████████████████. Ex. 5 at 120:3-6; *see also* Dkt. No. 266-7 at ¶ 84. Red Bull Racing has had a █████████████████████████ according to team principal Christian Horner. Ex. 31; *see also* Ex. 32.

PUBLIC VERSION

Because of this business model, the media value of projects like the Aeroscreen is a very relevant measure of damages. Red Bull employees internally discussed ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

While Red Bull objects to reliance on ████████████, its criticisms are unfounded.  First, though they point out that Dr. Szymanski relied on ████████████ produced by Red Bull,

████████████████████████████████████████████████████████

*See* Ex. 21; *see also* Ex. 22.  Moreover, as shown in the deposition of Andrew Damerum, ████

████████████████████████████████████████████████████████

████████████████████████████████ Ex. 23 at 58:25-60:8, 88:7-90:17; 117:17-120:19 (Red Bull testimony regarding ████████████████ presented in Red Bull's MSJ at Ex. 13 (Dkt. No. 266-9); Exs. 12, 19, 24; *see also* Ex. 23; https://www.youtube.com/watch?v=43eZhm4vtHc&t=5s (May 2019 Joint IndyCar Red Bull Press Conference on the Aeroscreen).

With respect to the Halo, in addition to the evidence already discussed supporting the reasonable royalty to Formula 1 and FIA, for which Red Bull would be jointly and severally liable as a direct infringer, there is additional evidence supporting the benefit the Halo provided to Red Bull directly, and in particular to Red Bull driver Max Verstappen. But for the Halo, Verstappen

would likely (at least) have missed the remainder of the 2021 season after his accident at Silverstone. Ex. 2 at 114−15.[7] Had that happened, he could not have won the 2021 Driver's Championship. Moreover, the Halo saved Lewis Hamilton's life at the 2021 Italian Grand Prix, when Verstappen crashed into him. *Id.* at 110−113.[8] Verstappen was subsequently sanctioned for breaking the rules and causing the crash. Ex. 25. In the last week, Red Bull publicly announced that it entered into two extremely new sponsorship contracts totaling $450,000,000. Exs. 26−27. It is a reasonable conclusion that these sponsorship contracts are a direct result of Verstappen's 2021 Driver's Championship; it is also a reasonable conclusion that if Verstappen's aggressive driving had resulted in Lewis Hamilton's death, he would not have received these contracts. Red Bull has failed to produce documents and information surrounding the negotiation of these contracts, and should supplement its document production immediately with that information.

Moreover, Red Bull is liable for damages by those it induced to infringe, which includes IndyCar (directly through testing of the Aeroscreen in 2019). Even if IndyCar's "numbers" cannot be probative evidence of what Red Bull sees as the earned media value or an objective measure of earned media value, it is the earned media value for IndyCar. The earned media value for only the 2019 year is a small portion of the benefit IndyCar and the teams and drivers derived from the Aeroscreen: "A party that induces or contributes to infringement is jointly and severally liable with the direct infringer for all general damages." *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc*., 246 F.3d 1336, 1361 (Fed. Cir. 2001).

The Aeroscreen is not able to function without the Halo. The reason for sales of Aeroscreen is the Halo. No apportionment is required under the entire market value rule. *VirnetX, Inc. v. Cisco*

---

[7] ██████████████████████████████████████████████████████████████
██████████████████████████████████████████
[8] ██████████████████████████████████████████████████████████████

*Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("[A] patentee may assess damages based on the entire market value of the accused product only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts."). Moreover, while

███████████████████████████████████████████████████████████████████████

██████████████████████████████████—and is especially so compared to the time and resources put in by Mr. Nygaard, FIA, and others to develop what became the Halo. If the jury believes Red Bull is entitled to a credit for its contribution, then the jury can deduct ████████

███████ from the value of the device—indeed, Red Bull has said the royalty should be based on ██

████████████████████rather than the value of the invention—but this is not the law.

Indeed, Red Bull as an indirect infringer is liable for the damages of its direct infringers. Red Bull directly and indirectly infringed the Halo and as a result, derived substantial benefit from the patent-in-suit. Red Bull is a direct infringer because it collaborated with IndyCar to design the Aeroscreen. *See e.g.*, Third Amended Complaint Dkt. No. 231 at ¶¶ 117, 121, 182, 199. Red Bull also induced direct infringement since it was present during various testing of the Aeroscreen in the U.S. and after testing, continued to offer insights to improve the performance of the Aeroscreen. *See e.g.*, *id.* at ¶¶ 127, 129, 183, 204, 347.

## C.  Red Bull Cannot Rely On Procedural Maneuvers To Exclude Its Own Evidence and Testimony

Red Bull believes it can win this case by procedural maneuvering. It delayed its document productions and depositions until the very end of fact discovery,[9] and altogether refused to produce certain testimony and evidence related to damages. Then, Red Bull filed this motion for summary

---

[9] ████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

judgment in part to prevent Nygaard relying on that same late-produced evidence, and in part attempting to challenge Nygaard for lacking the very evidence that Red Bull has refused to provide.

For example, Red Bull's motion seeks to undercut Nygaard's use of the 2019 media value of the Aeroscreen as a measure of damages because Dr. Szymanski does not tie that number to Red Bull's specific earnings, monetization, or spend. Mot. at 8−9; Ex. 13. at 15−17. But this information, if it exists, is in the hands of Red Bull and no one else, and Red Bull refused to produce it or provide a competent witness to testify on it. Plaintiff's Request for Production No. 26 squarely demanded this information, but Red Bull failed to produce it, despite the very high likelihood that Red Bull has this type of information (analyses translating media value and social media into actual earnings) in its possession. Ex. 17; *See, e.g.*, Ex. 28 at 102:25-104:9, 110:22-11:20 (Rough Tr. of Mr. McDonald). Additionally, ███████████████████████████████

███████████████████████ and demurred on any substantive knowledge about the topics relating to the earned media from the Aeroscreen. Ex. 23 at 118:18-120:19. Nygaard served its supplemental interrogatory responses merely three months after the deposition of Red Bull's last damages witnesses, and before the before the close of expert discovery; Red Bull cannot now cry prejudice under Rule 37 by Nygaard's reliance on ***Red Bull's own evidence***. Parties routinely update interrogatory responses to disclose legal theories after the close of fact discovery. *See e.g.*, *Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 368−69 (5th Cir. 2008) (holding that a surveillance tape that was disclosed via supplemental interrogatory after the discovery deadline, but several months before trial was admissible and not prejudicial). However, Red Bull chose to file this dispositive motion months before the deadline to do so, and therefore before Nygaard's supplemental interrogatory responses were served.

Red Bull mistakenly believes Rule 37 bolsters their position that Plaintiff "cannot now rely on any new evidence that he did not disclose in his initial disclosures or interrogatory response."

Dkt. No. 266 at 11. However, Fifth Circuit precedent undermines this argument and shows it would be clear legal error by this Court to exclude Nygaard's new evidence. The court uses a four-factor test to determine whether a district court abused its discretion to exclude evidence: (1) the party's explanation, if any, for its failure to disclose the information in a timely manner; (2) the prejudice to the opposing party if the evidence is admitted; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the evidence. *See Tex. A & M Research Found. v. Magna Transp. Inc*., 338, F.3d 394, 402 (5th Cir. 2003). Guided by this analysis, courts in the Fifth Circuit have permitted evidence provided in supplemental interrogatory responses after the discovery deadline and evidence originally in the opposing party's possession. *See e.g., Baker*, 536 F.3d at 368−69; *Charles v. Sanchez*, No. EP-13-CV-00193-DCG, 2015 WL 1345385, at *4 (W.D. Tex. Mar. 23, 2015) (noting the purpose of Rule 26 is to "prevent an ambush, resulting in surprise or prejudice, of undisclosed, or untimely disclosed, evidence" and that "[n]o real prejudice exists to the opposing party in allowing the disclosing party to introduce evidence that has been in the opposing party's possession for several months if not years").

Red Bull relies on *MLC* and *CQ* as support for its assertion that Nygaard cannot now rely on facts in the record to support a damages analysis, but both cases are distinguishable: the evidence that was excluded in those case was evidence that ***belonged to the plaintiff***, and evidence about which only the plaintiff's witnesses could testify. *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1371−72 (Fed. Cir. 2021) ("[H]ad [Plaintiff] disclosed this information, [Defendant] could have sought fact discovery regarding this contention."); *CQ inc. v. TXU Min. Co.*, 565 F.3d 268, 278−79 (5th Cir. 2009) (seeking to present "various non-expert evidence as to the amount of CQ's contract damages" after the Court ruled that Texas contract damages are limited to a party's ***actual loss***, and cannot be estimated with a reasonable royalty). The court in *MLC* specifically noted that it was the fact that the evidence was in possession of Plaintiff that

"largely mitigate[ed] any timing and fairness concerns preventing [Plaintiff] from knowing its contentions about a reasonable royalty until after close of fact discovery." *MLC*, 10 F.4th at 1371. This is in direct contrast to the situation here, where the evidence at issue was in ████████

████████████████████████████████████████████████████

████████████████████████████████████████████

### III.   THE JURY, NOT THE EXPERTS, DECIDES REASONABLE ROYALTY

As clearly demonstrated above, this is ***not*** a case "completely lacking any evidence on which to base a damages award," as Red Bull would have this court believe. Mot. at 12 (citing *Apple v. Motorola*, 757 F.3d 1286, 1328 (Fed. Cir. 2014)). In fact, at least some of the evidence in the record comes from Red Bull's own Motion for Summary Judgment, and its own damages expert. *See* Section II.A-B, above. Nygaard, of course, disagrees, and believes that ████████ is an accurate indicator of the value of the Aeroscreen to Red Bull. *See* Section II.A, above. The district court may determine that the record does not support either of these figures, and choose an intermediate figure instead. *See Apple*, 757 F.3d at 1328. But as the *Apple* case points out, in the very same paragraph cited by Red Bull in its Motion, "[o]f course, it seems unlikely that a willing licensor and willing licensee would agree to a zero royalty payment in a hypothetical negotiation, where both infringement and validity are assumed." *Id.*

> At summary judgment, as is the case here, ***a judge may only award a zero royalty for infringement if there is no genuine issue of material fact that zero is the only reasonable royalty***. Thus, if a patentee raises a factual issue regarding whether it is due any non-zero royalty, summary judgment must be denied. In any event, simply because a patentee fails to show that its royalty estimate is correct does not, by itself justify awarding a royalty of zero at summary judgment.

*Id.* Thus, in order to support a zero royalty on summary judgment, Red Bull would need to "provide[] evidence or argument to support a zero royalty." *Id.* at 1329. For example, Red Bull has not provided any evidence that Nygaard "would have been willing to accept no payment for [Red

Bull's] infringement." *Id.* "Nor is there any evidence that, at the time of infringement, [Red Bull] concluded that the [patent-in-suit] had no value." *Id; see also* Donald S. Chisum, *Chisum on Patents § 20.07[3][a]* (2011) ("In considering the question of evidence and certainty of proof required to justify an award of a reasonable royalty, one should distinguish between (1) the existence of damage to a patentee which will support any award and (2) the evidentiary support for a particular rate or quantity as a reasonable royalty. As to the first issue, no specific proof should be required. The premise of the reasonable royalty measure is that a holder of a valid and infringed patent has inherently suffered legal damage at least to the extent of a lost license royalty opportunity.").

Red Bull's reliance on *TecSec* is misplaced. Mot. at 12. There, the zero damages award was not during the summary judgment phase, as is the case here and as is described in *Apple*, but instead was in response to a jury's verdict of no indirect infringement, where the only damages presented were damages for indirect infringement. *TecSec*, 978 F.3d at 1291−92. That is very different from the situation here, where there is evidence of damages resulting from Red Bull's direct and indirect infringement.

Red Bull also relies heavily on *Daedalus*, a recent case before this Court. However, *Daedalus* is inapplicable for several reasons. First, in *Daedalus*, this Court recognized that it was inappropriate at that time to enter an order of no damages or a dismissal, and ordered further summary judgment briefing from the parties. Dkt. No. 267-5 at 20−21. To date, that briefing has not been filed, and no related order has issued. *See* Docket, *Daedalus Blue LLC v. SC DIJ Tech. Co., Ltd.*, (W.D. Tex. last entry Nov. 11, 2021) (6:20-cv-00234-ADA). As explained at length in this Response, it is inappropriate to grant summary judgment of no damages, or to prevent a party from presenting its evidence for a damages case to the jury or to put on the evidence through the other party's fact and expert witnesses, simply because a plaintiff does not present its damages

case through experts.

Second, *Daedalus* dealt with the situation where the Court had already excluded the damages expert opinion. That is not the case here; contrary to Red Bull's allegations, Nygaard has presented expert opinion regarding appropriate damages for Red Bull (for both direct and indirect infringement), and the Court has not excluded that expert evidence. In fact, Dr. Szymanski is the preeminent economist in the field of sports, and has testified for both the U.S. government and the U.K. government, as well as authored 14 books on this topic. Ex. 29. Any complaints Red Bull has with his report at best are for cross-examination.

Third, in *Daedalus* the parties had reached the final pretrial conference and the Plaintiff still had not supplemented its discovery responses and initial disclosures to identify the additional evidence it intended to rely on, even after its expert report was excluded. Once again, that is not the case here; Red Bull filed its motion early, but Nygaard has supplemented its discovery responses, and done so within a reasonable amount of time and with plenty of notice to Red Bull under Rule 37(c).[10] Finally, the majority of the discussion in the *Daedalus* transcript was focused on the issue of comparable licenses, and how to explain those licenses to a jury without an expert. That is not the evidence at issue here, where there are no comparable licenses in the record and instead the evidence attached by Red Bull to its motion and its expert report alone contradict Red Bull's positions. In combination with other evidence, Red Bull simply cannot support its argument that there are no damages.

## IV.   THERE IS NO REQUIREMENT FOR EXPERT TESTIMONY OR A *GEORGIA-PACIFIC* ANALYSIS

The impetus for Red Bull's motion for summary judgment was the service of Nygaard's

---

[10] ███████████████████████████████████████ and the last witnesses relevant to damages were presented on December 6, 2021. Further, Plaintiff's supplement includes new events occurring within the last few days.

damages expert reports; despite paying lip service to the non-expert evidence to support damages, the focus of the motion is on the lack of an expert witness report on a *Georgia-Pacific* analysis specific to Red Bull. First, this is incorrect; as discussed above, there is a *Georgia-Pacific* analysis as to the Halo, and a jury could reasonably designate some of those damages to Red Bull for its direct infringement through the Red Bull team, and its indirect infringement through the Alpha Tauri team.

But more importantly, Red Bull's motion incorrectly asserts that expert testimony is required. *See, e.g.,* Mot. at 8 ("The jury in this case cannot determine reasonable royalty damages against Red Bull without expert testimony about how those damages should be determined."). It is not. To the contrary, "section 284 is clear that expert testimony is not necessary to the award of damages, but rather ***may*** [be] received . . . as an aid." *Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003) (emphasis in original) (internal quotations to § 284 removed); *see also Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 985 (Fed. Cir. 2021) ("A party need not present expert testimony on damages or, as a corollary, on every aspect of damages, such as a single royalty rate."). In *Dow*, the district court excluded the patentee's damages expert, then stated "since that's the only evidence of damages, then I find that plaintiff has failed to sustain its burden of proving damages." *Dow*, 341 F.3d at 1381. The Federal Circuit reversed, agreeing with the plaintiff that "reasonable royalty damages can be awarded even without such [expert] testimony; that there is a presumption of damages where infringement has been established; and that there is other evidence in the record, including the evidence supporting [the expert's] excluded opinions, that the district court must consider." *Id.*

This court's instructions to the jury in a recent case illustrates these principles. The court charged the jury that it was free to disregard an expert's testimony and opinion that they do not find useful or credible. Transcript of Record at 1571, *VLSI v Intel,* (W.D. Tex. Apr. 20, 2021) (No.

15

W-21-CV-299). The court further told the jury it was free to accept or reject the testimony of any witness. *Id.* Moreover, in *VLSI*, this instruction was followed by the *Georgia-Pacific* factors. *Id.* at 1592. The judge then provided the *Georgia-Pacific* factors to the jury; thus, it is the jury that ultimately applies the *Georgia-Pacific* analysis, and decides whether and how to apply any one factor. *Id.* at 1592−94. The jury is also free to consider any other evidence of damages, and to give any evidence whatever weight it sees fit. *See id.* at 1566−67. Plaintiff's expert reports provide evidence jurors can rely on in deliberating as instructed, and making their findings on damages. Plaintiff additionally has other evidence that the jurors can consider in deliberating damages, as the jury instruction permits.

Moreover, the reasonable royalty analysis, whether or not provided through expert testimony, need not be in the form of a *Georgia-Pacific* analysis. *Apple*, 757 F.3d at 1315. "[E]stimating a 'reasonable royalty' is not an exact science. As such, the record may support a range of 'reasonable' royalties, rather than a single value. Likewise, there may be more than one reliable method for estimating a reasonable royalty. . . . All approaches have certain strengths and weaknesses and, depending on the facts, one or all may produce admissible testimony in a single case." *Id.* "Section 284 does not mandate **how** the district court must compute [a royalty] figure, only that the figure **compensate for the infringement**." *TWM Mgf. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986). Red Bull's own damages expert acknowledges that *Georgia-Pacific* is not the only way. Ex. 13 at ¶ 24 ("In addition to *Georgia-Pacific*, other recent district court and Federal Circuit opinions such as *Lucent, Cornell, ResQNet, IP Innovation, Uniloc, Laser0Dynamics, and VinetX* provide guidance as to the evaluation of royalty damages in patent infringement matters.").

Therefore, dismissing Red Bull from this suit, or entering a finding of zero or nominal damages based solely on the (incorrect) argument that no expert has presented a *Georgia-Pacific*

analysis against it is legal error, and in clear violation of § 284's requirement of a royalty rate that compensates for infringement.

## V.    CONCLUSION

Plaintiff respectfully requests that the Court deny Red Bull's motion in its entirety.

Dated:  February 19, 2022                    Respectfully submitted,

By:   */s/ Danielle J. Healey*

**Danielle J. Healey**
Attorney in Charge
Texas Bar No. 09327980
healey@fr.com
**Brian G. Strand**
Texas Bar No. 24081166
strand@fr.com
**Bailey Benedict**
Texas Bar No. 24083139
benedict@fr.com
**Jacqueline T. Moran** (*pro hac vice*)
Texas Bar No. 24121740
jtmoran@fr.com
**FISH & RICHARDSON P.C.**
1221 McKinney Street, Suite 2800
Houston, Texas 77010
Telephone: (713) 654-5300
Facsimile: (713) 652-0109

**Tommy Jacks**
Texas Bar No. 10452000
jacks@fr.com
**FISH & RICHARDSON P.C.**
111 Congress Avenue, Suite 810
Austin, Texas 78701
Telephone: (512) 472-5070
Facsimile: (512) 320-8935

**Ahmed J. Davis** (*pro hac vice*)
Washington D.C. Bar No. 472321
adavis@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Ave SW
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

**COUNSEL FOR PLAINTIFF
JENS H. S. NYGAARD**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above document was

served on February 19, 2022, to all counsel of record via electronic mail.

*/s/ Danielle J. Healey*
Danielle J. Healey