PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

<table>
<tr><td>

JENS H.S. NYGAARD,

      Plaintiff,

v.

FÉDÉRATION INTERNATIONALE DE
L'AUTOMOBILE, FORMULA ONE
MANAGEMENT LTD., FORMULA ONE WORLD
CHAMPIONSHIP, MERCEDES-BENZ GRAND
PRIX LTD., DAIMLER AG, LEWIS HAMILTON,
RED BULL TECHNOLOGY LTD., RED BULL
RACING LTD., FERRARI S.P.A., CHARLES
LECLERC, and DALLARA AUTOMOBILI S.P.A.,

      Defendants.

</td><td>

**FILED UNDER SEAL – CONTAINS
CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER**

Case No. 6:20-cv-00234-ADA

</td></tr>
</table>

**REPLY BRIEF OF THE RED BULL DEFENDANTS IN SUPPORT OF THEIR
MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL INTERROGATORY
RESPONSE NO. 3 AND THE EVIDENCE CITED THEREIN AND IN PLAINTIFF'S
SUMMARY JUDGMENT RESPONSE BRIEF**

Deron R. Dacus
State Bar No. 00790553
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543

Edgar H. Haug (pro hac vice)
Mark A. Chapman (pro hac vice)
Jason Kanter (pro hac vice)
Roman Khasidov (pro hac vice)
HAUG PARTNERS LLP
745 Fifth Avenue, 10th Floor
New York, New York 10151
Phone: (212) 588-0800
Fax: (212) 588-0500

*Counsel for Defendants Red Bull Racing
Ltd. and Red Bull Technology Ltd.*

March 25, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT ........................................................................................................... 1

        A.      Nygaard's Supplemental Interrogatory Response Was Untimely And
                Includes New Damages Theories and Evidence That He Did Not
                Previously Timely Disclose ...................................................................... 1

        B.      Nygaard's Supplemental Interrogatory Response Should Be Excluded
                Under Rule 37(c)(1) Because His Failure to Timely Disclose His New
                Damages Theories and Evidence Was Not Substantially Justified or
                Harmless ................................................................................................... 5

        C.      The Cases Support Red Bull Because They Demonstrate That Courts
                Exclude Untimely New Theories and Evidence That Result In Prejudice ............ 8

III.    CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Al Asher & Sons, Inc. v. Foreman Elec. Serv. Co.*,
   No. MO:19-cv-173-DC, 2021 WL 2772808 (W.D. Tex. Apr. 28, 2021) ........................... 6

*Baker v. Canadian Nat'l/Ill. Cent. R.R.*,
   536 F.3d 357 (5th Cir. 2008) ...................................................................................... 9, 10

*Charles v. Sanchez*,
   No. EP-13-CV-00193-DCG, 2015 WL 1345385 (W.D. Tex. Mar. 23, 2015) .................. 9

*CQ, Inc. v. TXU Min. Co., L.P.*,
   565 F.3d 268 (5th Cir. 2009) ............................................................................................ 9

*Daedalus Blue LLC v. SZ DJI Tech. Co. Ltd.*,
   No. W-20-cv-00073-ADA, 2022 WL 831619 (W.D. Tex. Feb. 24, 2022) ................... 6, 7

*Davis v. Brouse McDowell, L.P.A.*,
   596 F.3d 1355 (Fed. Cir. 2010) ...................................................................................... 10

*Malico, Inc. v. Cooler Master USA Inc.*,
   594 F. App'x 621  (Fed. Cir. 2014) ................................................................................ 10

*MLC Intellectual Prop. LLC v. Micron Tech., Inc.*,
   10 F.4th 1358 (Fed. Cir. 2021) ......................................................................................... 8

*Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*,
   No. 13-4904, 2015 WL 459685 (E.D. La. Feb. 3, 2015) ................................................ 10

*Realtime Data, LLC v. Morgan Stanley*,
   554 F. App'x 923 (Fed. Cir. 2014) ................................................................................... 9

*Woods v. DeAngelo Marine Exhaust, Inc.*,
   692 F.3d 1272 *(Fed. Cir. 2012)* ...................................................................................... 9

**Rules**

Fed. R. Civ. P. 26 ..................................................................................................................... 6

Fed. R. Civ. P. 37(c)(1) .................................................................................................. 5, 6, 10

## I.     INTRODUCTION

Plaintiff Nygaard's opposition (Dkt. 288) to the Red Bull defendants' motion (Dkt. 280)
to strike Nygaard's supplemental interrogatory response misses the mark.  Nygaard's primary
argument is that his untimely supplemental response and the evidence it cites should not be
excluded because Red Bull already knew about the cited documents and testimony.  But
Nygaard's supplemental response should be excluded not just because it cites new evidence, but
also because it sets forth <u>new damages theories</u> that he did not previously timely disclose.  Even
if Red Bull was aware of the evidence, that was not notice of Nygaard's new damages theories,
notice that he would rely on this evidence to support these theories, or notice of how he would
rely on it—especially given that Nygaard is not advocating a "traditional" royalty analysis.

Nygaard offers no explanation for his failure to timely disclose his new damages theories
and evidence, and there is none:  He plainly could have included these new theories and evidence
in a supplemental interrogatory response during fact discovery and in his expert reports, but he
chose not to.  Having made that choice and thereby abandoned his damages case against Red
Bull, Nygaard should not be permitted to belatedly try to salvage his damages case in the face of
Red Bull's motion for summary judgment of no damages (Dkt. 266).  That plainly would be
prejudicial to Red Bull, which now has no opportunity to develop a rebuttal to Nygaard's new
theories and evidence.  Therefore, the Court should strike Nygaard's supplemental response and
the evidence it cites, and disregard them in deciding Red Bull's summary judgment motion.

## II.     ARGUMENT

### A.     Nygaard's Supplemental Interrogatory Response Was Untimely And Includes New Damages Theories and Evidence That He Did Not Previously Timely Disclose

Nygaard's supplemental response (Dkt. 275, Ex. 8 at 12-21 ("Supp.")) to Red Bull's
damages contention interrogatory was untimely under Rules 16 and 26.  Red Bull Motion (Dkt.

1

280) ("Mot.") at 3-4, 6-8.  Nygaard served his supplemental response with his opposition to Red

Bull's summary judgment motion on February 20, 2022—three months after fact discovery

ended on November 23, 2021, two months after serving his damages expert reports on December

24, 2021, and a week after Red Bull served its rebuttal expert report on February 14, 2022.  *Id.*

Given how untimely Nygaard's supplemental response was, his primary argument is that

his supplemental response and the evidence it cites should not be excluded because Red Bull was

aware of the cited documents and testimony, and therefore supposedly already had "notice of the

matters in the supplement to Interrogatory No. 3 during the discovery period," including his

"value-centric damages theory."  Nygaard Opposition (Dkt. 288) ("Opp.") at 2-3, 6, 7 & n.3, 11.

As an initial matter, Nygaard's argument is belied by his own actions:  If Red Bull

already had notice of Nygaard's damages theories and related evidence set forth in his ten-page

supplemental response, why did he bother to prepare the supplemental response, serve it with his

summary judgment opposition, and rely extensively in his opposition on the damages theories

and evidence discussed in the supplemental response?

In fact, Nygaard's supplemental response sets forth many <u>new</u> damages theories (and

related evidence) that he did not previously disclose during fact discovery or in his expert

reports.  For example, the response sets forth new damages theories (and related evidence) that:

(1) Red Bull Racing owes some portion of the Halo damages owed by FIA/F1 (Supp. at 18, 20);

(2) Red Bull Racing owes an unstated amount of Halo damages based on an unstated amount of

████████████████████████████ (*id.* at 18-20);[1] and (3) Red Bull Technology owes ███████

---

[1] Nygaard's theory is that Red Bull Racing owes an unstated amount of reasonable royalty
damages because ███████████████████████████████████████████████████████████
█████████████.  Opp. at 5; Supp. at 18-20.  This theory is
not only new but also fanciful, speculative, and conclusory.  It also has no evidentiary, legal or

██████ of Aeroscreen damages because the purported "media value" of the Aeroscreen is ████████

██████ (Supp. at 13).  These and other theories in the response are new theories that Nygaard did

not previously disclose to Red Bull.  By ambushing Red Bull with these new theories and

evidence months after fact discovery and his expert reports, Nygaard inflicts the very harm that

Rule 26 prohibits: unfair and prejudicial surprise without a fair opportunity to respond.[2]

Nygaard strains to demonstrate otherwise, including with his new "appendix" (Dkt. 288-1

("App.")) discussing the cited evidence.  Opp. at 3-5, 6, App. at 1-6.  But even if Red Bull was

aware of this evidence, that was not notice of Nygaard's new damages theories, notice that he

would rely on this evidence to support these new theories, or notice of how he would rely on it.

For example, Nygaard argues that Red Bull knew that Nygaard would rely on ████████

████████████████████ in his damages case against Red Bull because Nygaard sought and

Red Bull produced ████████████████████ during discovery, and Red Bull Racing's

CFO was asked about this at his deposition.  Opp. at 3-5, App. at 2, 3-4.  But the fact that

Nygaard sought this information did not provide notice to Red Bull that Nygaard contends that

████████████████████████ are supposedly relevant to reasonable royalty damages

against Red Bull, much less how and why.  Nygaard did not explain this in his initial disclosures,

his original interrogatory response, or any of his expert reports. Dkt. 266 at 3-4, Ex. 5 at 11-12,[3]

Ex. 8 at 6-7, Ex. 10, Ex. 11, Ex. 12.  As such, Red Bull did not know whether or how Nygaard

---

[2] economic basis.  In particular, Nygaard has not explained how any of this is relevant to
reasonable royalty damages, especially given that these events occurred three years after the
hypothetical negotiation.  In any event, this new theory is not in any of Nygaard's expert reports.

[2] Nygaard's supplemental interrogatory response also includes a new four-page discussion of all
fifteen *Georgia-Pacific* factors, which he did not previously disclose (Supp. at 14-18).

[3] Contrary to Nygaard's assertion, his initial disclosures concerning damages did not mention
████████████████████.  Dkt. 266, Ex. 5 at 11-12; Opp. at 4.

was relying on ████████████████████ in his damages case against Red Bull.

Nygaard's failure to timely disclose that he is relying on ████████████████

████ and why those ██████ are supposedly relevant to reasonable royalty damages against

Red Bull was very prejudicial, because it prevented Red Bull from timely ascertaining this

damages theory and developing a rebuttal.  This is not a typical patent case in which the

defendant sells the accused product and can readily determine its own product sales revenue that

will be the royalty base.  Red Bull did not make or sell the Halo or the Aeroscreen, and Nygaard

admits he is not advocating a "traditional royalty analysis" based on a royalty rate applied to a

royalty base of the sales revenue of the accused products.  Dkt. 266 at 2-3; Dkt. 275 at 5-6.

Indeed, that is precisely why Red Bull served its interrogatory asking Nygaard to explain his

damages contentions against Red Bull for both the Halo and the Aeroscreen.  It is preposterous

for Nygaard to assert that Red Bull knew why Nygaard contends █████████████████

██████ is supposedly relevant to reasonable royalty damages against Red Bull when ████

█████ do not relate to sales of the accused products.

Similarly, Nygaard argues that Red Bull knew about the purported ██████████ "media

value" of the Aeroscreen—which Nygaard now belatedly contends is the amount of his

reasonable royalty damages against Red Bull—because Red Bull produced an ██████

██████████ on which Nygaard relies for this theory.  Opp. at 7, App. at 5; Supp. at 13.  It is

preposterous for Nygaard to assert that Red Bull received notice of this new damages theory

because Red Bull produced this ██████████ in this case.  Nygaard's original

interrogatory response did not state that he sought reasonable royalty damages against Red Bull

based on any purported "media value" of the Aeroscreen, much less mention this ████████

██████████ or quantify this "media value" at ██████████.  Dkt. 266 at 3-4, Ex. 8 at 6-7.  And

although Dr. Szymanski's expert report set forth his opinion that the purported "media value" of

the Aeroscreen is ███████████ based on this ██████████████, none of Nygaard's experts

explained how this "media value" is supposedly relevant to reasonable royalty damages against

Red Bull, and none of them determined reasonable royalty damages against Red Bull based on

this "media value." Dkt. 266 at 5-6, Exs. 10, 11, 12. Indeed, Dr. Szymanski admitted he is not

providing any reasonable royalty opinions. Dkt. 279 at 4 & n.7. It was only in Nygaard's

supplemental interrogatory response served two months later that Nygaard contended—for the

first time—that this ███████████ purported "media value" is the amount of damages owed by

Red Bull, without any explanation or analysis. Supp. at 13. Nygaard's failure to timely disclose

this was very prejudicial to Red Bull because it has no opportunity to develop a rebuttal.

Nygaard also quotes his original interrogatory response to argue that Red Bull had notice

of the "same value-centric damages theory" since that time. Opp. at 7 n.3 (quoting Dkt. 267, Ex.

8 at 6-7). But as the quoted excerpt demonstrates, and Nygaard does not dispute, his original

response merely stated that reasonable royalty damages against Red Bull "[would] be based on

the value of his inventions as incorporated into the Halo and Aeroscreen and open cockpit race

cars, expert witness analysis and testimony," without explaining what this purported "value" was

based on, how this "value" would be determined, the amount of this "value," how this "value" is

supposedly relevant to reasonable royalty damages against Red Bull, or the resulting amount of

reasonable royalty damages against Red Bull. Dkt. 267, Ex. 8 at 6-7.

## B. Nygaard's Supplemental Interrogatory Response Should Be Excluded Under Rule 37(c)(1) Because His Failure to Timely Disclose His New Damages Theories and Evidence Was Not Substantially Justified or Harmless

Nygaard has the burden of demonstrating that his failure to timely disclose his new

damages theories and evidence in violation of Rule 26 was "substantially justified or harmless"

under Rule 37(c)(1). *See Daedalus Blue LLC v. SZ DJI Tech. Co. Ltd.*, No. W-20-cv-00073-

ADA, 2022 WL 831619, *2-3 (W.D. Tex. Feb. 24, 2022) (citations omitted).  The Fifth Circuit

has articulated four factors a court should consider in determining whether a violation of Rule 26

is harmless or substantially justified under Rule 37(c)(1): (1) the explanation, if any, for the

party's failure to timely disclose the evidence; (2) the prejudice to the opposing party of allowing

the evidence; (3) the importance of the evidence; and (4) the possibility of curing the prejudice

with a continuance.  *Al Asher & Sons, Inc. v. Foreman Elec. Serv. Co.*, No. MO:19-cv-173-DC,

2021 WL 2772808, *5 (W.D. Tex. Apr. 28, 2021) (citations omitted); *Daedalus*, 2022 WL

831619 at *2-3.  Nygaard does not address the factors despite bearing the burden to do so.

Regardless, the factors demonstrate that his failure was not substantially justified or harmless.

　　With respect to the explanation factor, Nygaard offers no explanation for his failure to

disclose his damages theories until months after his expert reports and after Red Bull moved for

summary judgment.  The question is not whether "the jury can decide a reasonable royalty

without an expert opinion" (Opp. at 5), but why Nygaard failed to timely disclose his damages

theories and related evidence.  Nygaard offers no explanation for his failure, and there is none:

Nygaard plainly could have included these new theories and evidence in a supplemental

interrogatory response during fact discovery or in his expert reports, but he chose not to do so.

　　Instead, Nygaard argues that he was "not required" to supplement his disclosures.  Opp.

at 2-4.  But Nygaard cites no authority for the proposition that a party is permitted to: (1) defer

responding to a contention interrogatory until the deadline for expert reports; (2) fail to provide

the requested information in his expert reports; and then (3) ambush his adversary with the

requested information months after the fact discovery and expert report deadlines in response to

a summary judgment motion.  Nygaard's conduct was not substantially justified.

　　With respect to the prejudice factor, Nygaard argues that Red Bull already knew about

6

the evidence cited in the supplemental response. Opp. at 3-5, 10-12. As explained above, even if Red Bull was aware of the evidence, Red Bull did not know Nygaard's new damages theories and what evidence he would rely on, especially given that Nygaard is not advocating a traditional royalty analysis. Red Bull was entitled to timely notice of Nygaard's damages theories and the related evidence by this Court's deadline—not months later, and only after Red Bull filed its summary judgment motion. As explained above, Nygaard's failure to timely disclose his theories was prejudicial because Red Bull has no opportunity to develop a rebuttal.

If the Court permitted Nygaard to inject his new damages theories and evidence into the case at this late stage, Red Bull would be forced to expend significantly more time and money rebutting those contentions, including by potentially seeking to reopen fact and expert discovery. When considered in the context of this already burdensome, expensive, and time-consuming litigation, and the fact that Nygaard has offered no justification for his failure, the prejudice factor weighs strongly in favor of exclusion. *See Daedalus*, 2022 WL 831619 at *6.

With respect to the importance of the evidence factor, Nygaard treats his supplemental response as unimportant by arguing that he did not need to serve it. Opp. at 2-4, 11, 12. Nygaard also asserts that the jury can award damages against Red Bull Racing based on some portion of the Halo damages owed by FIA/F1, but he does not argue that he will be unable to recover damages from FIA or F1, and he cannot recover any additional damages from Red Bull. *Id.* at 6; Dkt. 279 at 3-4. Thus, Nygaard's own arguments demonstrate that his supplemental response and evidence are not important. *See Daedalus*, 2022 WL 831619 at *6.

Finally, Nygaard does not seek a continuance. In any event, "the Fifth Circuit has been clear that district judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case." *Id.* at *7 (citations omitted); *cf. id.* (rejecting

7

continuance because it "would throw a wrench in the otherwise orderly pretrial process").

In sum, all four factors weigh in favor of exclusion.

### C.   The Cases Support Red Bull Because They Demonstrate That Courts Exclude Untimely New Theories and Evidence That Result In Prejudice

Finally, the cases cited by Nygaard (Opp. at 7-12) support Red Bull's motion because they demonstrate that courts exclude untimely new theories and evidence that result in prejudice.

*MLC* squarely supports Red Bull's motion.  In *MLC*, the Federal Circuit affirmed the exclusion of MLC's expert's opinion that lump sum royalty license agreements reflected a particular royalty rate because that contention was not in MLC's response to Micron's contention interrogatories.  *MLC Intellectual Prop. LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1369-73 (Fed. Cir. 2021).  Nygaard tries to distinguish *MLC* on the ground that MLC had the agreements.  Opp. at 8.[4, 5]  But the court in *MLC* held that "because the … licenses are lump-sum agreements that do not contain specific royalty rates, absent a disclosure by MLC, Micron would have no way of knowing that [MLC's expert] would opine that the agreements reflect a 0.25% royalty rate."  *MLC*, 10 F.4th at 1370.  Similarly, Red Bull "ha[d] no way of knowing" Nygaard's new damages theories and the evidence on which he would rely, even if Red Bull was aware of the evidence.

Nygaard relies heavily on *Charles* but it is distinguishable.  Opp. at 2, 10, 11.  In that

---

[4] Nygaard complains (again) about the timing of the deposition of Red Bull Racing's CFO.  Opp. at 8.  As Red Bull explained in its summary judgment reply, Nygaard accepted all of Red Bull's deposition dates.  Dkt. 279 at 9 & n.15.  Moreover, Nygaard had more than enough time to supplement his interrogatory response after the depositions, but he waited until months later.  Nygaard's other complaints relate to documents and depositions of FIA, not Red Bull.  Opp. at 8.

[5] Nygaard falsely accuses Red Bull (again) of "altogether refus[ing] to produce certain testimony and evidence."  Opp. at 8-9.  As Red Bull explained in its summary judgment reply, it complied with all of its discovery obligations:  After Nygaard completed the Red Bull depositions, Nygaard did not complain to Red Bull about any supposed document production or testimony deficiencies before fact discovery ended, much less seek relief from the Court.  Dkt. 279 at 9; *see also id.* n. 15, 16, 17 (responding to Nygaard's specific complaints rehashed here (Opp. at 8-9)).

personal injury case, the court held that defendants were not surprised or prejudiced by plaintiff's untimely disclosure of damages calculations because the calculations "[were] based solely on" medical and billing records defendants already had. *Charles v. Sanchez*, No. EP-13-CV-00193-DCG, 2015 WL 1345385, *4-5 (W.D. Tex. Mar. 23, 2015). In contrast, Red Bull did not know Nygaard's new damages theories and how he would rely on the evidence to support the theories.

Nygaard's attempt to distinguish *CQ* and *Woods* falls flat. In *CQ*, the Fifth Circuit affirmed the exclusion of new royalty and contract damages calculations that were not previously timely disclosed. *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 279-80 (5th Cir. 2009). In *Woods*, the Federal Circuit held that defendant had not adequately supplemented its contention interrogatory response "before the discovery deadline." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1282 (Fed. Cir. 2012); Mot. at 7. Nygaard tries to distinguish these cases by arguing that his supplemental interrogatory response did not present new theories and evidence. Opp. at 7, 9. However, as explained above, his response did present new theories and evidence.

*Realtime* is not distinguishable. Opp. at 10. The Federal Circuit affirmed the decision to preclude plaintiff from asserting a new infringement theory not timely disclosed until after fact discovery, because it would prejudice defendants "from developing adequate discovery and developing theories of noninfringement." *Realtime Data, LLC v. Morgan Stanley*, 554 F. App'x 923, 937-38 (Fed. Cir. 2014) (nonprecedential). Nygaard tries to distinguish *Realtime* on the ground that it involved "an entirely new theory." Opp. at 10. But Nygaard's supplemental response also sets forth "entirely new theor[ies]," and, like the defendants in *Realtime*, Red Bull is prejudiced because it has no opportunity to develop a rebuttal.

This case is not "similar" to *Baker* as Nygaard argues. Opp. at 10. In *Baker*, the Fifth Circuit affirmed the decision to admit a surveillance video of plaintiff first disclosed in an

9

interrogatory response after fact discovery.  *Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 368-69 (5th Cir. 2008).  As Red Bull explained, *Baker* did not involve an untimely contention interrogatory response with new theories and evidence, as in this case.  Mot. at 9.

*Malico* supports Red Bull.  In affirming summary judgment, the Federal Circuit rejected the argument that the district court had erred by "ignor[ing]" certain evidence it had excluded under Rule 37(c)(1) as untimely.  *Malico, Inc. v. Cooler Master USA Inc.*, 594 F. App'x 621, 625-26 (Fed. Cir. 2014) (nonprecedential).  Similarly, Nygaard's new theories and evidence should be excluded and disregarded in deciding Red Bull's summary judgment motion.

Nygaard tries to distinguish *Davis* on the ground that he is not offering new expert testimony.  Opp. at 9-10.  But *Davis* supports Red Bull because the Federal Circuit excluded a new theory not previously timely disclosed.  *Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355, 1362 (Fed. Cir. 2010) (affirming decision to strike expert opinion not disclosed in earlier report).

*Nola* is distinguishable, not "analogous" as Nygaard argues.  Op. at 11-12.  The court held that defendant was not prejudiced by plaintiffs' late disclosure because defendant received the documents one month before its expert reports were due, so it was not "denied … the opportunity to acquire a countervailing expert opinion."  *Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, No. 13-4904, 2015 WL 459685, *2 (E.D. La. Feb. 3, 2015).  In contrast, Nygaard did not serve his supplemental response until after Red Bull served its rebuttal damages report.

## III.     CONCLUSION

For the reasons set forth above and in Red Bull's motion to strike (Dkt. 280), Red Bull respectfully requests that the Court grant Red Bull's motion, enter the order submitted with Red Bull's motion, and disregard Nygaard's supplemental interrogatory response and the evidence it cites in deciding Red Bull's motion for summary judgment of no damages (Dkt. 266).

Dated: March 25, 2022      Respectfully submitted,

        By:  /s/ Deron R. Dacus
            Deron R. Dacus
            State Bar No. 00790553
            THE DACUS FIRM, P.C.
            821 ESE Loop 323, Suite 430
            Tyler, TX 75701
            Phone: (903) 705-1117
            Fax: (903) 581-2543
            ddacus@dacusfirm.com

            /s/ Mark A. Chapman
            Edgar H. Haug (pro hac vice)
            Mark A. Chapman (pro hac vice)
            Jason Kanter (pro hac vice)
            Roman Khasidov (pro hac vice)
            HAUG PARTNERS LLP
            745 Fifth Avenue, 10th Floor
            New York, New York 10151
            Phone: (212) 588-0800
            Fax: (212) 588-0500

            *Counsel for Defendants Red Bull Racing*
            *Ltd. and Red Bull Technology Ltd.*

PUBLIC VERSION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document and exhibits thereto have been served on all counsel of record via electronic mail and/or the Court's ECF System on March 25, 2022.

/s/ *Kaitlin Abrams*

Kaitlin Abrams
