## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| **JENS H.S. NYGAARD**<br><br>　　　　**Plaintiff,**<br><br>　**v.**<br><br>**FÉDÉRATION INTERNATIONALE DE L'AUTOMOBILE, FORMULA ONE MANAGEMENT LTD., FORMULA ONE WORLD CHAMPIONSHIP LTD., MERCEDES-BENZ GRAND PRIX LTD., DAIMLER AG, LEWIS HAMILTON, RED BULL TECHNOLOGY LTD., RED BULL RACING LTD., FERRARI S.P.A., CHARLES LECLERC, AND DALLARA AUTOMOBILI S.P.A.,**<br><br>　　　　**Defendants.** | Case No. 6:20-cv-00234-ADA<br><br>**JURY TRIAL DEMANDED** |

**FORMULA ONE MANAGEMENT LIMITED AND FORMULA ONE WORLD CHAMPIONSHIP LIMITED'S ANSWER TO FOURTH AMENDED AND FIRST SUPPLEMENTAL COMPLAINT FOR PATENT INFRINGEMENT**

Formula One Management Limited and Formula One World Championship Limited (the "Formula One Defendants") file this answer to Jens H.S. Nygaard's ("Plaintiff") Fourth Amended and First Supplemental Complaint ("4AC"). Each of the paragraphs below corresponds to the same-numbered paragraphs in the 4AC. The Formula One Defendants deny all allegations in the TAC that are not specifically admitted below.

The Formula One Defendants respond to Plaintiff's specific allegations as follows:

## XIX.　INTRODUCTION

Paragraph 1.　　Plaintiff Jens H. S. Nygaard ("Nygaard") files this Fourth Amended and First Supplemental Complaint for infringement of his United States Patent No. 7,494,178 ("the '178 patent") in violation of Sections 271(a), (b), (c) and (f) of Title 35 of the United States Code, by Fédération Internationale de l'Automobile ("FIA"), Formula One Management Ltd. ("FOM"), Formula One World Championship Ltd. ("FOWC"), Mercedes-Benz Grand Prix Ltd. ("Mercedes"), Daimler AG ("Daimler"), Lewis Hamilton ("Hamilton"), Red Bull Technology Ltd. ("RBT"), Red

Bull Racing Ltd. ("RBR"), Ferrari S.p.A. ( "Ferrari"), Charles Leclerc ("Leclerc"), and Dallara Automobili S.p.A. ("Dallara") (collectively "Defendants"), by making, using, selling, offering for sale or importing the "Halo" and "Aeroscreen" devices in the United States for implementation in cars in the United States; making and using road vehicles in the United States with Halo or Aeroscreen devices installed in them; causing to be supplied substantial components of the vehicles implementing the Halo and Aeroscreen from the U.S. for assembly abroad in a manner that would infringe the patent, and/or indirectly causing others to do so. The patented inventions are in structures to protect the heads and necks of drivers in the U.S. Grand Prix, the U.S. ePrix,[1] Formula 3 events in the United States, and their U.S. based teams, the NTT IndyCar 500 Series, other IndyCar Circuits, and also their U.S. based teams. Infringement is alleged both literally and by doctrine of equivalents, of claims 1, 2, and 4 of the '178 patent.[2] Incorporated by reference are the Third Amended Complaint including its Exhibit A (the '178 patent), and Exhibit B (the June 4, 2021 final infringement contentions). Exhibit C is also incorporated by reference (the infringement contentions for a new claim for declaratory judgment based on the model of the newly announced F1 2022 car). The changes between the Third Amended Complaint and this pleading are underlined, so that Defendants need only answer to the changed paragraphs (unless they are required to change nay prior answer based on discovery).

      1.      The Formula One Defendants admit that Plaintiff filed the 4AC that alleges an action for patent infringement of U.S. Patent No. 7,494,178 ("'178 Patent") against Federation Internationale de l'Automobile ("FIA"), Formula One Management Limited ("FOM"), Formula One World Championship Limited ("FOWC"), Mercedes-Benz Grand Prix Ltd. ("Mercedes"), Daimler AG ("Daimler"), Lewis Hamilton ("Hamilton"), Red Bull Technology Ltd. ("RBT"), Red Bull Racing Ltd. ("RBR"), Ferrari S.p.A., ("Ferrari"), Charles LeClerc ("LeClerc"), and Dallara Automobili S.p.A. ("Dallara"). The Formula One Defendants admit that, as best understood, the TAC asserts that one or more defendants infringe claims 1, 2, and 4 of the '178 Patent. The Formula One Defendants, however, deny that they have infringed those claims of the '178 Patent literally or by doctrine of equivalents. The Formula One Defendants also deny that Plaintiff has

---

[1] Footnote in 4AC: Formula E refers to Formula racing with electric cars.

[2] Footnote in 4AC: Defendants Mercedes, Daimler, Ferrari, Leclerc and Hamilton, have been dismissed without prejudice based on the "customer-suit exception," and Plaintiff alleges they are bound by the results of the lawsuit with FIA. Dallara was dismissed without prejudice for lack of personal jurisdiction. They remain in the complaint in the event the customer-suit exception or personal jurisdiction grounds change. Additional allegations of personal jurisdiction are added as to Dallara consistent with Plaintiff's Motion for Reconsideration of dismissal of Dallara. They are also included to the extent needed to preserve Plaintiff's future rights in the course of this litigation.

properly asserted infringement under the doctrine of equivalents in this case.  The remaining allegations in paragraph 1, including footnotes 1 and 2, of the 4AC relate to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations, and thus deny them.  To the extent any remaining allegations in paragraph 1 of the 4AC relate to the Formula One Defendants, the allegations are denied.

### A.  The Halo

<u>Paragraph 2.</u>      The Halo is a device that is integrated into Formula 1 ("F1"), Formula E, Formula 3, and other "Formula" cars.

2.      The Formula One Defendants admit that the Halo is a part that the FIA requires on formula racing cars in the FIA Formula One World Championship.  The remaining allegations in paragraph 2 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and thus deny them.  To the extent any allegations in paragraph 2 are not expressly admitted, they are denied.

<u>Paragraph 3.</u>      The Halo was used in Formula 1 racing in 2018, 2019, 2020, and 2021.

3.      Admitted.

<u>Paragraph 4.</u>      The Halo is designed to protect the drivers' heads and necks in accidents and from debris.

4.      The Formula One Defendants admit that the Halo is intended to improve driver safety, including to protect drivers' heads from debris.  To the extent any allegations in paragraph 4 are not expressly admitted, they are denied.

<u>Paragraph 5.</u>      No driver has died or suffered a serious head or neck injury in a Formula car with a Halo.

5.      Denied.

Paragraph 6.      The Halo is credited with saving several drivers in Formula events from death or serious injury, including Romain Grosjean at the 2020 Bahrain Grand Prix, Charles Leclerc at the 2018 Belgian Grand Prix, and others in open cockpit Formula races in 2018, 2019, and 2020.

6.      The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the allegations in Paragraph 6 of the TAC and thus deny them.

Paragraph 7.      The Halo prevented debris from falling on Max Verstappen at the 2021 British Grand Prix after he crashed into a safety barrier.

7.      The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the allegations contained in paragraph 7 of the TAC and thus deny them.

Paragraph 8.      The Halo prevented debris from falling on Charles Leclerc at the 2020 Italian Grand Prix after he crashed into a safety wall.

8.      The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the allegations contained in paragraph 8 of the TAC and thus deny them.

Paragraph 9.      The Halo was used by every race car that competed in the 2018 U.S. Grand Prix.

9.      Admitted.

Paragraph 10.      The Halo was used by every race car that competed in the 2019 U.S. Grand Prix.

10.      Admitted.

Paragraph 11.      The Halo was used by every race car in Formula 3 events in the U.S. in 2019 and thereafter.

11.      The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the allegations contained in paragraph 11 of the TAC and thus deny them.

Paragraph 12.        The Halo was used in the 2021 U.S. Grand Prix.

12.        Admitted.

Paragraph 13.        A model of the 2022 Formula 1 car was made public by FOM and FIA in or around July 15, 2021.  This model included a Halo.

13.        The Formula One Defendants admit that Formula One and the FIA made a non-

working model of the 2022 Formula One race car with a Halo public on or around July 15, 2021.

To the extent any allegations in paragraph 13 are not expressly admitted, they are denied.

Paragraph 14.        The regulations adopted for 2022 require the use of the Halo in all Formula 1 Grand Prix events in the same way, for the same purposes, in approximately the same configuration as deployed this year and in 2018 and 2019.

14.        The Formula One Defendants admit that the FIA's 2022 regulations require use of

the Halo in Formula One Grand Prix events.  The TAC's allegations that the regulations require

use "in the same way, for the same purposes, in approximately the same configuration as deployed

this year and in 2019 and 2019" is vague and therefore denied.  To the extent any allegations in

paragraph 14 are not expressly admitted, they are denied.

Paragraph 15.        The Halo has enabled the growth of the popularity for Formula 1 racing by protecting preventing deaths and serious injuries to drivers.

15.        Denied.

Paragraph 16.        The Halo has enabled campaigns to enhance the popularity of Grand Prix drivers because it has eliminated mortal and serious injuries to drivers' heads and necks in accidents in Grand Prix events.

16.        Denied.

Paragraph 17.        The Halo permits for publicizing of attention-grabbing accidents without driver deaths—as, for example, the accident involving Romain Grosjean on November 30, 2020, at the Bahrain Grand Prix as highlighted in Season 3, Episode 9 of the Netflix show, "Drive to Survive," "Man on Fire".  Other examples, include the accidents involving Max Verstappen and Lewis Hamilton at the 2021 British Grand Prix and the 2021 Italian Grand Prix, among others.

17.        Denied.

Paragraph 18.    The Halo has facilitated rule changes by the teams, FOM, FWOC and the FIA to encourage more competitive driving by eliminating head and neck injuries in accidents in Formula 1 racing and IndyCar Circuits racing.  For example, 2022 rule changes for Grand Prix racing are intended to enable closer car positions during races, more overtaking during races, and other maneuvers to make racing more competitive and exciting for fans.

18.    The Formula One Defendants that the FIA 2022 Formula 1 Technical Regulations are intended to allow formula racing cars to more closely follow one another and to increase overtakes, but deny that the Halo enabled these regulations.  To the extent the allegations in paragraph 18 are not expressly admitted, they are denied.

Paragraph 19.    The U.S. Grand Prix is a premier sporting and entertainment event in Texas. Vehicles with Halos are used in the U.S. Grand Prix events and race to entertain ticket-holders, to make video and copyrighted material for broadcast within and from the U.S. abroad, to make other video, audio and recordings of racing events and race related entertainment, which are shown on networks such as ESPN, Netflix, YouTube, and other outlets, and to promote merchandise and video games tied to F1 Grand Prix racing.  The Halo has been used to enhance the quality and value of this entertainment, and related activities and products, by protecting drivers from serious injury in racing during these events.[3]  Vehicles with Halo are used as the focus of these events and materials.  The racing cars with Halos, and the value of these events, are used by FIA to charge site fees to the venue, COTA.  This event was highly successful with the biggest weekend attendance of any F1 Grand Prix weekend in the 2021 season (over 400,000 fans), and television audience of about 150% of the average Grand Prix race in 2021.

19.    The Formula One Defendants admit that the U.S. Grand Prix is a sporting and entertainment event in Texas and that Formula One race cars with Halos were used at the 2018 and 2019 U.S. Grand Prix events.  The Formula One Defendants admit that formula racing cars are shown on video through ESPN, Netflix, and YouTube.  The Formula One Defendants admit that there are videogames related to Formula One racing.  The Formula One defendants admit that

---

[3] Footnote in TAC: By way of example, among other things, FOM and FOWC also use vehicles with the Halo to make video and copyrighted material for "Drive to Survive" in cooperation with Netflix and Box To Box Productions.  They are also used by Defendants to make video games from simulations and video and audio of racing in the U.S. at COTA and other tracks.  Further, FOM has its own channel on YouTube with 5.86 million subscribers, on which it posts videos hosted on servers in the U.S. for viewing on computers and other devices in the U.S., including video of U.S. racing.  Likewise, Red Bull Honda's YouTube channel has nearly 1 million subscribers.  FIA also has a YouTube channel.

there is a Netflix show titled "Drive to Survive," and Drive to Survive shows formula racing cars with Halos. The Formula One Defendants admit that they have their own channel on YouTube but deny that they have 5.86 million subscribers. The Formula One Defendants admit that they post videos on their YouTube channel, including video of U.S. racing. The Formula One Defendants deny that 400,000 separate people attended the U.S. Grand Prix's three-day race weekend in 2021, but admit that approximately 400,000 spectators attended race weekend, with each person counted as a spectator for each day they attended over the weekend (i.e., a person may be counted up to three times if they attended Friday practice, qualifying, and the race). The allegation that the 2021 U.S. Grand Prix had a "television audience of about 150% of the average Grand Prix race in 2021" is vague and therefore denied. The Formula One Defendants deny that "[t]he Halo has been used to enhance the quality and value of this entertainment, and related activities and products, by protecting drivers from serious injury in racing during these events." The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the remaining allegations and therefore deny them. To the extent any allegations in paragraph 19 are not expressly admitted, they are denied.

### B. The Aeroscreen

Paragraph 20.    The Aeroscreen is a safety device deployed in cars competing in the NTT IndyCar 500 Circuit and other IndyCar Circuits.

20.    The allegations in paragraph 20 of the TAC are related to entities other than the Formula One Defendants. The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the allegations in paragraph 20 and therefore deny them.

Paragraph 21.    The Aeroscreen includes a Halo-type component that performs the same function in the same way in approximately the same configuration as the Halo.

21.    The allegations in paragraph 21 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 22.    Although only first deployed in the 2020 NTT IndyCar 500 season, the
Aeroscreen has save the lives of several drivers from death or injury, including in a major accident in
a race in Iowa on July 18, 2020, in an accident on August 27, 2020, a race in Alabama on April 21,
2021, and at a race in Texas on May 2, 2021.

22.    The allegations in paragraph 22 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 23.    No driver has suffered a head or neck injury in a car with an Aeroscreen in
Indy500 or IndyLights racing.

23.    The allegations in paragraph 23 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

**C.  Overview of Development of the Halo**

Paragraph 24.    After the death of driver Henry Surtees in a Formula 2 event in 2009, FIA
and/or the FIA Institute for Motorsport and Sustainability ("The FIA Institute")[4] committed resources
to research improvements for protection for drivers' heads and necks in open cockpit (Formula)
racing.

24.    The allegations in paragraph 24 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 25.    This concern grew after the death of Dan Wheldon in open cockpit (IndyCar
500) racing.

---

[4] Footnote in TAC: FIA formed the FIA Foundation in 2001 as its charitable arm, and these
organizations formed the FIA Institute in 2004.  FIA closed the FIA Institute at the end of 2-16
and took over the "Halo" development effective January 1, 2017.

25.     The allegations in paragraph 25 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 26.     In 2011, the FIA and/or the FIA Institute, tested different options for protection of drivers, including a "jet fighter canopy" and other devices based on adding structures around the driver.

26.     The allegations in paragraph 26 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 27.     IndyCar also wanted to develop safety measures to address these same risks in its open cockpit racing.

27.     The allegations in paragraph 27 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 28.     Upon information and belief, FIA and the FIA Institute garnered cooperation from F1 Grand Prix teams and others, including IndyCar for their safety research ("the Project").  Dr. Trammell of IndyCar participated in meetings of the FIA Institute on a quarterly basis since 2011.

28.     The allegations in paragraph 28 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 29.     Both the Halo and the Aeroscreen have their genesis in the Project.

29.     The allegations in paragraph 29 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 30.     The Halo was developed after a series of meetings among Andy Mellor, Paddy Lowe, Dider Perrin, Luca Pignacca and others with Mr. Nygaard from November 2012 to March 2013 in Paris, at McLaren in Woking, England, and FIA Headquarters in Paris.

30.     The allegations in paragraph 30 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 31.     At a meeting on March 27, 2013, at FIA Headquarters in Paris, France
among him, the FIA Institute, FIA and Dallara, Mr. Nygaard explained the benefits of his patented
inventions to make open cockpit racing safer for drivers.

31.     The allegations in paragraph 31 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 32.     At this meeting, Mr. Nygaard discussed how his inventions used binocular
vision technology ("BVT") to permit for use of a center pillar to protect drivers' heads and necks in
collisions, rollovers, crashes, and from large flying debris.

32.     The allegations in paragraph 32 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 33.     At this meeting, Mr. Mellor, Mr. Pignacca and Mr. Perrin had notebooks
that included copies of Mr. Nygaard's European Patent Office (EPO) patent applications.

33.     The allegations in paragraph 33 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 34.     At this meeting, Mr. Mellor gave Mr. Nygaard a graphic showing a design
of a structure with a center pillar over and around the cockpit of an open cockpit car based on the '178
patent.

34.     The allegations in paragraph 34 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 35.     Mr. Mellor, Mr. Perrin and Mr. Pignacca each had notebooks with them at
the March 27, 2013 meeting.  Their notebooks each contained a copy of a counterpart application to

Mr. Nygaard's U.S. application for the '178 patent, which included the same inventions and overlapping language and drawings.

35.     The allegations in paragraph 35 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 36.     Mr. Nygaard's patents as well as pending applications, were discussed at this meeting.

36.     The allegations in paragraph 36 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 37.     Mr. Mellor and others at the meeting discussed bringing Mercedes into the development process for the Halo.

37.     The allegations in paragraph 37 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 38.     After the meeting, FIA created an April 3, 2013, "Action Plan for Single Seat Driver Evaluation."  This work plan was based on the discussion at the March 27, 2013 meeting. It included as its first action item that "AM" (Andy Mellow) would initiate creation of "'BVT Principles' technical specification with JHSN to be completed by April 25, 2013."

38.     The allegations in paragraph 38 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 39.     Sometime after the meeting, Mr. Mellor emailed Mr. Nygaard and Mr. Pigancca the work plan and a copy of a counterpart application to the U.S. application that had resulted in issuance of the '178 patent in 2009 and other materials. A follow up meeting was scheduled for April 17, 2013 in London.

39.     The allegations in paragraph 39 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 40.     Materials for the April 17, 2013, meeting were circulated with a cover page titled, "Potential Application of Binocular Vision Transparency in Motor Sport and Mobility."

40.     The allegations in paragraph 40 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 41.     Mr. Paddy Lowe became technical director of Mercedes on June 3, 2013, among his assignments at that time were to supervise the development of additional safety measures for F1 racing.  Mr. Lowe was technical director at Mercedes during its work on the Halo in 2015-2016 when the design of the Halo was finalized and testing completed.  The Halo was ready such that it could have been adopted for Grand Prix racing by July 2016 and deployed for the 2017 season..

41.     The first two sentences in paragraph 41 are related to third parties.  The Formula One Defendants therefore lack knowledge or information sufficient to form a belief as to the truth of the substance of that allegation and therefore deny them.  Based on their current understanding, however, the Formula One Defendants deny any implication that Mr. Lowe designed the Halo, contributed to the Halo design, or was employed by Mercedes at the time of the original Halo design.  The allegations in the last sentence of paragraph 41 are vague and therefore denied.

Paragraph 42.     Following the March 27, 2013 meeting, Mr. Nygaard sent a letter to FIA setting forth his proposed terms for a license to his patents for safety devices.

42.     The allegation in paragraph 42 of the TAC is related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of that allegation and therefore denies it.

Paragraph 43.     In response to his letter, Mr. Nygaard was asked to join a meeting with the FIA Institute's administration in London on or about April 5, 2013.

43.     The allegation in paragraph 43 of the TAC is related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of that allegation and therefore denies it.

Paragraph 44.     At that meeting, the FIA Institute demanded that Mr. Nygaard give over his patent rights to FIA royalty-free and with no guarantee of payment of any kind for any purpose. Mr. Nygaard refused. He was then excluded from further personal involvement in developing a safety device to protect drivers' heads and necks in Formula racing.

44.     The allegations in paragraph 44 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 45.     On May 31, 2013, the FIA Institute once again reached out to Mr. Nygaard by letter regarding terms for a license to his '178 patent. Again, FIA demanded use of Mr. Nygaard's intellectual property royalty-free.

45.     The allegations in paragraph 45 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 46.     At some point after Mr. Nygaard's meetings with Mr. Mellor, Mr. Lowe, Mr. Pignacca, and others in 2012 and 2013, Mercedes ultimately took the lead in developing a safety device with a pillar in front of the driver based on Binocular Vision Transparency "BVT principles," which became known as the "Halo."

46.     The allegations in paragraph 46 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 47.     The press for improved protection for drivers' heads and necks intensified after the deaths of Jules Bianchi following an accident at the 2014 Japanese Formula One Grand Prix and Justin Wilson at a 2015 IndyCar 500 race at the Poconos Speedway.

47.     The Formula One Defendants admit that Jules Bianchi suffered a head injury at the 2014 FIA Formula One World Championship race in Japan and died in 2015.  The Formula One

Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 48.     In late 2015 and early 2016, the Grand Prix Drivers' Association Ltd. ("GPDA") petitioned for improved driver safety protection.

48.     FOWC admits that representatives of the FIA discussed a letter from the GPDA at a 2016 F1 Strategy Group meeting.  To the extent any allegations in paragraph 48 are not expressly admitted, they are denied.

Paragraph 49.     In 2015, elements of the F1 Grand Prix Series fan base and press were urging Formula One and FIA to take measures to prevent any more driver deaths.

49.     The allegations in paragraph 49 relate to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the allegations of paragraph 49 of the TAC, and therefore deny them.

Paragraph 50.     Mercedes showed its prototype Halo in 2015.

50.     The allegations in paragraph 50 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 51.     Ferrari implemented the Halo on a Grand Prix car in early 2016, and tested the Halo during the 2016 Spanish Grand Prix events.

51.     The allegations in paragraph 51 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 52.     Other options for protection of drivers' heads and necks studied in 2016 were the "Shield" and RBT's early version of the Aeroscreen, neither of which had a pillar in the center of the cockpit in the field of vision of the driver, as was taught in the '178 patent.

52.     FOWC admits that, in 2016, the F1 Strategy Group agreed to consider various frontal protection for formula racing cars, including a concept known as the "Shield" and an early version of the Aeroscreen.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the remaining allegations and therefore deny them.  To the extent any allegations in paragraph 52 are not expressly admitted, they are denied.

Paragraph 53.     In 2016, both the GPDA and FIA urged the F1 Strategy Group to adopt the Halo for F1 Grand Prix racing.

53.     FOWC admits that representatives of the FIA discussed a letter from the GPDA at a 2016 F1 Strategy Group meeting.  FOWC admits that the FIA urged the F1 Strategy Group to adopt the Halo for Formula One Grand Prix racing.  The allegations in paragraph 53 relate to entities other than FOM.  FOM lacks knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore denies them.  To the extent any allegations in paragraph 53 are not expressly admitted, they are denied.

Paragraph 54.     In 2016, Hamilton advocated for adoption of the Halo.

54.     The allegations in paragraph 54 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 55.     On information and belief, safety devices for Formula racing that covered (e.g., canopy) or partially blocked the view of the driver (e.g., the Halo) were controversial with F1 teams.

55.     The allegations in paragraph 55 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 56.     Any obstruction of the view of the drivers was controversial with fans who felt these types of modifications violated the spirit of open cockpit racing at the heart of Formula racing.

56.     The allegations in paragraph 56 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 57.     In spring of 2016, it appeared that the Halo was the only effective measure
to protect Formula drivers' heads and necks. Nonetheless, despite lobbying by the drivers, there was
substantial division among the F1 Strategy Group over whether to adopt the Halo because of its
aesthetics. Further, among other things, the F1 Strategy Group did not want to adopt a canopy or
closed cockpit solution because it would have eviscerated Grand Prix racing's open cockpit format
and tradition. At a 2016 meeting, the F1 Strategy Group delayed consideration of the Halo in order to
explore other alternatives, including RBT's Aeroscreen, and development of a device known as the
"Shield."

57.     FOWC admits that, in 2016, at least one representative of a member of the F1

Strategy Group stated at an F1 Strategy Group meeting that they did not like the look of the Halo.

FOWC admits that representatives of the FIA discussed a letter from the GPDA at a 2016 F1

Strategy Group meeting.  FOWC admits that, in 2016, the F1 Strategy Group did not agree to

propose the Halo for use during the 2017 FIA Formula One World Championship.  FOWC admits

that, in 2016, the F1 Strategy Group agreed to consider various frontal protection for formula

racing cars, including a concept known as the "Shield" and an early version of the Aeroscreen.

FOWC admits that the F1 Strategy Group did not agree to propose use of a closed cockpit or

canopy design.  To the extent not expressly admitted, FOWC denies the remaining allegations.

FOM lacks knowledge or information sufficient to form a belief as to the truth of the substance of

the allegations in paragraph 57 of the TAC, and therefore denies them.

Paragraph 58.     RBT demonstrated its Aeroscreen at the 2016 Russian Grand Prix shortly
after an April 2016 meeting of the F1 Strategy Group where the Halo was discussed, putting its
product in competition with the Halo.

58.     FOWC admits the F1 Strategy Group discussed the Halo at an April 2016 meeting.

The remaining allegations in paragraph 58 of the TAC are related to entities other than FOWC,

and all allegations relate to entities other than FOM.  The Formula One Defendants lack knowledge

16

or information sufficient to form a belief as to the truth of the substance of those allegations, and

therefore denies them.

Paragraph 59.     The Shield was made out of "jet fighter glass" and bent around the driver leaving an opening at the top. Ferrari agreed to further develop and test the Shield.

59.     The allegations in paragraph 59 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 60.     Ferrari ultimately tested the Shield on an F1 car at events around the 2017 British Grand Prix at Silverstone.

60.     Admitted.

Paragraph 61.     Ferrari driver, Sebastian Vettel, drove the Ferrari test on July 14, 2017, but aborted it after one lap, reporting that the curvature of the Shield made it difficult to see, especially in looking forward. He also reported the Shield made him dizzy.

61.     The Formula One Defendants admit that Sebastian Vettel drove the Ferrari test on

July 14, 2017, and that the test was aborted after one lap.  The Formula One Defendants admit that

Sebastian Vettel complained that it was difficult to see and the shield made him dizzy.  To the

extent the allegations are not expressly admitted, they are denied.

Paragraph 62.     Although the Shield was scheduled for another test in September 2017 at the Italian Grand Prix, further testing cancelled after the unsuccessful run in England.

62.     The Formula One Defendants admit that the test of the Shield scheduled for

September 2017 was not conducted.  The Formula One Defendants lack knowledge or information

sufficient to form a belief as to the truth of the substance of the remaining allegations and therefore

deny them.  To the extent any allegations in paragraph 62 are not expressly admitted, they are

denied.

Paragraph 63.     Under the 2013-2020 Concorde Agreement that governs Formula 1 Grand Prix Racing, the F1 Strategy Group adopted rules for F1 Grand Prix Racing. The rules it adopted had to be ratified by the F1 Commission, and then implemented in the regulations by the FIA. The F1

Strategy Group included the entities that worked on development of solutions for protection for drivers' heads and necks: Mercedes, Ferrari, Red Bull, and FIA along with FOM.

63.     FOWC admits that, under the 2013 Concorde Implementation Agreement, the F1 Strategy Group sets the agenda for proposed changes to regulations relating to the FIA F1 Championship and brings forward those proposals to the F1 Commission.  FOWC admits that the F1 Commission may approve or reject the F1 Strategy Group's proposals.  FOWC admits that the FIA implements regulations for motor sports.  FOWC admits that the F1 Strategy Group included Mercedes, Ferrari, Red Bull, and FIA.  FOM admits that a representative attended some F1 Strategy Group meetings, but denies that it was a member of the F1 Strategy Group.  To the extent not expressly admitted, the Formula One Defendants deny the remaining allegations.

Paragraph 64.     Liberty Media Corporation ("Liberty Media") purchased F1 as of January 2017.

64.     Admitted.

**D.  Adoption of the Halo in Formula Racing**

Paragraph 65.     FOM's Ross Brawn, FIA's Jean Todt, Toto Wolff, principal of Mercedes, Christian Horner, principal of RBR, and principals of Ferrari and other teams participated in a meeting of the F1 Strategy Group in July 2017. All teams competing in Formula One Grand Prix racing at the time were represent at the meeting even though not all of them were voting members of the F1 Strategy Group.

65.     The Formula One Defendants admit that, in July 2017, FOWC's Ross Brawn, FIA's Jean Todt, Mercedes's Toto Wolff, Red Bull's Christian Horner, and representatives from Ferrari and other teams attended an F1 Strategy Group meeting.  The Formula One Defendants admit that each team competing in the Formula One Grand Prix at the time had a representative present, but that not all teams were voting members of the F1 Strategy Group.  To the extent the allegations are not expressly admitted, they are denied.

Paragraph 66.        The F1 Strategy Group (the member teams, FIA and F1) unanimously voted to adopt the Halo at the July 2017 meeting.[5]   Based on recommendations from technical representatives of FIA and the F1 Teams, FIA subsequently adopted rules for implementation of the Halo in Formula One, Formula 2, Formula E, Formula 3 and other Formula circuits.

66.        The Formula One Defendants admit that, in July 2017, the FIA reported to attendees of an F1 Strategy Group meeting that the FIA had opted to implement the Halo for the 2018 season. The Formula One Defendants admit that the FIA adopted rules for implementation of the Halo in Formula One Grand Prix racing.  The Formula One Defendants are not able to access the article at the link in footnote 5 of paragraph 66 of the 4AC and thus lack knowledge or information sufficient to form a belief as to the truth of the substance of what the footnote represents the article as saying. To the extent any allegation related to the Formula One Defendants is not expressly admitted, the Formula One Defendants deny it.

Paragraph 67.        In the 2020 contracts, including the Concorde Agreement, among the teams, FOM, FOWC (and/or related entities) and FIA, the F1 Strategy Group has been eliminated.

67.        Admitted.

Paragraph 68.        Vehicles and their components were supplied from the U.S. to other countries following the U.S. Grand Prix events for assembly into the invention abroad.

68.        Denied.

Paragraph 69.        F1 teams disassemble their vehicles down to sub-assemblies and component parts for shipment to the next race.

---

[5] Footnote in 4AC: At the time of the 2017 meeting, the process for adoption of rules was described as follows: "The sport's regulations are currently set by a procedure involving the F1 strategy group, the F1 commission and the World Motor Sport Council. The strategy group, consists of five permanent members, Red Bull, Mercedes, Ferrari, McLaren and Williams plus the highest non-qualifying team (Force India) and Ecclestone, representing FOM, and Todt the FIA, where each party has equal weight." Giles Richard, "FIA *should take greater role in F1 governance, says Jean Todt*," GUARDIAN, U.S. EDITION, FORMULA 1 2016, http://www.theguardian.com/sport/2016/jun/23/fiashould-take-greater-role-in-f1-governance-says-jean-todt (last visited Sept. 7, 2020). Mr. Todt is quoted in the article as saying, "The governing body [FIA] has not enough power, or influence to have the final say on the rules." *Id.*

69.     The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the allegations in paragraph 69 of the TAC, and therefore deny them.

Paragraph 70.     Vehicle chassis and the Halos are separately packaged from other components, including power units, windscreens, steering wheels, and racing tires, among others, but can be, and in some instances are, shipped attached to the safety cell.

70.     The Formula One Defendants deny that any "windscreens" within the meaning of Claims 1 and 4 are packaged.  The remaining allegations are vague and therefore denied.

Paragraph 71.     F1 facilitates the movement of teams and their equipment between races before and after the U.S. Grand Prix in conjunction with DHL Holdings Express and Dell Will Customs Brokers.

71.     The Formula One Defendants admit that FOM facilitated the shipment of formula racing cars owned by Formula One teams before and after the 2018 and 2019 Formula One U.S. Grand Prix races.  Paragraph 71's allegation that F1 facilitates movement "in conjunction with DHL Holdings Express and Dell Will Customs Brokers" is vague and therefore denied.

Paragraph 72.     The parts shipped include the Halo, chassis, tires, and other parts of the race cars.  The small "jagged windscreens" or small strip windscreens, are shipped by different teams in different ways: e.g., leaving them fixed to the front of the safety cell, shipping them with cargo, etc. These windscreens were used in the 2018, 2019 and 2021 U.S. Grand Prix Races.

72.     FOM admits that teams shipped parts for the 2018, 2019, and 2021 U.S. Formula One Grand Prix that included a Halo, a chassis, tires, and other car parts.  The Formula One Defendants admit that each team decides without input from the Formula One Defendants whether and how to ship air deflectors referred to in the FIA's Technical Regulations as a "windscreen," though those air deflectors are not a "front windshield/window of a road vehicle" as required in Claims 1 and 4.  FOM admits that Mercedes in 2018 decided to ship a part called a "launch windscreen," but denies that the "launch windscreen" is a "front windshield/window of a road vehicle" as required in Claims 1 and 4.  The Formula One Defendants deny that any "front

20

windshield/window of a road vehicle" or "windscreen" as required in Claims 1 and 4 were used in

the 2018, 2019, or 2021 U.S. Grand Prix races.  To the extent the allegations are not expressly

admitted, they are denied.

Paragraph 73.      FOM and FOWC, induced and caused to be supplied the components that make up substantially all of the invention, as well as components that have no substantial non-infringing use (that is, the vehicle chassis with the Halo), which if assembled in the U.S. would infringe the '178 patent.

73.      Denied.

Paragraph 74.      There are two U.S.-based Formula E teams, BMW Andretti Motorsport and Geox Dragon, and both were required to use Spark Gen2 cars that incorporated the Halo for the 2019 and 2021 U.S. ePrix and other ePrix races.

74.      The allegations in paragraph 74 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 75.      Dallara worked on the chassis implementing the Halo for these cars.

75.      The allegations in paragraph 75 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 76.      Upon information and belief, these teams used their cars on U.S. roads in preparation for and during the July 2019 U.S. ePrix, and the 2019-2020, and 2020-2021 Formula E Seasons.

76.      The allegations in paragraph 76 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 77.      Formula E teams supplied or caused to be supplied components that make up all or substantially all of the invention, including their vehicle chassis with the Halo, and other custom components with no substantial non-infringing use, but for use in a Spark Gen2 car from the U.S. abroad for ePrix racing after the July 2019 and July 2021 U.S. ePrix, which would infringe the '178 patent if assembled in the U.S

77.     The allegations in paragraph 77 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 78.     DHL Express has a relationship with Formula E racing. DHL Express worked with about nine Formula E teams who supplied their vehicles and components to other countries following the 2019 and 2021 U.S. ePrix events, including Daimler's HWA Racelab team in 2019 and Mercedes' Formula E team in 2021. Upon information and belief, these teams would have shipped their vehicle chassis implementing the Halo separately from at least some other parts of their cars. DHL Express transported these cars and parts into the U.S. for these races and transported cars for Mercedes, HWA and other European teams outside of the U.S. after these races were over.

78.     The allegations in paragraph 78 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them

### E.  Halo Enables Successful Media Campaigns Spotlighting Drivers

To the extent that this heading requires a response, it is denied.

Paragraph 79.     Liberty Media, FOM and/or FOWC implemented a strategy of growing the Formula 1 Grand Prix fan base that relied heavily on social media and other media ("Media Campaign").

79.     The Formula One Defendants admit that Formula One intends for its social media and other media to grow the Formula 1 Grand Prix fan base.  To the extent any allegations in paragraph 78 are not expressly admitted, they are denied.

Paragraph 80.     This strategy made extensive use of featuring the drivers as stars.

80.     The allegations in this paragraph are vague and therefore denied.

Paragraph 81.     This strategy included what became the series "Drive to Survive" on Netflix, which was filmed starting with the 2018 racing season, and continuing for the 2019, 2020 and 2021 seasons.

81.     The Formula One Defendants admit that "Drive to Survive" on Netflix was filmed starting with the 2018 racing season and continued for the 2019, 2020, and 2021 seasons.  To the extent any allegations in paragraph 78 are not expressly admitted, they are denied.

Paragraph 82.    Season 1 of "Drive to Survive" included material on the Halo's safety impact in the accident involving Charles Leclerc at the 2018 Belgian Grand Prix.

82.    The Formula One Defendants admit that Season 1 of "Drive to Survive" included an episode where an accident involving Charles Leclerc at the 2018 Belgian Grand Prix occurred. To the extent that the allegations in paragraph 82 are not expressly admitted, they are denied.

Paragraph 83.    Season 3 of "Drive to Survive" included material about the Halo's safety impact in the accident involving Romain Grosjean at a November 30, 2020 race at Bahrain.

83.    The Formula One Defendants admit that Season 3 of "Drive to Survive" included an episode where an accident occurred involving Romain Grosjean at a November 30, 2020 race in Bahrain.  To the extent that the allegations in paragraph 83 are not expressly admitted, they are denied.

Paragraph 84.    The Media Campaign includes extensive use of social media and internet communications.

84.    The Formula One Defendants admit that Formula One intends its social media use to grow the Formula 1 Grand Prix fan base. To the extent any allegations in paragraph 84 are not expressly admitted, they are denied.

Paragraph 85.    The Media Campaign has succeeded in helping to grow the popularity of Formula One Grand Prix Racing in the United States.

85.    The Formula One Defendants admit that Formula One intends for its social media and other media to grow the Formula 1 Grand Prix fan base.  To the extent any allegations in paragraph 85 are not expressly admitted, they are denied.

Paragraph 86.    By putting a spotlight on Formula One drivers, the Media Campaign increased the need for driver safety.

86.    The allegations in this paragraph are vague and therefore denied.

Paragraph 87.    The Media Campaign was enabled by the Halo because it prevented driver deaths and serious injury from trauma to their heads and necks when racing.

87.    Denied.

Paragraph 88.      Mercedes has stated in its filings with the U.K. Companies House that it generated over $5 billion in advertising revenue each year for Daimler AG's Mercedes-Benz brand.

88.      The allegations in paragraph 88 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 89.      Ferrari's Form F-20 filed with the U.S. Securities Exchange Commission (SEC) discusses the importance of the Scuderia Ferrari Racing Team and several of its drivers, including Charles Leclerc, to its brand.

89.      The allegations in paragraph 89 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 90.      FOM, FOWC and FIA have added a second U.S. race to the 2022 schedule in the Miami Florida area. Tickets for the Miami race are sold out.

90.      The Formula One Defendants admit that FOWC has contracted for a second U.S. race for the 2022 racing season and that the race will be held in Miami, Florida subject to the approval of the 2022 FIA Formula One World Championship calendar by the FIA World Motor Sport Council and circuit homologation by the FIA.  The allegation that "[t]ickets for the Miami race are sold out" is vague and therefore denied.

### F.  Halo in the United States

Paragraph 91.      The U.S. Grand Prix has been held at Circuit of the Americas ("COTA") in Del Valle, Texas (Austin area) since 2012.

91.      Admitted.

Paragraph 92.      Upon information and belief, FIA was paid substantial fees by COTA to host the 2018 and 2019 Grand Prix events (approximately $30 million in 2019 alone).

92.      The allegations in paragraph 92 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 93.     The State of Texas has reimbursed COTA for all or most of these fees.

93.     The allegations in paragraph 93 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 94.     In 2018, 2019 and 2021, a disproportionate amount of the revenue from
Grand Prix's international racing circuit was raised from or in the United States, including the U.S.
Grand Prix. About one-half of the revenue from Formula One Grand Prix Racing that was distributed
to the ten teams went to Ferrari, RBR and Mercedes in those years.

94.     These allegations are vague and therefore denied.

Paragraph 95.     All teams and drivers in the U.S. Grand Prix races in 2018, 2019 and 2021
used the Halo on their cars.

95.     The Formula One Defendants admit that each team that raced at the Formula One

U.S. Grand Prix in 2018, 2019, and 2021 used a Halo on their formula racing cars.  To the extent

the allegations are not expressly admitted, they are denied.

Paragraph 96.     All of the drivers in the U.S. Grand Prix races in 2018, 2019 and 2021 wore
helmets with visors that met FIA regulations.

96.     The Formula One Defendants admit that each driver that raced at the Formula One

U.S. Grand Price races in 2018, 2019, and 2021 wore a helmet with a visor.  To the extent any

allegations in paragraph 96 are not expressly admitted, they are denied.

Paragraph 97.     All of the cars in the 2018, 2019 and 2021 U.S. Grand Prix races were
capable of having windscreens fitted to them, and nearly all of them did for these races, including
drivers for Mercedes, Red Bull, and Ferrari.

97.     Denied.

Paragraph 98.     Drivers for Mercedes and Haas used what has been called a "jagged
windscreen" on their cars in the 2018 and 2019 U.S. Grand Prix races.  Mercedes also used the jagged
windscreen in the 2021 U.S. Grand Prix race.

98.     Denied.

Paragraph 99.     Racing Point used a jagged windscreen in the 2019 U.S. Grand Prix race.
Aston Martin, formerly Racing Point, used a jagged windscreen in the 2021 U.S. Grand Prix race.

99.     Denied.

Paragraph 100.     Ferrari, Red Bull and Toro Rosso drivers used small windscreens on their cars in the 2018 and 2019 U.S. Grand Prix races.  Ferrari and Red Bull also [sic] windscreens on their cars in the 2021 U.S. Grand Prix race.

100.     Denied.

Paragraph 101.     Other teams and drivers also used small windscreens on their cars, or their equivalent, in the 2018, 2019 and 2021 events.

101.     Denied.

Paragraph 102.     The U.S. Grand Prix has resulted in increased sponsorship for Formula One teams and organizations.

102.     This allegation is vague and therefore denied.

Paragraph 103.     The U.S. Grand Prix operating results were a factor in establishing a 2022 Grand Prix race in the Miami area.

103.     This allegation is vague and therefore denied.

Paragraph 104.     The U.S. Formula Grand Prix has been held at COTA since 2012, with the exception of 2020, when it was cancelled due to the COVID-19 pandemic.

104.     Admitted.

Paragraph 105.     The 2021 U.S. Grand Prix race was held on October 24, 2021 at COTA in Austin, Texas.  All cars fielded by all teams and all drivers used a Halo fixed to their cars, including all drivers on the podium.  It appears that at least nine of the ten teams, seventeen of the drivers and cars, used a Halo with a windscreen.  This event had the highest attendance of any F1 race in 2021, with over 400,000 people attending the weekend's events.  The U.S. Grand Prix had about 150% of the average Grand Prix broadcast audience for other Grand Prix races that year.  Max Verstappen of Red Bull won this race, and Red Bull's Sergio Perez placed third, giving Red Bull the highest points earned from this race.  Lewis Hamilton came in second place.  All of the drivers on the podium used windscreens.

105.     The Formula One Defendants admit that the 2021 U.S. Grand Prix race was held on October 24, 2021, at COTA in Austin, Texas.  The Formula One Defendants admit that all teams and drivers used a Halo, including all drivers that made the podium.  The Formula One Defendants deny that 400,000 separate people attended  the U.S. Grand Prix's three-day race weekend in 2021, but admit that approximately 400,000 spectators attended race weekend, with

each person counted as a spectator for each day they attended over the weekend (i.e., a person may be counted up to three times if they attended Friday practice, qualifying, and the race). The Formula One Defendants admit that Max Verstappen of Red Bull won the race, Lewis Hamilton placed second, and Sergio Perez of Red Bull placed third. The Formula One Defendants admit that Red Bull earned more points than other teams for this race. The Formula One Defendants deny all allegations related to a "windscreen," as no cars used a "front windshield/window of a road vehicle" or "windscreen" as required by Claims 1 and 4. The allegation that the 2021 U.S. Grand Prix had "about 150% of the average Grand Prix broadcast audience for other Grand Prix races that year" is vague and therefore denied. Any allegation or characterization not expressly admitted is denied.

Paragraph 106.    Since 2012, the U.S. Grand Prix has had an impact of billions of dollars on the local Austin area economy.

106.    The Formula One Defendants admit that the U.S. Grand Prix has had an economic impact on the State of Texas. The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the remaining allegations and therefore deny them.

Paragraph 107.    FOM has arranged for supply of components for the cars and their equipment after the 2018, 2019 and 2021 U.S. Grand Prix races to venues outside of the U.S. for races and events where the cars and equipment are assembled in a manner that would infringe if done in the United States.

107.    Denied.

Paragraph 108.    FOM makes deals with local race promoters, and chooses the venues. FOM makes the calendar for Grand Prix races, which is then approved by the FIA. FOM, FOWC, FIA and the teams caused cars in components and other equipment to be supplied after the 2018, 2019 and 2021 U.S. Grand Prix races to venues outside of the U.S. for races and events where the cars and equipment were assembled in a manner that would infringe if done in the United States.

108.    Denied.

Paragraph 109.    Spark Racing Technology was chosen to build all cars for Formula E for all teams. Spark contracted with Dallara to do the work on the chassis as well as other tasks for the cars. For the 2018-2019 Formula E Season, Spark sold the Spark Gen2 to Formula E teams. The Spark Gen2 has the Halo incorporated into it. For the 2020-2021 season, Spark is selling the Spark Gen2EVO, which likewise includes the Halo. Dallara contributed to the design of the vehicle chassis and the Halo for these vehicles.

109.    The allegations in paragraph 109 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 110.    The Halo was used at the U.S. Formula E ePrix in New York City in July 2019 and July 2021 by all cars as required by FIA.

110.    The allegations in paragraph 110 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 111.    FIA has set the schedule with Formula E Ltd. and the teams that caused cars and equipment to be supplied after the 2019 and 2021 U.S. Formula E ePrix to venues outside of the U.S. where the cars and equipment are assembled in a manner that would infringe if done in the United States.

111.    The allegations in paragraph 111 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 112.    All drivers in all cars wore helmets with visors.

112.    The allegations in paragraph 112 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 113.    All cars had windscreens as required by FIA's Formula E regulations.

113.    The allegations in paragraph 113 of the 4AC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 114.    The Halo has been used at Formula 3 events in the U.S. since at least 2019.

114.    The allegations in paragraph 114 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 115.    Drivers in Formula 3 events wear helmets with visors and the front ends of their cars slope down.  FIA published rules for Formula 3 that required use of windscreens in the cockpit at all relevant times.

115.    The allegations in paragraph 115 of the 4AC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

**G.  The Aeroscreen in IndyCar**

As to the allegation in paragraph 130 about the Halo, the Formula One Defendants admit that the Halo is intended to prevent driver injury or death.  The Formula One Defendants further admit that they are generally aware that IndyCar uses the Aeroscreen, which includes a windshield.  Otherwise, the remaining allegations in paragraphs 116 through 130 of the 4AC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.  To the extent any allegations in paragraphs 116 through 130 are not expressly admitted, they are denied.

**XX.    THE PARTIES**

**A.  FIA**

29

Paragraph 131.   FIA describes itself as "the governing body for world motor sport and the federation of the world's leading motorist organisations."[6]

131.   The Formula One Defendants admit that the FIA is the governing body for the FIA Formula One World Championship.   To the extent any allegations in paragraphs 131 are not expressly admitted, they are denied.

Paragraph 132.   It is a non-profit making association based in France.

132.   The allegations in paragraph 132 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 133.   It is a membership organization under French law.

133.   The allegations in paragraph 133 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 134.   FIA is the "governing body" for Formula 1, Formula E and F3 racing in the United.

134.   The Formula One Defendants admit that the FIA is the governing body for the FIA Formula One World Championship.  The remaining allegations in paragraph 134 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 135.   FIA is the sanctioning authority for the U.S. Grand Prix held at COTA in Dell Valle, Travis County, Texas, the U.S. ePrix on New York City roads, the F3 Americas circuit, and for the scheduled Miami Grand Prix, among other racing in this country.

---

[6] Footnote in TAC: FIA, *The FIA,* http://www.fia.com/FIA (last visited July 23, 2021).

135.     The Formula One Defendants admit that the FIA is the governing body for the FIA Formula One World Championship, including the U.S. Grand Prix race held at COTA in Dell Valle, Texas and the Formula One race scheduled to occur in Miami, Florida.  The remaining allegations in paragraph 135 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.  To the extent any allegations in paragraphs 131 are not expressly admitted, they are denied.

### B.  FOM and FOWC

Paragraph 136.     FOM and FOWC are indirect subsidiaries of Liberty Media.

136.     The Formula One Defendants admit that they are indirect subsidiaries of Liberty Media Corporation.  To the extent the allegations in paragraph 136 are not expressly admitted, they are denied.

Paragraph 137.     These entities manage and commercialize Formula One Grand Prix racing, including the 2018, 2019, and 2021 U.S. Grand Prix events at COTA.

137.     The Formula One Defendants admit that FOWC holds the commercial rights to the FIA Formula One World Championship, including the 2018, 2019, and 2021 U.S. Formula One Grand Prix events at COTA.  The Formula One Defendants admit that FOM is involved in the operations of the FIA Formula One World Championship, including the 2018, 2019, and 2021 U.S. Grand Prix events at COTA.  To the extent the allegations in paragraph 137 are not expressly admitted, they are denied.

Paragraph 138.     FOM has organized the Miami Grand Prix for 2022.

138.     FOWC admits that it entered into a contract for the Miami U.S. Grand Prix race for 2022.  The allegation is related to entities other than FOWC.  FOWC lacks knowledge or

information sufficient to form a belief as to the truth of the substance of the allegations and

therefore denies them.

Paragraph 139.     Upon information and belief, FOM and FOWC are among the successors in interest to the original Formula One company and Delta Topco, Ltd. ("Delta"), founded by Bernie Ecclestone to exploit media and other commercial aspects of Formula One Grand Prix racing.

139.   Denied.

Paragraph 140.     Liberty Media and its affiliates organized FOM and FOWC after it purchased the Formula One entity effective January 2017 for about $4.6 billion and other terms.  This sale was approved by the FIA.

140.   The Formula One Defendants admit that Liberty Media Corporation completed its

purchase of the Formula One Defendants in January 2017.  The Formula One Defendants admit

that the FIA approved Liberty Media's purchase of Formula One.  To the extent any allegation

related to the Formula One Defendants is not expressly admitted, the Formula One Defendants

deny it.

Paragraph 141.     F1, FIA and then F1 teams (including Mercedes, Ferrari and RBR) have contracts among them that provide for governance of F1 Grand Prix racing and also allocate revenues among them.  F1 pays the FIA for adopting, codifying and administering rules for Formula One, Formula 2 and European Formula 3 racing.

141.   The allegations that F1, FIA, and F1 teams "have contracts among them that

provide for governance of F1 Grand Prix racing and also allocate revenues among them" is vague

and confusing, and the Formula One Defendants therefore deny the allegation as written.  The

Formula One Defendants admit that there are one or more contracts that provide for the governance

of F1 Grand Prix racing and payments of prize money.  The Formula One Defendants admit that

FOWC pays the FIA an annual fee for the FIA's regulatory costs for the FIA Formula One World

Championship, but deny that the Formula One Defendants pay FIA a fee to regulate Formula 2 or

Formula 3 racing.  The Formula One Defendants lack knowledge or information sufficient to form

a belief as to the truth of the substance of the remaining allegations in paragraph 141 and therefore

deny them.  To the extent any allegation or characterization is not expressly admitted, the Formula

One Defendants deny it.

Paragraph 142.    Among the contracts in effect during the 2018-2020 Seasons was the 2013
Concorde Agreement.

142.    The Formula One Defendants admit that the 2013 Concorde Implementation

Agreement was in effect during the 2018-2020 seasons, but deny any suggestion that that

agreement includes any racing teams.

Paragraph 143.    The 2013 Concorde Agreement was replaced by a 2020 Concorde
Agreement, which substantially changed the governance of Formula One Racing.

143.    Denied.

Paragraph 144.    FOM manages media for Formula One Grand Prix Racing.

144.    Denied.

Paragraph 145.    Mr. Nygaard communicated with Formula One and Mr. Ecclestone (and
through them, Delta Topco) regarding his intellectual property by 2006.  Mr. Ecclestone participated
in the Inaugural meeting of the F1 Strategy Committee, which was held at a Formula One Facility in
Biggin Hill, England in October 2013.  The working papers for the meeting included a memorandum
by Andy Mellor reporting on the development of additional head protection for drivers, which
discussed the Nygaard patent at length.  The F1 Strategy Committee took up matters on additional
head protection for drivers at this meeting.  (Christian Horner, principal of RBR and CEO of RBT
also attended this meeting and was provided a copy of Mr. Mellor's memorandum.  The same is true
of representatives of FIA, Ferrari and Mercedes, among others).

145.    The Formula One Defendants admit that Mr. Nygaard communicated with Mr.

Ecclestone in 2006, but deny that the communication was "regarding his intellectual property."

The Formula One Defendants admit that Mr. Ecclestone attended the inaugural meeting for the

Formula One Strategy Group, which was held at Sapphire House in Biggin Hill, England in

October 2013.  The Formula One Defendants admit that the working paper for that meeting

included a paper by FIA consultant Andy Mellor reporting on additional frontal protection, but

deny that Mr. Mellor's memorandum "discussed the Nygaard patent at length."  The Formula One

Defendants admit that additional frontal protection was discussed at the meeting, where the F1

Strategy Group decided to abandon the project, including the frontal protection devices under consideration at that point.  The Formula One Defendants admit that the meeting minutes for the October 2013 F1 Strategy Group meeting list Christian Horner and representatives from the FIA, Ferrari, and Mercedes as attendees.  The Formula One Defendants deny the remaining allegations of paragraph 145 of the 4AC.  To the extent any allegation is not expressly admitted, the Formula One Defendants deny it.

Paragraph 146.    On October 17, 2018, Mr. Nygaard communicated with several Liberty Media and FOM executives about his patent rights seeking payment.

146.    The Formula One Defendants admit that Mr. Nygaard communicated with Chase Carey and Gregory Maffei via email on October 17, 2018 about a patent license, but did not list his U.S. patent.  The Formula One Defendants deny the remaining allegations of paragraph 146 of the TAC.  To the extent any allegation is not expressly admitted, the Formula One Defendants deny it.

Paragraph 147.    Chloe White, then an in-house attorney for FOM, replied to Mr. Nygaard on their behalf on October 25, 2018, and also had other communications with him in 2018.

147.    The Formula One Defendants admit that Ms. White, then an in-house attorney for FOM, replied to Mr. Nygaard on behalf of Formula One on October 25, 2018.  The Formula One Defendants also admit that Mr. Nygaard and Ms. White had other communications in 2018.  To the extent any allegation is not expressly admitted, the Formula One Defendants deny it.

Paragraph 148.    Upon information and belief, Delta transferred its license and rights to commercialize Formula One Grand Prix racing to FOWC in or after January 10, 2017. Delta remains an indirect subsidiary of Liberty Media. FOWC and FOM are successors in interest to Formula One.

148.    The Formula One Defendants admit that Delta Topco Limited is an indirect subsidiary of Liberty Media Corporation, but deny that Delta Topco Limited ever held or transferred any "license and rights to commercialize Formula One Grand Prix racing to FOWC in

or after January 10, 2017." To the extent any allegation is not expressly admitted, the Formula One Defendants deny it.

### C. Mercedes through J. Dallara

Excepting the following paragraphs to which the Formula One Defendants have a specific response, the Formula One Defendants respond as follows to paragraphs 149 through 223:

Subject to the paragraphs listed below, the allegations in these paragraphs of the 4AC are related to entities other than the Formula One Defendants. The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the allegations in these paragraphs, and therefore deny them. To the extent any allegations in paragraphs 149 through 223 are not expressly admitted, they are denied.

Paragraphs within paragraphs 149 through 223 of the TAC to which the Formula One Defendants have a specific response, with such response incorporating all of the Formula One Defendants' previous responses:

Paragraph 149.    Mercedes is the racing arm of Daimler. Mercedes was a member of the F1 Strategy Group that adopted the Halo in 2017 as a safety measure for Grand Prix racing. Mercedes actively worked on the Halo as part of the Project, and produced an early prototype for it. Mercedes competed in the 2018 and 2019 U.S. Grand Prix with cars implementing the Halo. Mercedes estimated in its most recent financial statement that it creates about $5 billion in advertising and brand value for Daimler.

149.    The Formula One Defendants admit that Mercedes was a member of the F1 Strategy Group in 2017 and that the Halo is a safety measure for Grand Prix racing. The Formula One defendants admit that Mercedes competed in the 2018 and 2019 U.S. Grand Prix with cars implementing the Halo. The remaining allegations in paragraph 149 of the 4AC are related to entities other than the Formula One Defendants. The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and

therefore deny them.  To the extent any allegations in paragraph 149 are not expressly admitted,

they are denied.

Paragraph 152.    Mercedes raced two cars in each of the 2018 and 2019 U.S. Grand Prix races
with the Halo and "jagged windscreens."

152.    The Formula One Defendants admit that Mercedes raced two formula racing cars

at the Formula One U.S. Grand Prix in 2018 and 2019, and each used a Halo.  The Formula One

Defendants deny that any formula racing cars used a "windscreen" in the 2018 and 2019 Formula

One U.S. Grand Prix races.  To the extent any allegations in paragraph 152 are not expressly

admitted, they are denied.

Paragraph 162.    Ferrari races in F1 Grand Prix events through its Scuderia Ferrari racing
division, arranges for customer racing, and also operates the Ferrari Driver Academy to train Formula
Circuit drivers. Ferrari has an extensive business licensing its trademarks. According to Ferrari's SEC
Form F-20, Ferrari's image and brand depend on the past, present and future historical success of
Scuderia Ferrari and its drivers.

162.    The Formula One Defendants admit that Scuderia Ferrari competed in the FIA

Formula One World Championship races in 2018 and 2019 at COTA with formula racing cars that

included the Halo.  The remaining allegations in paragraph 163 of the TAC are related to entities

other than the Formula One Defendants.  The Formula One Defendants lack knowledge or

information sufficient to form a belief as to the truth of the substance of those allegations and

therefore deny them.  To the extent any allegations in paragraph 163 are not expressly admitted,

they are denied.

Paragraph 165.    Ferrari was a member of the F1 Strategy Group, and upon information and
belief had veto power over its decisions.

165.    FOWC admits that Ferrari was a member of the F1 Strategy Group.  The remaining

allegations in paragraph 163 of the TAC are related to entities other than the Formula One

Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a

belief as to the truth of the substance of those allegations and therefore deny them.  To the extent

any allegations in paragraph 166 are not expressly admitted, they are denied.

Paragraph 166.    Ferrari was part of the F1 Strategy Group in 2017.

166.    Admitted.

Paragraph 168.    Its Scuderia Ferrari team competed in the 2018 and 2019 U.S. Grand Prix
with cars implementing the Halo. It is known that Leclerc raced in 2019 with a small windscreen.
Other Ferrari drivers at these 2018 and 2019 events either used a small windscreen or other equivalent
structure (including a helmet and visor, and a virtual windscreen as explained more fully below).

168.    The Formula One Defendants admit that the Scuderia Ferrari team competed in the

2018 and 2019 Formula One U.S. Grand Prix races with formula racing cars that used a Halo.  The

Formula One Defendants deny that any formula racing cars used a "windscreen" at the 2018 and

2019 Formula One U.S. Grand Prix races.  The Formula One Defendants deny that a helmet and

visor or a virtual windscreen is an equivalent of the claimed "windscreen."  To the extent any

allegations in paragraph 168 are not expressly admitted, they are denied.

Paragraph 172.    McLaren, Williams, Dallara and other super sports car manufacturers have
implemented virtual windscreens in their cars. A virtual windscreen is the equivalent of a windscreen.

172.    The Formula One Defendants deny that a "virtual windscreen" is an equivalent of

a "windscreen."  The Formula One Defendants lack knowledge or information sufficient to form

a belief as to the truth of the substance of the remaining allegations in paragraph 173 and therefore

deny them.

Paragraph 174.    Charles Leclerc ("Leclerc") drove a Ferrari vehicle with the Halo in the
2019 U.S. Prix and a small windscreen, finished fourth in that race, and is currently under contract to
Ferrari.

174.    The Formula One Defendants admit that Scuderia Ferrari competed in the FIA

Formula One World Championship races in 2018 and 2019 at COTA with formula racing cars that

included the Halo.  The Formula One Defendants deny that Charles Leclerc used a "windscreen."

The remaining allegations in paragraph 163 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.  To the extent any allegations in paragraph 174 are not expressly admitted, they are denied.

Paragraph 175.    Leclerc drove a vehicle with the Halo for Alfa Romeo Sauber F1, an Austrian team, in the 2018 U.S. Grand Prix.

175.    The Formula One Defendants admit that Charles Leclerc drove a vehicle with a Halo for Alfa Romeo Sauber F1 in the 2018 U.S. Grand Prix, but deny that Alfa Romeo Sauber is an Austrian team.

Paragraph 184.    RBR was part of the F1 Strategy Group that participated in the Inaugural meeting at Biggin Hill, England in October 2013 (Christian Horner), voted in April 2016 to delay the Halo and look for alternatives, and participated in the July 2017 unanimous vote of the F1 Strategy Group to adopt the Halo for Formula One racing.

184.    The Formula One Defendants admit that Christian Horner is listed as an attendee in the October 2013 meeting minutes for the inaugural F1 Strategy Group meeting in Biggin Hill, England.  FOWC admits that RBR was a member of the F1 Strategy Group in April 2016.  The remaining allegations in paragraph 185 of the 4AC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.  To the extent any allegations in paragraph 184 are not expressly admitted, they are denied.

Paragraph 186.    RBR competed in the 2018, 2019 and 2021 U.S. Grand Prix races in cars with Halos and small windscreens.

186.    The Formula One Defendants admit that RBR competed in the 2018, 2019, and 2021 U.S. Grand Prix races in cars with Halos.  The Formula One Defendants deny that RBR used any "windscreens."  To the extent any allegations in paragraph 186 are not expressly admitted, they are denied.

Paragraph 189.    RBR received substantial benefit from the 2021 U.S. Grand Prix because its driver, Max Verstappen, won that race, and its other driver, Sergio Perez, placed third.  Both Red Bull

drivers used cars with windscreens in this race.  Max Verstappen's win at COTA was essential to his later win of the 2021 driver championship.

189.    The Formula One Defendants admit that Max Verstappen and Sergio Perez respectively placed first and third at the 2021 U.S. Grand Prix.  The Formula One Defendants deny that these drivers used "windscreens" or a "front windshield/window of a road vehicle" as required in Claims 1 or 4.  To the extent any allegations in paragraph 189 are not expressly admitted, they are denied.

Paragraph 191.    RBR's sister team, or sometimes called its "junior team," has raced in the 2020 and 2021 seasons as Scuderia AlphaTauri,[7] and was formerly called Scuderia Toro Rosso.  This team participated in the 2018, 2019 and 2021 U.S. Grand Prix races.

191.    The Formula One Defendants admit that Scuderia AlphaTauri, formerly called Scuderia Toro Rosso, has raced in FIA Formula One World Championship races, including the 2018, 2019, and 2021 U.S. Grand Prix races.  The remaining allegations in paragraph 191 of the 4AC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.  To the extent any allegations in paragraph 191 are not expressly admitted, they are denied.

Paragraph 192.    AlphaTauri (formerly Toro Rosso) drivers are under contract to RBR.

192.    The Formula One Defendants admit that Scuderia AlphaTauri was formerly called Scuderia Toro Rosso.  The remaining allegations in paragraph 192 of the 4AC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations and

---

[7] Footnote in TAC: RBR's sister team, or sometimes called its "junior team," has raced in the 2020 and 2021 seasons as Scuderia AlphaTauri, and was formerly called Scuderia Toro Rosso.

therefore deny them.  To the extent any allegations in paragraph 192 are not expressly admitted, they are denied.

Paragraph 193.   RBR drivers used small windscreens in the 2018, 2019 and 2021 U.S. Grand Prix races.

193.    The Formula One Defendants deny that any formula racing cars used a "windscreen" at the 2018, 2019, and 2021 Formula One U.S. Grand Prix races.  To the extent any allegations in paragraph 193 are not expressly admitted, they are denied.

Paragraph 194.   Toro Rosso drivers used small windscreens in the 2018, 2019, and 2021 U.S. Grand Prix races.

194.    The Formula One Defendants deny that any formula racing cars used a "windscreen" at the 2018, 2019, and 2021 Formula One U.S. Grand Prix races.  To the extent any allegations in paragraph 194 are not expressly admitted, they are denied.

Paragraph 195.   RBR and Toro Rosso drivers used helmets in 2018, 2019 and 2021 U.S. Grand Prix racing.

195.    The Formula One Defendants admit that RBR and Toro Rosso drivers used helmets in the 2018, 2019, and 2021 Formula One U.S. Grand Prix races.

Paragraph 196.   RBR and Toro Rosso 2018 and 2019 Formula 1 cars had front ends that slope down and create a virtual windscreen.

196.    The Formula One Defendants admit that the RBR and Toro Rosso formula racing cars in the 2018 and 2019 Formula One U.S. Grand Prix races had front ends.  To the extent any allegations in paragraph 196 are not expressly admitted, they are denied.

Paragraph 217.   The Aeroscreen has a windshield.

217.    Admitted.

Paragraph 222.   Haas used the "jagged windscreen" in the 2018 and 2019 U.S. Grand Prix races (and/or helmets and/or virtual windscreens).

222.    The Formula One Defendants deny that any formula racing car used a "windscreen" in the 2018 and 2019 Formula One U.S. Grand Prix races.  The Formula One Defendants admit that drivers for the Haas team used helmets in the 2018 and 2019 Formula One U.S. Grand Prix races.  To the extent any allegations in paragraph 222 are not expressly admitted, they are denied.

## XXI.    THE PATENT-IN-SUIT

Paragraph 223.    On March 29, 2004, Mr. Nygaard's original patent application for his inventions for vehicle safety was filed in Great Britain. The U.S. '178 patent issued in 2009. Among other things, Mr. Nygaard's inventions protect people from accidents caused by collisions, flying objects, and rollovers.

223.    The Formula One Defendants admit that U.S. Patent No. 7,494,178 issued on February 24, 2009.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the remaining allegations of paragraph 223 of the TAC, and therefore deny them.

Paragraph 224.    Mr. Nygaard's patent includes inventions for placement of a strengthening member in front of the driver in his line of sight without impairing the driver's vision, by adapting the structure to achieve BVT, which effectively edits out the obstruction from the driver's line of sight.

224.    Denied.

Paragraph 225.    The original application, subsequent filings in the USPTO, filings in other jurisdictions, and the issued '178 patent itself, included drawings that illustrated many examples of embodiments of Mr. Nygaard's inventions, including cars with what Defendants now refer to as the Halo. The Aeroscreen is a windscreen and frame combined with the Halo.

225.    The Formula One Defendants admit that the '178 Patent includes figures.  The Formula One Defendants deny that those figures illustrate cars with the Halo device.  The Formula One Defendants admit that the Aeroscreen includes a windscreen.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the remaining allegations of paragraph 225 of the TAC, and therefore deny them.

Paragraph 226.    Shown below from left to right are figures 64 and 68 from the '178 patent, a depiction from FIA regulations of the Halo, and the Halo of the car driven by Leclerc in the 2018

Belgium Grand Prix. The marks on the Halo of Leclerc's car were caused by the tire of another F1 car that launched into the air in a multi-car accident during the race. The Halo received worldwide praise for saving Leclerc's life.



226.    The Formula One Defendants admit that paragraph 227 of the TAC includes an image of Figure 64 and Figure 68 of the '178 Patent.  The Formula One Defendants admit the second-from-the-right figure of paragraph 226 of the TAC includes a drawing of a Halo, though that drawing is not from the '178 Patent, and admit that the right figure is an image of a Halo on Charles LeClerc's formula racing car.  The Formula One Defendants admit that Mr. Leclerc had an accident at the 2018 FIA Formula One World Championship race in Belgium.  The remaining allegations in paragraph 226 are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the remaining allegations of paragraph 226 of the TAC, and therefore deny them.

    Paragraph 227.    Mr. Nygaard contacted manufacturers, government regulators, FIA, Delta, Formula One and others in the automobile industry to improve safety with his patent pending inventions. He reached out to the FIA by 2005 to improve safety in motor sports. Over the following years, he discussed his inventions and consulted with major car manufacturers, including, among others, Aston Martin, Audi, Bentley, Daimler, Jaguar, Lotus, Magna Steyr, Nissan, Rolls-Royce and Volvo, as well as consultants, government and others in the automobile industry. Among others, Mr. Nygaard met with Daimler Group's engineers in Stuttgart, Germany to discuss his patented inventions.

    227.    The Formula One Defendants admit that Plaintiff contacted Mr. Bernie Ecclestone in 2006 about investment in AlphaPillars, and that Mr. Ecclestone was associated with Formula One at such time. The Formula One Defendants lack knowledge or information sufficient to form

a belief as to the truth of the substance of the remaining allegations of paragraph 227 of the TAC, and therefore deny them. To the extent any allegation is not expressly admitted, it is denied.

Paragraph 228.    Mr. Nygaard directly contacted Mr. Ecclestone of Delta and Formula One in 2006 about his patent applications to bring his safety inventions to Formula One Grand Prix events. Mr. Nygaard wrote to Max Mosley, then president of FIA in 2005. Mr. Nygaard also met with auto manufacturers and consultants at or around the annual Geneva, Switzerland Auto Shows.

228.    The Formula One Defendants admit that Plaintiff contacted Mr. Bernie Ecclestone in 2006 about investment in AlphaPillars, and that Mr. Ecclestone was associated with Formula One at such time. The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the remaining allegations of paragraph 228 of the TAC, and therefore deny them. To the extent any allegation is not expressly admitted, it is denied.

Paragraph 229.    As discussed above, after Mr. Surtees' untimely death and Mr. Massa's injury, the FIA Institute focused on finding a solution for protection of the heads and necks of drivers in FIA administered Formula motor sports, which became the Project.

229.    The allegations in paragraph 229 of the TAC are related to entities other than the Formula One Defendants. The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 230.    As explained above, having failed in its attempts to find a suitable safety device, FIA and/or the FIA Institute met in November 2012 with Mr. Nygaard to consult on the BVT and driver safety innovations in his '178 patent. On December 17, 2012, FIA, Mr. Paddy Lowe and Mr. Nygaard and others met at McLaren in Woking, England, regarding his safety inventions and BVT technology. On March 27, 2013, Mr. Nygaard met with Dallara, and the FIA Institute at FIA's Paris Headquarters to implement his inventions for Formula racing. Mr. Nygaard discussed his patent at least at the March 27, 2013 meeting.

230.    The allegations in paragraph 230 of the TAC are related to entities other than the Formula One Defendants. The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 231.    Prior to meeting Mr. Nygaard and studying his '178 patent, FIA, Dallara, and others in open cockpit racing, did not believe that an obstruction could be safely placed ahead of the driver in his field of vision. Mr. Pignacca had criticized the idea of placing an obstruction in front of the driver in an open cockpit car because it would interfere with the driver's line of sight.

231.    The Formula One Defendants explicitly deny the allegations in paragraph 233 to the extent that "others in open cockpit racing" includes the Formula One Defendants.  Otherwise, the Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the remaining allegations and therefore deny them.  To the extent any allegations in paragraph 231 are not expressly admitted, they are denied.

Paragraph 232.    Mr. Nygaard's '178 patent and Mr. Nygaard taught FIA, Dallara, and others about his inventions to exploit BVT to place a strengthening pillar in front of the driver in an open cockpit race car.  In preparation for the October 2013 F1 Strategy Committee meeting at Formula One's Biggin Hill facility, Andy Mellor of the FIA Institute wrote a memorandum reporting on additional frontal protection for drivers, which included discussion of the Nygaard patent.  This memorandum was distributed to F1 Strategy Committee members as part of the working papers of the meeting, and all three remaining Defendants have now produced their copies of it.  Additional frontal protection for drivers was taken up at the meeting.

232.    The Formula One Defendants explicitly deny the allegations in paragraph 233 to the extent that "others" includes the Formula One Defendants.  The Formula One Defendants admit that the working papers for the October 2013 F1 Strategy Group meeting included a memorandum by FIA consultant Andy Mellor reporting on additional frontal protection, but deny that Mr. Mellor's memorandum "included a discussion of the Nygaard patent."  The Formula One Defendants admit that the working papers for the October 2013 F1 Strategy Group meeting were available to attendees of the meeting.  The Formula One Defendants admit that they have produced a copy of the working papers for the October 2013 F1 Strategy Group meeting.  The Formula One Defendants admit that additional frontal protection was discussed at the meeting, where the F1 Strategy Group decided to abandon the project, including the frontal protection devices under consideration at that point.   Otherwise, the Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the remaining allegations and therefore deny them.  To the extent any allegations in paragraph 232 are not expressly admitted, they are denied.

**XXII.    MR. NYGAARD REQUESTED COMPENSATION AFTER THE HALO WAS
IMPLEMENTED**

Paragraph 233.    As explained above, Mr. Nygaard was removed from the development of
the Halo after he refused to give away his patent rights as demanded by FIA.

233.    The allegations in paragraph 233 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 234.    Nonetheless, Mr. Nygaard's patented inventions were implemented in
Formula 1 Grand Prix races in 2018.

234.    Denied.

Paragraph 235.    By October 17, 2018, Mr. Nygaard directly contacted top executives at
Liberty Media and FOM about licensing his patent to compensate him for its use in the Halo and cars
implementing the Halo.

235.    The Formula One Defendants admit that Mr. Nygaard contacted executives at

Liberty Media Corporation and Formula One on October 17, 2018, offering a patent license, but

deny that Mr. Nygaard listed U.S. Patent No. 7,494,178.  The Formula One Defendants deny that

Mr. Nygaard's patent is used in the Halo or cars implementing the Halo.  To the extent any

allegations in paragraph 235 are not expressly admitted, they are denied.

Paragraph 236.    FOM insisted in its replies to Mr. Nygaard that the Halo was an FIA issue,
and he should contact the FIA.

236.    The Formula One Defendants admit that Ms. Chloe White responded to Mr.

Nygaard that the Halo is an initiative of the FIA and directed Mr. Nygaard to the FIA.  The Formula

One Defendants admit that Ms. White's letterhead listed FOM.  To the extent any allegations in

paragraph 236 are not expressly admitted, they are denied.

Paragraph 237.    Mr. Nygaard then turned to the FIA after his communications with FOM
and FOWC about the '178 patent.

237.    The Formula One Defendants deny that Plaintiff listed the '178 Patent in any communications with them in 2018 or before.  The remaining allegations in paragraph 237 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 238.    Mr. Nygaard once again asked for a royalty-bearing license as he had in 2013. This time, however, the Halo was proven technology that saved at least two driver's lives in 2018 Formula racing (Tadasuke Makino and Charles LeClerc).

238.    The Formula One Defendants admit that the Halo is intended to improve driver safety and admit that Nygaard knew of the Halo's potential to save drivers' lives when he reiterated his license offer in 2018The remaining allegations in paragraph 238 of the 4AC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.  To the extent any allegations in paragraph 238 are not expressly admitted, they are denied.

Paragraph 239.    Ultimately, Jean-Baptiste Pinton responded for the FIA in March 2019 with an email, and copied multiple people on his response, including those previously contacted in October by Mr. Nygaard at FOM and/or FOWC.

239.    The Formula One Defendants admit that Mr. Pinton responded for the FIA with a letter to Mr. Nygaard on March 12, 2019.  The Formula One Defendants admit that Messrs. Chase Carey and Greg Maffei were copied on Mr. Pinton's March 12, 2019 e-mail to Mr. Nygaard, but deny that Mr. Pinton copied Ms. Chloe White.  To the extent any allegations in paragraph 239 are not expressly admitted, they are denied.

Paragraph 240.    After being rejected by Mr. Pinton, Mr. Nygaard appealed to FIA's Mr. Jean Todt to reconsider Mr. Pinton's decision, and corresponded back and forth with Mr. Todt in 2019 about licensing his patents.

240.    The Formula One Defendants admit that Mr. Nygaard corresponded with Mr. Todt in 2019 about a "Halo license."  The remaining allegations in paragraph 240 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.  To the extent any allegations in paragraph 240 are not expressly admitted, they are denied.

Paragraph 241.    Even though Mr. Nygaard again asked FOM in 2018 and FIA in 2019 to compensate him for his patent rights, they flatly refused to do so. Neither of them made an offer to license. Neither F1, FOWC, Mercedes, Daimler, Ferrari, Dallara nor others sought a license, even though they knew the Halo would be deployed as implemented in cars in the U.S. Grand Prix at COTA, the U.S. ePrix on New York City roads, by F1's U.S.-based F1 team (Haas Racing), and by BMW Andretti and Geox Dragon Formula E teams based in the U.S., among other times and places in this country.

241.    The Formula One Defendants admit that they did not request or agree to a license from Plaintiff in 2018, because the Formula One Defendants were not required to request or obtain a license for any reason.  The Formula One Defendants deny that Mr. Nygaard "again" asked FOM to obtain a license in 2018.  The Formula One Defendants admit that they knew that the FIA required the Halo on formula racing cars starting with the 2018 FIA Formula One World Championship Season.  The Formula One Defendants deny any remaining allegations in paragraph 241 to the extent that they relate to the Formula One Defendants.  All other allegations in paragraph 241 relate to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those remaining allegations, and therefore deny them.

Paragraph 242.    They also knew that many F1 Grand Prix vehicles with the Halo would be supplied from the U.S. abroad as disassembled into their custom components that make up all or substantial all of the invention including the vehicle chassis with the Halo, including those which have no substantial non-infringing use, other than for assembly into the invention.

242.    Denied.

Paragraph 243.   FIA and Daimler also knew that Formula E teams would ship their Spark Gen2 cars with the Halo disassembled so that the vehicle chassis implementing the Halo is a custom component, together with other components that if assembled in the U.S. would infringe the patent.

243.   The allegations in paragraph 243 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

## XXIII.   THE HALO ENABLES IMPROVEMENTS TO F1 GRAND PRIX RACING FOR 2022

To the extent that a response is required to this heading, it is denied.

Paragraph 244.   FOM and FOWC and others had concerns that Formula One Grand Prix racing was becoming less attractive to fans due to the lack of competition, with racing being dominated by Mercedes and RBR.

244.   The allegations in paragraph 244 are vague for being unrestricted as to time and therefore denied.

Paragraph 245.   There was a press in the Formula One Grand Prix stakeholders to change rules to make racing more competitive by design changes to cars that would permit them to be driven closer to each other, have more opportunities to overtake each other, and put more emphasis on driver skill than with the current cars.

245.   The Formula One Defendants admit that design changes to formula racing cars for the 2022 Formula One racing season are intended to allow for those cars to more closely follow each other and increase overtakes.  The allegations in paragraph 245 otherwise are vague for being unrestricted as to time and for not identifying the specifics of the alleged "press" or the "stakeholders" in which this press supposedly existed.  The Formula One Defendants thus deny the allegations in this paragraph to the extent not expressly admitted.

Paragraph 246.   FIA adopted new regulations for construction of Formula One cars in February 2021 for the 2022 season based on research and development work done by FOM and FOWC to implement the goal of more competitive racing. The nature of enhancing and emphasizing competition based on drivers' skill was made possible by the greater safety provided to drivers by the Halo.

246.     The Formula One Defendants admit that the FIA adopted new regulations for the 2022 FIA Formula One World Championship season based on Formula One's research and development work done in cooperation with the FIA.  The Formula One Defendants deny that the only goal of the regulatory changes was more competitive racing and deny that the Halo made these regulatory changes possible.  To the extent any allegations in paragraph 246 are not expressly admitted, they are denied.

## XXIV.    NATURE OF THE ACTION

Paragraph 247.    All Defendants have been served or accepted service, and appeared.

247.     The Formula One Defendants admit they have accepted service and appeared. The remaining allegations in paragraph 247 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.  To the extent any allegations in paragraph 247 are not expressly admitted, they are denied.

Paragraph 248.    Defendants Mercedes, Ferrari, Hamilton and Leclerc were dismissed without prejudice based on the customer-suit exception, and Plaintiff has the right to proceed directly against each of them in the future if appropriate.

248.     The Formula One Defendants admit that Defendants Mercedes, Ferrari, Hamilton, and Leclerc were dismissed based on the customer-suit exception.  The remaining allegations in paragraph 248 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.  To the extent any allegations in paragraph 248 are not expressly admitted, they are denied.

Paragraph 249.    Dallara was dismissed from this case for lack of personal jurisdiction on July 16, 2021. Plaintiff has moved for reconsideration of that order.

249.     Admitted.

Paragraph 250.    This is a case for direct and indirect patent infringement, literally or under the doctrine of equivalents, against each of the Defendants of claims 1, 2, and 4 of U.S. Patent No. 7,494,178, titled "Vehicle And a Strengthening Member For a Vehicle," pursuant to Title 35 United States Code, Section 271(a)-(c) & (f)(1), (f)(2).

250.    The Formula One Defendants deny that this is a case against them pursuant to Title 35, United States Code, Section 271(c).  The Formula One Defendants deny that this is a case for "direct" patent infringement against them.  The Formula One Defendants deny that doctrine of equivalents is properly asserted in this case.  The Formula One Defendants admit that the face of the '178 Patent includes a title of "Vehicle and a Strengthening Member For a Vehicle."  The remaining allegations in paragraph 251 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.  To the extent any allegations in paragraph 250 are not expressly admitted, they are denied.

Paragraph 251.    The patent issued on February 24, 2009. Mr. Nygaard has always been the owner of all right, title, and interest in and to the '178 patent. This is an exceptional case as to Defendants FIA, FOM, FOWC, Mercedes, Daimler, Ferrari, and Dallara because they had notice prior to suit of the patent and infringed without regard for Mr. Nygaard's rights. RBT had notice of the patent no later than October 2013, but designed the Aeroscreen with a Halo in 2019 and participated in testing of it and promotion of it in the U.S. in 2019, willfully inducing infringement by each IndyCar team and driver during the 2020 and 2021 racing season from the opening race on June 6, 2020, to the end of the season. Upon information and belief, RBT continues to support and promote the Aeroscreen in, among other things, IndyCar racing and is poised to do so in the 2022 season, making its post-suit conduct not only willful but also rendering it an exceptional case. RBR and drivers under contract to RBR participated in the 2021 U.S. Grand Prix, all of its drivers used cars with Halos and windscreens.

251.    The Formula One Defendants admit that the face of the '178 Patent includes an issue date of February 24, 2009.  The Formula One Defendants deny that "Mr. Nygaard has always been the owner of all right, title, and interest in and to the '178 patent.".  The Formula One Defendants deny that this is an exceptional case as to the Formula One Defendants, that they infringe, and that they had any pre-suit notice of infringement.  The Formula One Defendants deny that all future U.S. Formula One racing will result in infringement of the '178 Patent.  The

remaining allegations in paragraph 251 of the 4AC are related to entities other than the Formula

One Defendants. The Formula One Defendants lack knowledge or information sufficient to form

a belief as to the truth of the substance of those allegations and therefore deny them. To the extent

any allegations in paragraph 251 are not expressly admitted, they are denied.

Paragraph 252. This is also an action for a Declaratory Judgment pursuant to Title 35, Sections 2201 and 2202, of the United States Code.

252. The Formula One Defendants admit that Plaintiff seeks a Declaratory Judgment

pursuant to Title 35, Sections 2201 and 2202, of the United States Code.

Paragraph 253. Mr. Nygaard asks for a declaration that a Halo built in accordance with the FIA's 2022 regulations, and implemented on a Formula 1 car as shown by FOM's model and videos in July 2021, if raced in events as planned in the Miami and Austin areas in 2022, in configurations with windscreens, would directly infringe the '178 patent, and FOM's, FWOC's and FIA's conduct would be inducement to infringe. FOM, FOWC and FIA will also be liable for infringement of Section 271(f)(1) and (f)(2) when the cars and equipment are supplied to venues outside of the U.S. after those events.

253. The Formula One Defendants deny that Plaintiff seeks a declaration of direct

infringement against them. Otherwise, the Formula One Defendants admit that Plaintiff seeks a

declaration as described in paragraph 253, but deny that Plaintiff is entitled to such a declaration.

The Formula One Defendants deny any and all allegations that they infringe Mr. Nygaard's patent

or that they are liable for such infringement.

Paragraph 254. Mr. Nygaard also asks for a declaration that such infringement would be willful.

254. The Formula One Defendants admit that Plaintiff seeks a declaration as described

in paragraph 254, but deny that Plaintiff is entitled to such a declaration.

## XXV. JURISDICTION AND VENUE

Paragraph 255. This action arises under the patent laws of the United States, Title 35 of the United States Code ("U.S.C.") § 101 *et seq.*

255. Admitted.

Paragraph 256.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

256.    Admitted.

Paragraph 257.    This Court has personal jurisdiction over each Defendant under the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§ 17.041 *et seq.* because each of them has infringed the patent directly and/or indirectly in the State of Texas, and Fed. R. Civ. P. 4. Only Dallara and Charles Leclerc contested personal jurisdiction. Leclerc was dismissed under the customer exception and so this is a moot issue as to him. Dallara contested personal jurisdiction and was dismissed for lack of personal jurisdiction on July 16, 2021. Based on the facts herein and as shown in Plaintiff's Response, Sur-Reply, additional evidence, and Motion for Reconsideration, and the record, the Court has personal jurisdiction over Dallara.

257.    The Formula One Defendants admit that this Court has personal jurisdiction over them but deny that they have infringed the patent directly and/or indirectly in the State of Texas or anywhere.  The remaining allegations in paragraph 257 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.  To the extent any allegations in paragraph 257 are not expressly admitted, they are denied.

Paragraph 258.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(c), 1400(b), because Defendants are not citizens of the United States and may be sued in any judicial district or any judicial district where they are subject to personal jurisdiction. No Defendant challenged or sought to transfer venue.

258.    The Formula One Defendants admit that venue is proper against them in this judicial district and that they have not challenged or sought to transfer venue.  The remaining allegations in paragraph 258 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.  To the extent any allegations in paragraph 258 are not expressly admitted, they are denied.

## XXVI.   **JOINDER**

Paragraph 259.    None of the Defendants have objected to joinder.

259.   The Formula One Defendants admit that they have not objected to improper joinder, but reserve the right to do so.

Paragraph 260.   The Defendants were properly joined in this action under Section 299 of Title 35, because Mr. Nygaard's claims result from their overlapping development of products that make-up or include the Halo and also uses of the Halo at COTA in Austin, Texas. Mr. Nygaard's claims are based on common and/or overlapping facts showing Defendants directly or indirectly infringed claims 1, 2 and 4 in regard to preparations for, events at, and acts following, the 2018, 2019 and 2021 U.S. Grand Prix; the 2019 and 2021 U.S. ePrix; the 2020 NTT IndyCar Practice at COTA and Texas Motor Speedway, and races in 2020 in Texas and elsewhere; and other times and places in this Country as alleged herein.

260.   Denied.

Paragraph 261.   FOM, FOWC, RBT, RBR, Ferrari, Dallara, Mercedes and Daimler all contend they were all implementing FIA regulations in making and using the Halo.

261.   The Formula One Defendants deny that they made or used the Halo.  The remaining allegations in paragraph 261 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 262.   Mr. Nygaard's right to relief is asserted against each Defendant acting together with multiple other Defendants, who infringed or induced infringement, or in the alternative, with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, selling, offering for sale, or importing into the U.S. the patented invention, as well as causing to be supplied from the U.S. components, including those that have no substantial non-infringing use, and would infringe if assembled in the U.S., and inducing others to do so.

a)   There are questions of fact common to all Defendants including at least:

  i.   Whether vehicles that implement the Halo or the Aeroscreen based on the Halo infringe claims 1, 2 and 4 of the '178 patent, literally or under doctrine of equivalents?
  ii.   Whether the components exported from the U.S. by each F1 team from COTA abroad for other Grand Prix races constitute all or substantially all of the invention in claim 4 if they had been assembled in the U.S.?
  iii.   Whether components of the invention with no substantial non-infringing use which were exported from COTA abroad for other Grand Prix races would infringe claim 4 if assembled in the U.S.?

iv.   Whether the Halo prevented substantial injuries to, or death of, Charles Leclerc at the 2018 Belgian Grand Prix, and other drivers in Formula racing in 2018 and 2019?

v.   Whether the Aeroscreen saved drivers in the NTT Indy500 Circuit races in Iowa in 2020, and Alabama and Texas in 2021, from death or injury?

vi.   Whether and to what extent RBR, RBT, Dallara, IndyCar, FOM, FIA, Ferrari, Delta, Mercedes, Daimler and others shared information regarding the Halo, including, but not limited to, information about Mr. Nygaard and/or his patent?

vii.   Dallara's, Mercedes', FIA's, RBT's, RBR's, Ferrari's and Mr. Nygaard's roles in developing the original Halo prototype, other work on the Halo and the Aeroscreen, as well as the 2019-2020 RBT Aeroscreen kits for IndyCar, and other work on parts and equipment to adapt Dallara chassis for IndyCar and for Formula E, and Formula 3 to meet the strength requirements for both IndyCar and FIA.

viii.   Whether and when FOWC, FOM and teams learned of Mr. Nygaard's patent and also licensing offers to FIA in 2013 and/or 2018?

ix.   Whether FIA, FOM, FOWC, Mercedes, Daimler, Ferrari, RBT, RBR, and Dallara willfully infringed Mr. Nygaard's patent rights at Formula Grand Prix events at COTA, Formula E, Formula 3 and 4 events, and the NTT IndyCar Series Official Practice at COTA, and other places in the United States, knowing before those events about the '178 patent, their direct or indirect infringement, literally or by doctrine of equivalents, and that they were not licensed?

x.   Whether the greater protection provided by the Halo was necessary to permit for changes in the February 2021 Formula One rules for 2022?

xi.   Whether, and if so how, the revenues and other financial terms of the contracts among RBT, Dallara, their IndyCar customers and others, evidence Defendants' actions, intent, motivations, willfulness and damages owed to Mr. Nygaard?

xii.   Whether FIA's, FOM's, FOWC's, RBT's, RBR's, Mercedes', Daimler's, Ferrari's and Dallara's participation in, and/or monitoring of, the Project put them on notice of the '178 patent?

xiii.   Whether FIA's, FOM's, FOWC's, RBT/RBR's, Mercedes' and Ferrari's involvement in the F1 Strategy Group put them on notice of Mr. Nygaard's patent (including, but not limited to, the October 2013 memorandum by Mr. Mellor included in the working papers for the Inaugural F1 Strategy Committee meeting)?

xiv.   Whether and how facts about the design, modification and costs of infringing open cockpit vehicles built for use in Formula 1, Formula E, and other Formula racing activities in the U.S. by car owners and by drivers during races and related events evidence infringement, willfulness and damages in this case?

xv.   Whether Defendants' contacts with Dallara for designing and making components to install and upgrade chassis for the Halo for Formula Events or the Aeroscreen in IndyCar events, and afterward in one or more of the

2018 and 2019 U.S. Grand Prix races at COTA, the 2020 NTT IndyCar Series Official Practices at COTA and Texas Motor Speedway, the 2020 opening NTT Indy500 Race in Texas and later races, or 2019 Formula E ePrix on New York roads, or making or using the invention by Haas Racing in the U.S., or Formula E teams in the U.S. (including Mercedes' Formula E team), or Formula 3 and 4 teams, constitute direct or indirect infringement of the '178 patent, literally or by doctrine of equivalents?

    xvi.   Whether and when RBR and RBT obtained knowledge of the Ferrari patent applications regarding a design like the Halo deployed in a Ferrari sports car, which was published in 2019?

    xvii.   Whether the media and social media strategy to grow Formula 1 Grand Prix Racing in the U.S. was enabled or otherwise benefited from the inventions?

262.    The Formula One Defendants deny the allegations in paragraph 262, including sub-paragraphs (a)(i)-(xvii), of the 4AC.

## COUNT I

## Infringement of the '178 patent by FIA

Paragraph 263.    Mr. Nygaard incorporates by reference each and every allegation in the preceding paragraphs.

263.    The Formula One Defendants incorporate by reference their responses to paragraphs the preceding paragraphs as if fully set forth herein.

Paragraph 264.    Mr. Nygaard incorporates Exhibits A and B herein.

264.    Admitted.

Paragraph 265.    FIA has induced infringement of the '178 patent claims 1, 2, and 4 literally or alternatively by equivalents in regard to vehicles implementing the Halo, and infringed claim 4 literally or by equivalents under Section 271(f). All allegations of infringement against FIA include literal infringement or alternatively, infringement under the doctrine of equivalents, under the Court's March 22, 2021 claim construction.

265.    The allegations in paragraph 265 of the TAC are related to entities other than the Formula One Defendants. The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 266.    The elements of claim 1 of the '178 patent below, with limitations bold and underlined, are met literally or by doctrine of equivalents **by the Halo**, as shown below by the matters

described in the bracketed material, see Exhibits A (the '178 patent) and B (charts illustrating the application of the claims):

> **A strengthening member** [the Halo] **for use in a road vehicle** [open cockpit race car], **for fixing to a structure of the vehicle, and for extending in front of the driver's position** [the vertical member (central pillar) of the Halo is fixed to the car at a point in front of the cockpit within the claim construction literally or by equivalents], **the strengthening member being dimensioned so that, when in use, the strengthening member will not prevent the driver from seeing an object which is at least 2 m from the front windscreen,** [Formula One drivers and teams used windscreens. If the small windscreens are not windshields as in the claim construction order, then for the purposes of the asserted claims they satisfy the limitation of a windshield as they deflect wind and provide a dimensional point of reference. If a car lacked any physical windscreen of any kind, then the visor on the front of the drivers' helmets are the equivalent of a windshield. Alternatively, the air flow configuration (e.g., nose and FIA rules on dimensions of cockpit) for Formula One cars is the equivalent of a windscreen. These alternative equivalents all function in the same way in terms of fixing orientation of the strengthening member so that the driver can see objects, e.g., other cars, at this distance when the Halo is implemented on the vehicle. They also function in the same way as they are all placing the center pillar ahead of the driver in his field of vision with only minimal, if any, obstruction, so that binocular vision will edit out the obstruction] **when the driver uses binocular vision** [the driver uses binocular vision, e.g., drivers report that the vertical member of the Halo that extends in the front of the cockpit does not interfere with their vision when driving] and **without requiring the driver to move the driver's head** [the driver does not need to move his or her head to see objects when driving, e.g., other cars in front while driving or its equivalent], wherein the strengthening member has the form of a triangular prism which has been sheared in a vertical plane or **the form of a truncated sheared triangular pyramid** [the Halo has the form of a truncated sheared triangular pyramid as formed by its angled vertical member in conjunction with the other angled portion or its equivalent].

266.    Denied.  The Formula One Defendants also deny that the Halo meets the limitations

of Claim 1, as Plaintiff attempts to show in the claim charts in Exhibit B.

Paragraph 267.    Claim 2 of the '178 patent is infringed literally or by doctrine of equivalents by **the Halo**, see Exhibits A and B:

> A **strengthening member** [the Halo] for mounting in a vehicle [open cockpit race car], **formed of at least three first linearly extending structural units placed in a triangular arrangement, for extending from the front structure of the vehicle** [an end of each of the three first linearly extending structural units extends from the front structure of the vehicle] and **second linearly extending structural unit joining the at least three first linearly extending units** [portion of the Halo extending around the cockpit], the second linearly extending structural unit being not horizontal [slanted], and **wherein the first linearly extending structural units of the strengthening member have a width not exceeding 65 mm** [central pillar width of the Halo equals to or is less than 65mm], **the strengthening member having a connection for fixing the strengthening member to**

**the vehicle** [the Halo is fixed to the vehicle by at least one connection], whereby, **when mounted in the vehicle, the strengthening member extends obliquely to the vertical direction of the vehicle** [all angles on the Halo are oblique to (slanted with respect to) the vertical direction of the vehicle].

267.   Denied.  The Formula One Defendants also deny that the Halo meets the limitations

of Claim 2, as Plaintiff attempts to show in the claim charts in Exhibit B.

Paragraph 268.   Claim 4 of the '178 patent is infringed literally or by doctrine of equivalents **by vehicles incorporating the Halo**, see Exhibits A and B:

**A road vehicle** [open cockpit race car] **comprising at least one strengthening member** [the Halo] **fixed to a structure of the vehicle** [the vertical member of the Halo is fixed to the front of the automobile chassis] and **extending in front of the driver's position** [the vertical member (central pillar) of the Halo is fixed to the car at a point in front of the cockpit within the claim construction literally or by equivalents], **wherein the strengthening member is dimensioned so that the strengthening member will not prevent the driver from seeing an object which is at least two meters from the front windscreen** [Formula One drivers and teams used windscreens. If the small windscreens are not windshields as in the claim construction order, then for the purposes of the asserted claims they satisfy the limitation of a windshield as they deflect wind and provide a dimensional point of reference. If a car lacked any physical windscreen of any kind, then the visor on the front of the drivers' helmets are the equivalent of a windshield. Alternatively, the air flow configuration (e.g., nose and FIA rules on dimensions of cockpit) for Formula One cars is the equivalent of a windscreen. These alternative equivalents all function in the same way in terms of fixing orientation of the strengthening member so that the driver can see objects, e.g., other cars, at this distance when the Halo is implemented on the vehicle. They also function in the same way as they are all placing the center pillar ahead of the driver in his field of vision with only minimal, if any, obstruction, so that binocular vision will edit out the obstruction], **when the driver uses binocular vision** [the driver uses binocular vision, e.g., drivers report that the vertical member of the Halo that extends in the front of the cockpit does not interfere with their vision when driving] and **without requiring the driver to move the driver's head** [the driver does not need to move his or her head to see objects when driving, e.g., other cars in front while driving or its equivalent], wherein the strengthening member has the form of a triangular prism which has been sheared in a vertical plane **or a truncated sheared triangular pyramid** [the Halo has the form of a truncated sheared triangular pyramid as formed by its angled vertical member in conjunction with the other angled portion or its equivalent].

268.   Denied.  The Formula One Defendants also deny that the Halo meets the limitations

of Claim 4, as Plaintiff attempts to show in the claim charts in Exhibit B.

Paragraph 269.   Defendant FIA knew of the '178 patent as early as 2005 from correspondence to Mr. Max Mosley from Plaintiff regarding his applications. FIA knew no later than 2013 of the '178 patent, through Mr. Nygaard's direct involvement in the design of the Halo and his

request that FIA license the '178 patent. It also knew that the design of the Halo was based on Mr. Nygaard's '178 patent or would nonetheless infringe it from their meetings and subsequent communications with him.

269.    The allegations in paragraph 269 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 270.    Defendant FIA induced infringement of claims 1, 2, and 4 of the '178 patent in violation of Section 271(b) by participating in the F1 Strategy Group's adoption of the Halo requirement for all F1 vehicles used in Grand Prix races, and later implementing rules requiring the Halo, which resulted in direct infringement by each of the ten teams making and using the inventions in claims 1, 2 and 4, and twenty drivers using the invention in claim 4 by participating in the U.S. Grand Prix events at COTA from October 19-21, 2018, November 1-3, 2019, and October 21024, 2021, because the vehicles incorporated the Halo.

270.    The allegations in paragraph 270 of the 4AC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 271.    Defendant FIA also induced direct infringement of claims 1, 2, and 4 of the '178 patent in 2018, 2019 and 2021 by causing all ten teams to have imported their F1 vehicles with the Halo into the U.S. for the 2018, 2019 and 2021 U.S. Grand Prix.

271.    The allegations in paragraph 271 of the 4AC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 272.    Defendant FIA also infringed claim 4 of the '178 patent in 2018, 2019 and 2021 by causing all ten teams to have supplied the chassis of their F1 vehicles with the Halo and other components for assembly outside of the U.S. in a manner that actively induced the combination of such substantial portion of components outside the United States and in a manner that would infringe if combined in the U.S. in violation of Section 271(f)(1). Further, or in the alternative, causing to be supplied abroad the vehicles' chassis with the Halo as custom components that were especially made and especially adapted for use in the patented '178 inventions and not a staple article or commodity of commerce suitable for substantial non-infringing use, where such components were uncombined in whole or in part. Upon information and belief, FIA knew that the customized components were especially made and especially adapted for use in the patented '178 inventions, and intended that such components would be combined outside of the United States in a manner that would infringe the '178 patent if such combination occurred within the United States in violation of Section 271(f)(2):

a) After the 2018 and 2021 U.S. Grand Prix to Mexico for the Mexican Grand Prix.
b) After the 2019 U.S. Grand Prix to Brazil for the Brazilian Grand Prix

272.   The allegations in paragraph 272 of the 4AC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 273.   Defendant FIA induced the Haas racing team to directly infringe, directly
or by equivalents, claims 1, 2, and 4 of the '178 patent by making and using vehicles with the Halo
in and around Haas' facilities in the U.S. after the 2018 U.S. Grand Prix.

273.   The allegations in paragraph 273 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 274.   Defendant FIA also caused Haas F1 team's cars to be supplied from the
U.S. a substantial portion of the components of the patented inventions, including vehicle chassis with
the Halo in claim 4, abroad for assembly into vehicles with the Halo in a manner that actively induced
the combination of such components outside the United States and in a manner that would infringe,
literally or by equivalents, if combined in the U.S., for use in Grand Prix events outside of the U.S. in
2018, 2019, and 2021 in violation of Section 271(f)(1). Alternatively, or in addition, FIA caused to
be supplied from the U.S. custom components [vehicle chassis with the Halo] that were especially
made and especially adapted for use in the patented '178 inventions and not a staple article or
commodity of commerce suitable for substantial non-infringing use, where such components were
uncombined in whole or in part. Upon information and belief, FIA knew that the customized
components were especially made and especially adapted for use in the patented '178 inventions, and
intended that such components would be combined outside of the United States in a manner that
would infringe the '178 patent if such combination occurred within the United States, for the 2018,
2019 and 2021 Grand Prix events in violation of 271(f)(2).

274.   The allegations in paragraph 274 of the 4AC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 275.   Defendant FIA further induced direct infringement, literally or by
equivalents, of claims 1, 2, and 4 by teams and drivers having used cars in the 2019 and 2021 U.S.
ePrix events in New York City events that implemented the Halo literally and by equivalents. *See*
Exhibits A & B.

275.   The allegations in paragraph 275 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 276.   Defendant FIA also induced direct infringement, literally or by equivalents, of claims 1, 2, and 4 by all Formula E teams by requiring them to import their vehicles implementing the Halo following the 2019 Swiss ePrix and 2021 ABB New York City E-PRX race.

276.   The allegations in paragraph 276 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 277.   Defendant FIA also induced infringement of the U.S.-based Formula E teams BMW Andretti Motor Sport and Geox Dragon to directly infringe, literally or by equivalents, claims 1, 2 and 4 by making and using cars implementing the Halo in the U.S. for the 2019 U.S. ePrix, 2019-2020, and 2020-2021 Formula E seasons.

277.   The allegations in paragraph 277 of the TAC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 278.   Defendant FIA also infringed claim 4 of the '178 patent, literally or by equivalents, when it caused to be supplied from the U.S. a substantial portion of the components of the invention in violation of Section 271(f)(1), that is the chassis with the Halo attached and other components, for assembly abroad in a manner that actively induced the combination of such components outside the United States and in a manner that would infringe if combined in the U.S. for the Formula E 2018-2019 and 2020-2021 seasons. In addition, or alternatively, FIA caused to be supplied from the U.S. the chassis of vehicles with the Halo as custom components that were especially made and especially adapted for use in the patented '178 inventions and not a staple article or commodity of commerce suitable for substantial non- infringing use, where such components were uncombined in whole or in part. Upon information and belief, FIA knew that the customized components were especially made and especially adapted for use in the patented '178 inventions, and intended that such components would be combined outside of the United States in a manner that would infringe, literally or by equivalents, the '178 patent if such combination occurred within the United States in violation of Section 271(f)(2):

a) By BMW Andretti Formula E team from the U.S. in 2018 and 2019 to Saudi Arabia for the 2018-2019 and 2019-2020 ePrix seasons.
b) By Geox Dragon Formula E team from the U.S. in 2018 and 2019 to Saudi Arabia for the 2018-2019, 2019-2020 and 2020-2021 ePrix seasons.

c)  By BMW Andretti Formula E team from the U.S. in 2020 for the Berlin ePrix. And from the U.S. in 2021 to Saudi Arabia.

d)  By Geox Dragon Formula E team from the U.S. in 2020 for the Berlin ePrix. And from the U.S. in 2021 to Saudi Arabia.

e)  By teams Envision Virgin, Nissan, Audi Sport, DS Techeetah, Mahindra Racing, NIO Formula E, Venturi Formula E, Panasonic Jaguar, and HWA Racelab Formula E team from the U.S. in 2019 and 2021 following the U.S. ePrix to their respective facilities in other countries.

278.    The allegations in paragraph 278 of the 4AC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 279.    Defendant FIA also induced all teams and drivers competing in the 2018 F3 Americas World Championship at COTA, and other races in and after 2018 in the U.S. to directly infringe, literally or by equivalents, claims 1, 2, and 4, by using cars that implemented the Halo in those events.

279.    The allegations in paragraph 279 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 280.    Defendant FIA is liable for infringement of the '178 patent, directly or indirectly, literally or by doctrine of equivalents, and its infringement has been and continues to be willful in nature.

280.    The allegations in paragraph 280 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 281.    Mr. Nygaard is entitled to actual and enhanced damages for this willful infringement pursuant to § 284, and attorneys' fees and costs under 35 U.S.C. § 285 as a result of the infringement of the '178 patent from Defendant FIA because this is an exceptional case.

281.    The allegations in paragraph 281 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

Paragraph 282.    Therefore, Mr. Nygaard is entitled to actual and/or compensatory damages, reasonable royalties, pre-judgment and post-judgment interest, enhanced damages, attorneys' fees, and costs and any other relief to which he is entitled to receive from Defendant FIA.

282.    The allegations in paragraph 282 of the TAC are related to entities other than the

Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient

to form a belief as to the truth of the substance of those allegations and therefore deny them.

## COUNT TWO

### Infringement of the '178 Patent by FOM and FOWC

Paragraph 283.    Mr. Nygaard incorporates by reference each and every allegation in the preceding paragraphs.

283.    The Formula One Defendants incorporate by reference their responses to

paragraphs the preceding paragraphs as if fully set forth herein.

Paragraph 284.    FOM and FOWC have infringed the '178 patent claims 1, 2, and 4 literally or alternatively by equivalents. All allegations of infringement against FOM and FOWC include literal infringement or alternatively, infringement under the doctrine of equivalents.

284.    Denied.

Paragraph 285.    The patent is attached as Exhibit A and the amended illustrative charts attached as Exhibit B, and they are incorporated by reference herein. In particular, Mr. Nygaard reurges the infringement details from paragraphs 264–283 in Count One.

285.    The Formula One Defendants admit that Exhibit A is a copy of the '178 Patent and

that Exhibit B contains Plaintiffs' claim charts.  The Formula One Defendants reurge their

responses to paragraphs 264-283.

Paragraph 286.    Defendants FOM and FOWC knew of the '178 patent as early as 2006 through communications between Mr. Nygaard and their predecessors Formula One and Delta through Mr. Eccelstone. Upon information and belief, they also knew about Mr. Nygaard's and the FIA Institute's licensing discussions in 2013; also through their predecessor entities' participation in the F1 Strategy Group they would have known about the patent by October 2013; and finally were informed by FIA of Mr. Nygaard's claims of infringement by FIA in late 2018 and early 2019.

286.    The Formula One Defendants admit that Mr. Jean-Baptiste Pinton of the FIA sent

a letter to Mr. Nygaard on March 12, 2019.  The Formula One Defendants admit that Mr. Pinton's

letter to Mr. Nygaard explained that the Halo device does not infringe the '178 Patent.   The

Formula One Defendants admit that Messrs. Chase Carey and Greg Maffei were copied on Mr.

Pinton's March 12, 2019 e-mail to Mr. Nygaard.  The Formula One Defendants deny all remaining

allegations of paragraph 286 and deny any allegation not expressly admitted.

Paragraph 287.    Defendant FOM and FOWC induced direct infringement in violation of
Section 271(b) by each requiring that each of the ten teams and twenty drivers participating in the
U.S. Grand Prix events at COTA from October 19-21, 2018, November 1-3, 2019, and October 21-
24, 2021, to use vehicles implementing the Halo in all races, practices and qualifying rounds each
year, which caused them to directly infringe claims 1, 2, and 4 of the '178 patent.

287.    Denied.

Paragraph 288.    Defendants FOM and/or FWOC assist with, subsidize, and/or support
transportation and logistics of movement of teams, personnel and equipment between and among
Grand Prix Circuit races, including the U.S. Grand Prix Races.

288.    The Formula One Defendants admit that FOM facilitates the shipment of formula

racing cars owned by Formula One teams between FIA Formula One World Championship races.

Paragraph 288 of the TAC otherwise contains vague allegations related to actions of the Formula

One Defendants, and the Formula One Defendants therefore deny them.

Paragraph 289.    Defendants FOM and FOWC also induced direct infringement of claims 1,
2, and 4 of the '178 patent in 2018, 2019 and 2021 by requiring all ten teams to import the chassis of
their F1 vehicles with the Halo for the U.S. Grand Prix, which infringed claims 1 and 2 of the '178
patent, and assisting them with the transportation of their vehicles and equipment. They also induced
the teams to make and use their cars infringing claim 4. They likewise induced the drivers of the cars
in the U.S. Grand Prix races in 2018, 2019 and 2021 to use, and thereby infringe claims 1, 2 and 4 of
the patent.

289.    Denied.

Paragraph 290.    Defendants FOM and FOWC caused all ten F1 Grand Prix teams' vehicle
chassis implementing the Halo and other substantial components of the invention to be supplied from
the U.S. in each of 2018, 2019 and 2021 following the U.S. Grand Prix at COTA, for assembly abroad
for use in subsequent races, infringing claim 4 in violation of Sections 271(f)(1). Alternatively, or in
addition, the chassis with the Halo are custom components that were especially made and especially
adapted for use in the patented '178 inventions and not a staple article or commodity of commerce
suitable for substantial non-infringing use, where such components were uncombined in whole or in
part. Upon information and belief, FOM and FOWC knew that the customized components were
especially made and especially adapted for use in the patented '178 inventions, and intended that such

components would be combined outside of the United States in a manner that would infringe claim 4 of the '178 patent if such combination occurred within the United States, and FOM and FOWC caused those components to be supplied from the U.S. for assembly abroad in a manner that would infringe if done in the U.S.:

    a)  In 2018 and 2021 from COTA to Mexico for the Mexican Grand Prix.

    b)  In 2019 from COTA to Brazil for the Brazilian Grand Prix.

       290.   Denied.

    Paragraph 291.   Defendants FOM and FOWC induced the Haas racing team to infringe claims 1, 2, and 4 of the '178 patent by making and using vehicles with the Halo in and around Haas' facilities in the U.S. and at the 2018, 2019 and 2021 U.S. Grand Prix Race.

       291.   Denied.

    Paragraph 292.   Defendants FOM and FOWC also infringed by causing Haas to supply from the U.S. substantial components of the inventions in claim 4 abroad for assembly into vehicles with the Halo in a manner that would infringe if in the U.S., for use in foreign Grand Prix events. Alternatively, or in addition, caused to be supplied from the U.S. custom components with no substantial non-infringing use but for the inventions, for assembly abroad, in a manner that would infringe claim 4 if, in the United States, for Grand Prix events. FOM and FOWC assisted in transportation of these materials for these purposes.

       292.   Denied.

    Paragraph 293.   Alternatively, in the event all components were not assembled into an infringing configuration at the time of import for the 2018, 2019 and 2021 U.S. Grand Prix, then FOM and FOWC induced the teams to directly infringe claim 4 by assembling them into F1 cars that were to compete in the U.S. Grand Prix events in 2018, 2019, and 2021 and assisted in that transportation.

       293.   Denied.

    Paragraph 294.   Defendants FOM and FOWC caused to be supplied from the U.S. substantial components that if assembled in the U.S. would infringe claim 4 of the '178 patent; or in addition or alternatively, custom components with no substantial non-infringing use other than assembly in a manner that would infringe if done in the U.S., by assisting in transportation of the vehicles and/or chassis with the Halo for all ten teams as follows:

    a)      In October 2018 and October 2021 from the United States following the U.S. Grand Prix at
COTA to Mexico.

    b)      In November 2019 from the United States following the U.S. Grand Prix at
COTA to Brazil.

       294.   Denied.

Paragraph 295.    Defendants FOM and FOWC are liable for infringement of the '178 patent, directly or indirectly, literally or by doctrine of equivalents, and its infringement has been and continues to be willful in nature.

295.    Denied.

Paragraph 296.    Mr. Nygaard is entitled to actual and enhanced damages for this willful infringement pursuant to § 284, and attorneys' fees and costs under 35 U.S.C. § 285 as a result of the infringement of the '178 patent from Defendants FOM and FOWC because this is an exceptional case.

296.    Denied.

Paragraph 297.    Therefore, Mr. Nygaard is entitled to actual and/or compensatory damages, reasonable royalties, pre-judgment and post-judgment interest, enhanced damages, attorneys' fees, and costs and any other relief to which he is entitled to receive from Defendants infringement of the '178 Patent by FOM and FOWC.

297.    Denied.

## COUNT THREE through COUNT NINE

Excepting the following paragraphs to which the Formula One Defendants have a specific response, the Formula One Defendants respond as follows to paragraphs 298 through 404:

The Court has dismissed Counts Three, Four, Six, Seven, Eight, and Nine.  No response to those counts is required.

The allegations in Count Five (paragraphs 322-352) of the 4AC are related to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of the allegations in these paragraphs and therefore deny them.

**Paragraphs within paragraphs 322 through 352 of the 4AC to which the Formula One Defendants provide a specific response:**

Paragraph 322.    Mr. Nygaard incorporates by reference each and every allegation in the preceding paragraphs.

322.    The Formula One Defendants incorporate by reference their responses to Mr. Nygaard's allegations in the preceding paragraphs.

Paragraph 324.    Mr. Nygaard incorporates by reference paragraphs 264-283 of Count One, which explain how the claims apply to the accused F1 cars and the Halo, the patent attached as Exhibit A and the amended illustrative claim charts attached as Exhibit B.

324.    The Formula One Defendants incorporate by reference their responses to paragraphs 264-283.  The Formula One Defendants deny that the accused formula racing cars and Halo infringe any claims of the '178 Patent.  The Formula One Defendants admit that the TAC attaches a copy of the '178 Patent as Exhibit A and claim charts as Exhibit B.

Paragraph 325.    The inaugural meeting of the F1 Strategy Group was in October 2013.  Prior to the meeting, RBR and all other members of the F1 Strategy Group received a memorandum from Mr. Andy Mellor of the FIA Institute on the development of additional frontal protection for drivers.  Mr. Mellor's memorandum discussed the "Nygaard Patent" at length, and described how it applied to devices being considered for additional head protection exploiting binocular vision.  This memorandum followed a series of meetings in November and December 2012, and also March and April 2013, between Mr. Mellor, others at the FIA Institute, FIA, McLaren, Dallara, and Mr. Nygaard regarding Mr. Nygaard's patented technology.  In addition, prior to the October 2013 meeting, there was correspondence in May and June 2013, between Mr. Nygaard and FIA Institute's chief administrative officer, Quentin Crombie, about licensing the '178 patent.  The October 2013 memorandum from Mr. Mellor did not provide the title or number of the U.S. Patent or its claims or limitations but did discuss at length the applicability of the "Nygaard Patent" to devices being tested and considered by FIA for additional frontal protection exploiting BVT technology for driver safety.  It would have been a very simple matter to locate the patent online or to simply ask FIA or FIA Institute or Mr. Mellor for the patent or its number.  Mr. Christian Horner was then and is now a director of both RBT and RBR, and was then and is now the CEO of RBT as well as the principal (CEO) of RBR.  Mr. Horner represented RBR at the F1 Strategy Group meeting in October 2013 (and, in fact, gave a presentation at the meeting).  Mr. Horner and the other members of the F1 Strategy Group voted on the development of additional frontal protection for drivers at that inaugural meeting.[89]  RBR and RBT have produced a copy of Mr. Mellor's October 2013 memorandum.  The discussion of the patent in Mr. Mellor's memorandum was either notice for the purpose of 271(b) and 271(f) infringement, or, alternatively, the failure to review the patent was willful blindness.  Accordingly, RBT and RBR had notice of the '178 patent no later than October 2013.

---

[8] Footnote 17 in 4AC:  This memorandum also followed PowerPoint documents distributed to others interested in additional frontal protection and binocular vision by Mr. Mellor in at least May and September 2013.  These PowerPoint documents were produced by Red Bull in this lawsuit, and included "AlphaPillars" graphics from Mr. Nygaard.

[9] The allegations in Footnote 17 of the 4AC are vague and therefore denied.

325.    The Formula One Defendants admit that the inaugural F1 Strategy Group meeting was in October 2013.  The Formula One Defendants admit that working papers for that meeting, which included a memorandum by FIA Institute consultant Andy Mellor, were made available to attendees of that F1 Strategy Group meeting.  The Formula One Defendants admit that Mr. Mellor's memorandum included a discussion of the additional frontal protection project, but deny that the memorandum "discussed the 'Nygaard Patent' at length" or "described how it applied to devices being considered for additional head protection exploiting binocular vision."  The Formula One Defendants admit that Mr. Mellor's memorandum did not provide the title or number of Mr. Nygaard's patent or include any of its claims or limitations.  The Formula One Defendants deny that Mr. Mellor's memorandum "discuss[ed] at length the applicability of the 'Nygaard Patent' to devices being tested and considered by FIA for additional frontal protection exploiting BVT technology for driver safety."  The Formula One Defendants admit that the October 2013 F1 Strategy Group meeting minutes list Christian Horner as an attendee and as representing Red Bull Racing.  The Formula One Defendants admit that the F1 Strategy Group abandoned the additional frontal protection project at the October 2013 F1 Strategy Group meeting.  Although the allegations related to knowledge and willful blindness are directed at Red Bull, the Formula One Defendants deny any allegations or implications that Mr. Mellor's memorandum gave the Formula One Defendants "notice" for any purposes or that the Formula One Defendants were somehow willfully blind.  The remainder of the allegations relate to parties other than the Formula One Defendants, and the Formula One Defendants lack sufficient information to ascertain the truth of those allegations and therefore deny them.  To the extent any allegation is not expressly admitted, it is denied.

Paragraph 327.    RBR was part of the F1 Strategy Group that discussed the Halo in 2016 and 2017 and voted in unanimity with other member [sic] of the F1 Strategy Group to adopt the Halo

starting with the 2018 Grand Prix season.  RBR also participated in drafting specifications for the installation of the Halo, later promulgated as rules by the FIA.  In addition, RBT worked on development of the Aeroscreen as part of the Project and proposed it as a solution to the F1 Strategy Group and FIA.

327.    FOWC admits that RBR has been a member of the F1 Strategy Group, including in 2016 and 2017.  FOWC admits that the F1 Strategy Group discussed the Halo in 2016 and 2017. The Formula One Defendants admit that, in July 2017, the FIA reported to attendees of an F1 Strategy Group meeting that the FIA had opted to implement the Halo for the 2018 season.  The Formula One Defendants admit that the FIA adopted rules for implementation of the Halo in Formula One Grand Prix racing.  FOWC admits that the F1 Strategy Group discussed a version of the Aeroscreen as an option for frontal protection.  To the extent any allegation is not expressly admitted, the allegation is denied.

Paragraph 331.    Further, FOM received in fall of 2018 a royalty demand from Mr. Nygaard on the '178 patent. FIA received licensing demands from Mr. Nygaard in 2019.

331.    The Formula One Defendants admit that Mr. Nygaard sent a licensing demand to Chase Carey and Greg Maffei on October 17, 2018.  The licensing demand did not list Mr. Nygaard's '178 Patent.  The remaining allegations in paragraph 328 relate to entities other than the Formula One Defendants.  The Formula One Defendants therefore lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations, and therefore deny the allegations.  To the extent any allegation is not expressly admitted, the allegation is denied.

Paragraph 340.    The Aeroscreen infringes claims 1 and 2 of the '178 patent literally or by doctrine of equivalents as set forth below. Vehicles implementing the Aeroscreen infringe claims 1, 2, and 4 of the '178 patent. The patent is attached as Exhibit A and claim charts illustrating infringement are attached as Exhibit B and incorporated herein by reference. Claim 1:

A **strengthening member** [the Halo portion of the Aeroscreen] for use in a road vehicle [IndyCars], **for fixing to a structure of the vehicle, and for extending in front of the driver's position** [the vertical member (central pillar) of the Halo portion of the Aeroscreen is fixed to the car at a point in front of the cockpit within the claim construction

literally or by equivalents], **the strengthening member being dimensioned so that, when in use, the strengthening member will not prevent the driver from seeing an object which is at least 2 m from the front windscreen,** [the Aeroscreen has a front windscreen][the driver can see objects, e.g., other cars, at this distance when the Aeroscreen is implemented on the vehicle] **when the driver uses binocular vision** [the driver uses binocular vision, e.g., drivers reported no vision issues with the Aeroscreen], and **without requiring the driver to move the driver's head** [the driver does not need to move his or her head to see objects when driving, e.g., other cars in front while driving], wherein the strengthening member has the form of a triangular prism which has been sheared in a vertical plane or **the form of a truncated sheared triangular pyramid.** [the Aeroscreen has the form of a truncated sheared triangular pyramid as formed by its angled vertical member in conjunction with the other angled portion or its equivalent].

340.    The Formula One Defendants admit that the TAC attaches a purported copy of the '178 Patent as Exhibit A and claim charts as Exhibit B.  The remaining allegations in paragraph 340 relate to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations, and therefore deny the allegations.  To the extent any allegation relates to the Formula One Defendants, they are denied.

Paragraph 343.    In 2019, Defendants RBT and Dallara and others developed an Aeroscreen that combined a Halo made by Pankl, "tear-off" "jet cockpit type" windscreens by PPG, which was tested by them in the United States.  The Aeroscreen was assembled with structural components from Dallara that connected the Aeroscreen to the Dallara chassis used in all IndyCars, and components from others.  This Aeroscreen was especially designed for and its parts made for combination with the Dallara chassis used in IndyCar, the DW12.

343.    The Formula One Defendants admit that the Aeroscreen includes a windscreen. The remaining allegations in paragraph 343 relate to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations, and therefore deny the allegations.

**COUNT TEN**

**Declaratory Judgment Against FIA, FOM, FOWC, RBR and RBT**

Paragraph 405.    All preceding paragraphs are incorporated by reference here, including Exhibits A, B and C.

405.     The Formula One Defendants incorporate all previous responses here.

Paragraph 406.     In or around July 15, 2021, FOM, FOWC and FIA unveiled a model of a Formula 1 Grand Prix car built according to new rules for 2022.

406.     The Formula One Defendants admit that Formula One and the FIA introduced a non-working model of a Formula 1 Grand Prix racing car based on the FIA's 2022 regulations around July 15, 2021.  To the extent any allegations in paragraph 406 are not expressly admitted, they are denied.

Paragraph 407.     This car has significant design changes to reduce airflow off Formula 1 racing cars to permit for closer racing, more overtaking, and more aggressive driving in races.

407.     The Formula One Defendants admit that formula racing car for the 2022 FIA Formula One World Championship has design changes intended to permit closer racing and more overtakes.  To the extent any remaining allegations in paragraph 407 of the TAC are not expressly admitted, they are denied.

Paragraph 408.     The racing changes resulting from the new regulations would be more dangerous to drivers, had not the Halo largely, and to date entirely, eliminated injuries to drivers' heads and necks.

408.     The Formula One Defendants admit that the Halo is intended to improve driver safety and that the Halo is one of many safety mechanisms on formula racing cars used in the FIA Formula One World Championship.  To the extent any remaining allegations in paragraph 408 of the TAC are not expressly admitted, they are denied.

Paragraph 409.     The 2022 calendar has races in the U.S. both at COTA and a new course in the Miami area. These races will employ the new 2022 regulations.

409.     The Formula One Defendants admit that the 2022 FIA Formula One World Championship season has a race scheduled to occur at COTA in Austin, Texas, and a race in Miami, Florida.  The Formula One Defendants admit that the FIA's 2022 regulations are intended to apply to these races.

Paragraph 410.   There have been no material changes regarding the placement or construction of the Halo for new 2022 regulations.

410.   Admitted.

Paragraph 411.   For the reasons given in Count One, paragraphs 264 to 283, the new Formula 1 cars if built as advertised will infringe claims 1, 2, and 4 of the '178 patent, literally or by equivalents.

411.   Denied.

Paragraph 412.   For the reasons stated in Count One against FIA and Count Two against FOM and FOWC, regarding the Halo in 2022, these defendants will induce and contribute to direct infringement of all teams and drivers, literally or by equivalents, in Formula One Grand Prix Racing upon entry into the U.S., in making and using the cars for racing. An illustrative claim chart based on the model presented by FOM, FOWC and FIA is attached as Exhibit C, and incorporated by reference.

412.   The Formula One Defendants deny the allegations in paragraph 412 entirely, except that they admit Exhibit C purports to be an illustrative claim chart of a model car presented by Formula One and the FIA.  The Formula One Defendants deny the allegations in the claim chart contained in Exhibit C.

Paragraph 413.   RBT and RBR, for the reasons in Count Five paragraphs 322 to 351, will directly infringe the '178 patent by importing, making and using the inventions, and then supplying their components afterward for reassembly abroad to the next race outside of the U.S. in violation of Section 271(f).

413.   The allegations in paragraph 413 relate to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations, and therefore deny the allegations.  To the extent any allegation relates to the Formula One Defendants, they are denied.

Paragraph 414.   Tickets for the Miami race are sold out.

414.   The Formula One Defendants note that "the Miami race" is vague and thus deny the allegations in paragraph 414.

Paragraph 415.   There are actual controversies among Plaintiff and these Defendants because they have publicized these events, put them on the calendar and also sold tickets and/or hospitality services, so their plans are firm and they are committed to these racing events.

415.    The Formula One Defendants note that "these events" is vague and thus deny the allegations in paragraph 415.

Paragraph 416.    Accordingly, Nygaard seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that if Defendants go forward as planned in Miami or COTA, that they will be infringing claims 1, 2 and 4 of the '178 patent, literally or by equivalents, under at least Sections 271(b), (c)

416.    The Formula One Defendants admit that Plaintiff seeks a declaratory judgment as stated in paragraph 416, but deny that Plaintiff is entitled to such a judgment.

Paragraph 417.    Nygaard asks for a declaration of his rights, these Defendants' infringement, and their responsibility for the acts of all teams and drivers in the races.

417.    The Formula One Defendants admit that Plaintiff seeks the declaration as stated in paragraph 417, but deny that Plaintiff is entitled to such a declaration.

Paragraph 418.    Nygaard asks for further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment, including but not limited to, attorneys' fees and costs.

418.    The Formula One Defendants admit that Plaintiff seeks relief as stated in paragraph 418, but deny that Plaintiff is entitled to such relief.

## IX.    PRAYER FOR RELIEF

Paragraph 419.    In consideration of the foregoing, Nygaard respectfully requests that this Court enter an Order granting the following relief:

a) Enter judgment in favor of Plaintiff Jens H. S. Nygaard, that Defendants Fédération Internationale de l'Automobile, Formula One Management Ltd., Formula One World Championship Ltd., Mercedes-Benz Grand Prix Ltd., Daimler AG, Ferrari S.p.A., Red Bull Technology Ltd., Red Bull Racing, Ltd. and Dallara Automobili S.p.A., have each infringed and each continue to infringe U.S. Patent No. 7,494,178, and finding that such infringement is willful as plead above, making this case exceptional as to each of them;

b) Judgment that Lewis Hamilton and Charles Leclerc have each directly infringed the '178 patent;

c) Enjoin future making, offering for sale, selling, using or importing the Halo and Aeroscreen devices and those not colorably different from them in the U.S. unless they obtain a license;

d) Award Plaintiff Jens H. S. Nygaard all monetary relief available under the patent laws of the United States, including but not limited to, actual and/or compensatory damages, reasonable royalties, pre-judgment and post-judgment interest, enhanced damages, attorneys' fees and costs pursuant to 35 U.S.C. §§ 284, 285;

e) Declare this case exceptional and award Plaintiff Jens H. S. Nygaard his reasonable attorney fees pursuant to 35 U.S.C. § 285; and

f) Grant Plaintiff Jens H. S. Nygaard such additional, other, or further relief as the Court deems just and proper.

419.   The Formula One Defendants deny that Plaintiff is entitled to any of the requested judgments and relief sought against the Formula One Defendants in paragraph 419, including sub-paragraphs (a)-(f), of the TAC.  The remaining allegations relate to entities other than the Formula One Defendants.  The Formula One Defendants lack knowledge or information sufficient to form a belief as to the truth of the substance of those allegations, and therefore deny the allegations.

## X.   DEMAND FOR JURY TRIAL

Paragraph 420.   Mr. Nygaard demands trial by jury on all issues so triable.

420.   The Formula One Defendants admit Plaintiff's SAC includes a demand for a jury trial on all issues so triable.

## XI.   DEFENSES

Without altering the burdens of proof, the Formula One Defendants allege and assert the following defenses in response to Plaintiff's allegations.

### FIRST DEFENSE: NON-INFRINGEMENT

421.   The Formula One Defendants are not infringing and have not infringed directly or indirectly, either literally or equivalently, willfully, or in any other manner, and are not liable for infringement of any valid and enforceable claim of the '178 Patent.

### SECOND DEFENSE: INVALIDITY

422.     The asserted claims of the '178 Patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, the conditions for patentability in 35 U.S.C. §§ 101, 102, 103, and 112. The Formula One Defendants incorporate by reference their Final Invalidity Contentions.

### THIRD DEFENSE: LIMITATIONS ON DAMAGES/COSTS

423.     Plaintiff's claim for damages is statutorily limited by 35 U.S.C. §§ 286, 287, and 288.

### FOURTH DEFENSE: PROSECUTION HISTORY ESTOPPEL AND DISCLAIMER

424.     Plaintiff is barred from asserting infringement of the '178 Patent based on the doctrine of prosecution disclaimer or prosecution history estoppel.

### FIFTH DEFENSE: EQUITABLE DEFENSES

425.     Plaintiff's claims against the Formula One Defendants are barred, in whole or in-part, under principles of equity, including laches, waiver, and estoppel.

### SIXTH DEFENSE: ENSNAREMENT

426.     The ensnarement doctrine bars Plaintiff's doctrine of equivalents theories. Although Plaintiff has failed to meet its burden of providing a hypothetical claim, Defendants' Final Invalidity Contentions identify prior art that would ensnare each of the alleged equivalents. For example, Defendants' Final Invalidity Contentions identify prior art disclosing helmet visors, vehicle noses, and other structures that Nygaard alleges are equivalent to the accused "front windscreen" recited in Claims 1 and 4.  Those Final Invalidity Contentions are incorporated by reference.

### SEVENTH DEFENSE: TEMPORARY PRESENCE UNDER 35 U.S.C. § 272

427.     Nygaard's patent infringement claims are barred under 35 U.S.C. § 272.  Section 272, titled "Temporary presence in the United States," provides:

The use of any invention in any vessel, aircraft or vehicle of any country which affords similar privileges to vessels, aircrafts or vehicles of the United States, entering the United States temporarily or accidentally, shall not constitute infringement of any patent, if the invention is used exclusively for the needs of the vessel, aircraft or vehicle and is not offered for sale or sold in or used for the manufacture of anything to be sold in or exported from the United States.

428.    Section 272 is met here.  As a non-limiting example, the accused formula racing cars with a Halo are a vehicle of another country, as almost all formula racing cars originate from other countries that provide reciprocity to the United States. Those racing cars enter the United States temporarily: the accused racing cars are present for a limited time for the U.S. Grand Prix race in Austin, Texas, and then the cars leave the country for the next foreign race.  The accused Halo device is used for the needs of the vehicle and is not offered for sale or sold in the United States or used for the manufacture of anything to be sold or exported from the United States. Accordingly, the accused formula racing cars with a Halo satisfy the requirements of Section 272, and Nygaard's infringement claims are barred under that statute.

## XII.    <u>COUNTERCLAIMS</u>

429.    The Formula One Defendants and Counter-Plaintiffs Formula One Management Limited and Formula One World Championship Limited assert the following counterclaims against Plaintiff and Counter-Defendant Jens H.S. Nygaard.

### <u>The Parties</u>

430.    Counter-Plaintiff Formula One Management Limited is a company incorporated under the laws of England and Wales, whose registered office is at No. 2 St. James's Market, London, SW1Y 4AH, United Kingdom.

431.    Counter-Plaintiff Formula One World Championship Limited is a company incorporated under the laws of England and Wales, whose registered office is at No. 2 St. James's Market, London, SW1Y 4AH, United Kingdom.

432.    Counter-Defendant Jens H.S. Nygaard is a citizen of Norway domiciled in Glomfjord, Norway.

433.    Counter-Defendant purports to own the '178 Patent.

### Jurisdiction and Venue

434.    This is an action for a declaration that each asserted claim of the '178 Patent is not infringed and invalid.   Accordingly, this Court has subject matter jurisdiction over Counter-Plaintiffs' counterclaims under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

435.    An actual, substantial, and continuing controversy exists between Counter-Plaintiffs and Counter-Defendant that requires a declaration of Counter-Plaintiffs' rights. Specifically, the controversy relates to the non-infringement and invalidity of the '178 Patent and to Counter-Defendant's right to threaten and/or maintain a suit against Counter-Plaintiffs for alleged infringement of the '178 Patent.

436.    This Court has personal jurisdiction over Counter-Defendant, because Counter-Defendant submitted himself to this Court's jurisdiction by initiating this lawsuit.

437.    To the extent venue is proper for Counter-Defendant's patent infringement claim, venue is proper for Counter-Plaintiffs' counterclaims under 28 U.S.C. § 1391.

### COUNT I

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '178 PATENT

438.    Counter-Plaintiffs reallege and incorporate by reference its preceding responses and allegations as though fully set forth here.

439.    This is an action for declaratory judgment of non-infringement of any and all claims of the '178 Patent.

440.    Counter-Plaintiffs have not infringed and do not infringe any claim of the '178 Patent directly or indirectly, literally or equivalently, or willfully.

441.    There is an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 between Counter-Plaintiffs and Counter-Defendant as to whether Counter-Plaintiffs have infringed or do infringe any claims of the '178 Patent.

442.    Counter-Plaintiffs request a judicial determination and declaration that Counter-Plaintiffs have not infringed and do not infringe any claim of the '178 Patent.  Such a determination and declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

<u>**COUNT II**</u>

<u>**DECLARATORY JUDGMENT OF INVALIDITY OF THE '178 PATENT**</u>

443.    Counter-Plaintiffs reallege and incorporate by reference the its preceding responses and allegations as though fully set forth here.

444.    This is an action for declaratory judgment of invalidity of any and all asserted claims of the '178 Patent.

445.    The asserted claims of the '178 Patent are invalid for failure to comply with one or more of the conditions and requirements for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112. The Formula One Defendants incorporate by reference their Final Invalidity Contentions.

446.    There is an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 between Counter-Plaintiffs and Counter-Defendant as to whether there are any valid claims of the '178 Patent.

447.    Counter-Plaintiffs request a judicial determination and declaration that the '178 Patent is invalid.  Such a determination and declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

<u>**ATTORNEYS' FEES**</u>

448.     This action qualifies as an exceptional case, supporting an award of reasonable attorneys' fees, costs, and expenses for Counter-Plaintiffs against Counter-Defendant under 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

449.     Counter-Plaintiffs request a trial by jury for all issues in this action so triable.

## PRAYER FOR RELIEF

450.     Counter-Plaintiffs request that this Court enter a judgment in its favor and against Counter-Defendant as follows:

a)       A judgment in favor of Counter-Plaintiffs and against Counter-Defendant fully and finally dismissing with prejudice Counter-Defendant's TAC or any other amended complaint Nygaard may file in its entirety, with Counter-Defendant taking nothing by way of its claims;

b)       A declaration that each of the asserted claims of the '178 Patent is not infringed;

c)       A declaration that each of the asserted claims of the '178 Patent is invalid;

d)       A declaration that this is an exceptional case under 35 U.S.C. § 285 and an award to Counter-Plaintiffs of their costs, attorneys' fees, and expenses; and

e)       Any other such relief for Counter-Plaintiffs as the Court deems just and proper.

Dated: April 6, 2022                          Respectfully submitted,

By: */s/ Douglas M. Kubehl*

Douglas M. Kubehl
State Bar Number 00796909
doug.kubehl@bakerbotts.com
Harrison Rich *pro hac vice*
State Bar Number 24083730
harrison.rich@bakerbotts.com
**BAKER BOTTS L.L.P.**

2001 Ross Avenue, Suite 900
Dallas, TX  75201
Telephone:  (214) 953-6816
Facsimile:  (214) 661-4816

**ATTORNEYS FOR DEFENDANTS
FORMULA ONE MANAGEMENT
LIMITED
AND FORMULA ONE WORLD
CHAMPIONSHIP LIMITED**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing is being served via the Court's CM/ECF system on April

6, 2022 on all counsel of record who consent to electronic service.

*/s/ Douglas M. Kubehl*
Douglas M. Kubehl